DAVID B. GOLUBCHIK (State Bar No. 185520)
JEFFREY S. KWONG (State Bar No. 288239)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone:  (310) 229-1234
Facsimile:  (310) 229-1244
Email: DBG@LNBYB.com; JSK@LNBYB.COM

Attorneys for Chapter 11 Debtor and Plan Proponent

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re: | Case No. 2:16-bk-19233-ER |
| OAK RIVER ASSET MANAGEMENT LLC, | Chapter 11 Case |
| Debtor and Debtor in Possession. | **DEBTOR'S CHAPTER 11 PLAN** |

Plan Confirmation Hearing:
Date:   September 2, 2020
Time:   10:00 a.m.
Place:  Courtroom 1568
           255 East Temple Street
           Los Angeles, CA 90012

# TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................2

II.   SUMMARY OF THE PLAN .................................................................5

    A.    Information Regarding Satisfied Secured Claims .......................5

    B.    What Creditors and Interest Holders Will Receive Under the Plan .......6

    C.    Unclassified Claims .......................................................6

        1.    Administrative Expenses ............................................6

        2.    Priority Tax Claims ................................................8

    D.    Classified Claims and Interests .......................................8

        1.    Class of General Unsecured Claims ...................................8

        2.    Class of Equity Holders ............................................8

    E.    Means of Effectuating the Plan ........................................9

        1.    Funding for the Plan and Post Effective Date Reserve .................9

        2.    Post-confirmation Management ......................................10

        3.    Disbursing Agent ..................................................10

        4.    Objections to Claims ..............................................10

        5.    Interest Pending Allowance of Claims ..............................11

        6.    Distributions to Be Made Pursuant to the Plan .....................11

        7.    Avoidance Actions .................................................12

        8.    Exculpations and Releases .........................................12

        9.    Injunctions .......................................................13

    F.    Risk Factors ..........................................................13

    G.    Other Provisions of the Plan ..........................................14

        1.    Executory Contracts and Unexpired Leases ..........................14

i

    2.  **Changes in Rates Subject to Regulatory Commission Approval** ...................................................................... 14

    3.  **Retention of Jurisdiction** ................................................................ 14

**III.**  **EFFECT OF CONFIRMATION OF PLAN** ......................................................... 15

  A.  **Discharge** ......................................................................................... 15

  B.  **Revesting of Property in the Reorganized Debtor** ..................................... 16

  C.  **Default** ............................................................................................. 16

  D.  **Modification of Plan** ......................................................................... 16

  E.  **Post-Confirmation Status Report** ......................................................... 17

  F.  **Post-Confirmation Conversion/Dismissal** ................................................ 17

  G.  **Post-Confirmation U.S. Trustee Fees** .................................................... 17

  H.  **Final Decree** .................................................................................... 17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I.

## INTRODUCTION

Oak River Asset Management LLC (the "Debtor"), is the debtor and debtor in possession in the above-captioned chapter 11 bankruptcy case (the "Bankruptcy Case") bearing case number 2:16-bk-19233-ER.  The Debtor filed a voluntary petition under chapter 11 of 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") on July 12, 2016 (the "Petition Date").  No official committee of creditors was formed in the Bankruptcy Case.  No bankruptcy trustee was appointed in the Bankruptcy Case.  On September 27, 2016, the Court entered an order approving the Debtor's employment of Lawrence R. Perkins ("Perkins") of SierraConstellation Partners LLC as the Debtor's Chief Restructuring Officer ("CRO") effective as of the Petition Date.

Chapter 11 allows the Debtor, and, under some circumstances, creditors and other parties in interest, to propose a plan of reorganization, which may include a liquidation.  This Plan is a liquidating plan proposed by the Debtor.  **This document is the Plan.**

On the Petition Date, the Debtor's primary asset was its fifty percent (50%) interest in a single family residence located at 119 Furlong Lane, Bradbury California 91008 (the "Property").  TLH REO Management LLC and Han Ding Holdings, LTD (collectively, the "Co-Owners") had a thirty-six percent (36%) and fourteen percent (14%) ownership interest in the Property.  In 2012, the Debtor acquired and obtained its 50% interest in the Property for the benefit of its affiliated entity, Liberty Asset Management Corporation ("Liberty"), who is a reorganized debtor in a related chapter 11 case filed on March 21, 2017 captioned *in re Liberty Asset Management Corporation*, Case No. 2:16-bk-13575-ER (the "Liberty Case").

Because the: (1) Property required some urgent slope repair, engineering, and other work before its sale value can be maximized for the benefit of the estate (the "Repairs"); and (2) the Debtor required funding from OakRiverHML, LLC (the "DIP Lender") to complete the Repairs, on September 8, 2016, the Debtor filed the "*Emergency Motion For Authority To Obtain Financing Pursuant To 11 U.S.C. § 364(d)*" [Doc. No. 35] (the "Financing Motion").  In the Financing Motion, the Debtor stated that it needed its "civil engineer, TRI/CON Engineering Inc.

. . . to promptly complete its engineering work on the Property," and disclosed that it was obtaining a post-petition loan to, among other things, "pay TRI/CON in full (*i.e.*, thereby satisfying its alleged mechanics' lien/ secured claim in the approximate amount of $36,362.00) from the DIP loan proceeds." *See* (Plan Ex. 1).  On September 16, 2019, the Court entered its "*Order Granting Emergency Motion For Authority To Obtain Financing Pursuant To 11 U.S.C. § 364(d)*" [Doc. No. 47] (the "Financing Order"), which provided that the Financing Motion "as modified by th[e Financing Order], is hereby approved and granted . . . . Proceeds of the Loan shall be used to satisfy only obligations related to the Property[.]" *See* (Plan Ex. 2).  Shortly thereafter, on or around September 21, 2016, the $36,362.00 scheduled claim (the "Tricon Claim") for Tri/Con Engineering Inc. ("Tricon") was paid and fully satisfied from the loan proceeds from the DIP Lender, and Tricon continued performing Repairs on the Property.  True and correct copies of the Financing Motion and Financing Order are attached respectively as **Exhibits "1" and "2"** hereto.

After some extensive property remediation, marketing, and negotiation efforts, the Debtor received a $6,900,000 written offer from Yeung Sai Yeung (the "Buyer") to purchase the Property (the "APA").  As a result, on July 26, 2018, the Debtor filed its "*Motion For Order (A) Approving Sale Of Property Free And Clear Of Liens, Claims And Interests, Subject To Overbid; (B) Approve Bidding Procedures; And (C) Granting Related Relief*" [Doc. No. 127] (the "Sale Motion"), seeking Court approval of the sale of the Property to the Buyer subject to overbidding. The Sale Motion was granted by an order entered by the Court on August 23, 2018 [Doc. No. 138] (the "Sale Order").  A true and correct copy of the Sale Order is attached as **Exhibit "3"** hereto.

In addition to secured creditor claims, the Co-Owners were also paid $850,000 from the Property's sale proceeds, pursuant to the agreement between the Debtor and the Co-Owners, that was approved by the Court pursuant to the "*Order Granting Motion Pursuant To Bankruptcy Rule 9019(a) For An Order Approving Settlement*" [Doc. No. 119] (the "Co-Owners 9019 Order").  A true and correct copy of the Co-Owners 9019 Order is attached as **Exhibit "4"**

hereto.

Around the time that, or shortly after the Sale Order was entered, the Debtor reached a resolution of its disputes with: (1) claimant Prolien Services, LLC ("Prolien"), Pioneer General Engineering Contractors, Inc. ("Pioneer"), and their related entities and individuals (the "Prolien Claimants"); and (2) claimants AHA 2012 LLC, Frank Lee, Co-Trustee of The Living Trust dated 6/23/1987, and Christopher Lee (collectively, the "AHA Claimants").    On November 2, 2018 and March 25, 2019 respectively, the Court entered orders approving: (1) the compromise of controversy that the Debtor reached with the Prolien Claimants for, among other things, a release of certain mechanic's liens on the Property and full and final satisfaction of the Prolien Parties' claims for a payment of $350,000 to be paid directly from the escrow account for the sale of the Property [Doc. No. 160] (the "Prolien 9019 Order"); and (2) the compromise of controversy that the Debtor had reached with the AHA Claimants for, among other things, the AHA Claimants to have a $2,000,000 general unsecured claim against the Debtor's estate that shall be authorized to be paid promptly after Court approval thereof [Doc. No. 195] (the "AHA 9019 Order").    Pursuant to the Prolien 9019 Order and AHA 9019 Order, the claims of the Prolien Claimants and AHA Claimants – including, but not limited to, those claims asserted in proof of claim nos. 2, 3, and 4 – have been paid and satisfied in full through the proceeds from the sale of the Property.    True and correct copies of the Prolien 9019 Order and AHA 9019 Order are attached respectively as **Exhibits "5" and "6"** hereto. The Debtor has also reached agreement with Prolien's insurance company pursuant to which the estate received an additional payment of $50,000.

In addition, the undisputed secured tax claims of the Los Angeles County Tax Collector, who filed proof of claim nos. 1 and 7, were paid through escrow from the Property's sale proceeds.

Currently, the Debtor's bank accounts with Signature Bank (x4425) and Rabo Bank (x0166) (collectively, the "Bank Accounts") are holding funds in the aggregate amount of approximately **$1,034,640.45** (the "Estate Funds").    Excluding administrative claims (which are

4

currently estimated to total approximately **$230,000.00**), the total amount of claims asserted against the Debtor's estate that have not yet been satisfied is approximately **$30,929.34**.  The Plan proposes to: (1) first, allocate the Estate Funds to pay all allowed and remaining claims in full on the Effective Date (as defined in the Plan); and (2) second, distribute any remaining Estate Funds to Liberty, as the 100% equity holder of the Debtor.[1]  True and correct redacted copies of the bank statements for the Bank Accounts are attached as **Exhibit "7"** hereto.  Further, a chart describing and analyzing all of the claims scheduled by the Debtor, or asserted against the Debtor's estate is attached as **Exhibit "8"** hereto.

The effective date of the Plan (the "Effective Date") will be the first business day which is at least fifteen days following the date of entry of the Court order confirming the Plan (the "Plan Confirmation Order") and the satisfaction or waiver by the Debtor of all of the following conditions to the effectiveness of the Plan: (a) there shall not be any stay in effect with respect to the Plan Confirmation Order; and (b) the Plan Confirmation Order shall not be subject to any appeal or rehearing.  The Debtor, following the Effective Date, will be referred to as the "Reorganized Debtor."

## II.

## SUMMARY OF THE PLAN

### A.    Information Regarding Satisfied Secured Claims

Secured claims are claims secured by liens on property of the estate.  As discussed more fully above, shortly after the sale of the Property, all of the Debtor's secured claims (the "Secured Claims") have been satisfied and/or paid in full before the filing of the Plan.  The following is a list of the Debtor's Secured Claims, and their current status:

/ / /

/ / /

/ / /

---

[1] As described more fully in Section II.E.1 herein, before distributions are made to Class 2 (Equity) on or about the Effective Date, the Debtor shall hold back funds in the amount of $15,000.00 to fund the Post Effective Date Reserve.

| Claimant | Proof of Claim, Or Scheduled Amount | Status |
|---|---|---|
| Los Angeles County Tax Collector (the "L.A. County Tax Collector") | $817,618.77 (Proof of Claim No. 1 and 8) | The claims of L.A. County Tax Collector (asserted via POC Nos. 1 and 8) were paid in full through escrow from the sale of the Property. |
| Prolien Services, LLC ("Prolien") | $900,000.00 (Schedule D) | The claim of Prolien was settled for $350,000, and the $350,000 was paid through escrow from the sale of the Property, pursuant to the Prolien 9019 Order. |
| Tri/Con Engineering Inc. ("TriCon") | $36,362.00 (Schedule D) | TriCon's secured claim was satisfied and paid in full prior to the sale of the Property, as authorized by the Financing Order. |

### B.      What Creditors and Interest Holders Will Receive Under the Plan

As required by the Bankruptcy Code, the Plan classifies claims and interests in various classes according to their rights to priority.  The Plan states whether each class of claims or interests is impaired or unimpaired.  The Plan provides the treatment each class will receive.

### C.      Unclassified Claims

Certain types of claims are not placed into voting classes; instead they are unclassified. They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code.  As such, the Debtor has not placed the following claims in a class:

#### 1.      Administrative Expenses

Administrative expenses are claims for costs or expenses of administering the Case that are allowed under Bankruptcy Code Section 507(a)(1).  The Bankruptcy Code requires that all

administrative claims be paid on the Effective Date unless a particular claimant agrees to a different treatment.

The following chart lists <u>all</u> of the Debtor's 11 U.S.C. § 507(a)(1) administrative claims and their treatment under the Plan:

| Name | Amount Owed | Treatment |
|------|-------------|-----------|
| Levene, Neale, Bender, Yoo & Brill L.L.P. ("<u>LNBYB</u>"), bankruptcy counsel for the Debtor | $100,000 (estimated) | Paid in full upon the later of (a) the Effective Date; and (b) the date of entry of the order allowing the final fee application. |
| SierraConstellation Partners, LLC ("<u>SCP</u>"), chief restructuring officer for the Debtor | $50,000 (estimated) | Paid in full upon the later of (a) the Effective Date; and (b) the date of entry of the order allowing the final fee application. |
| Yadegar, Minoofar & Soleymani LLP ("<u>YMS</u>"), special litigation counsel for the Debtor | $65,000 (estimated) | Paid in full upon the later of (a) the Effective Date; and (b) the date of entry of the order allowing the final fee application. |
| Grobstein Teeple LLP ("<u>GT</u>"), accountant for the Debtor | $15,000 (estimated) | Paid in full upon the later of (a) the Effective Date; and (b) the date of entry of the order allowing the final fee application. |
| Clerk's Office Fees | $0 (estimated) | The Debtor is not aware of any fees presently owed to the Clerk's Office. To the extent such fees will exist on the Effective Date, they shall be paid in full on or before the Effective Date. |
| Office of the U.S. Trustee Fees | $0 (estimated) | Paid in full on the Effective Date to the extent any amount is owed. |
| **TOTAL** | $230,000 (estimated) | |

<u>Court Approval of Fees Required</u>:

The Court must rule on all fees listed in this chart before the fees will be owed, except for fees owing to the Clerk's Office, U.S. Trustee, or fees to be paid from non-Debtor sources.  The

7

professional in question must file and serve a properly noticed fee application, and the Court must rule on the application.  Only the amount of fees and expenses allowed by the Court will be owed and required to be paid under the Plan.  The Debtor has sufficient Estate Funds in its Bank Accounts to satisfy the foregoing administrative claims.

### 2.    Priority Tax Claims

Priority tax claims are certain unsecured income, employment and other taxes described by Bankruptcy Code Section 507(a)(8).  The Bankruptcy Code requires that each holder of such a Section 507(a)(8) priority tax claim receive the present value of such claim in deferred cash payments, over a period not exceeding five (5) years from the date the bankruptcy petition was filed.

The Debtor is aware of one priority tax claim, filed by the Franchise Tax Board (the "FTB"), in the amount of $1,636.17.  The FTB will be paid an amount equal to $1,636.17 on the Effective Date of the Plan, in full and complete satisfaction of its priority tax claim.

### D.    Classified Claims and Interests

### 1.    Class of General Unsecured Claims

General unsecured claims are unsecured claims not entitled to priority under Bankruptcy Code Section 507(a).  The following chart identifies the Plan's treatment of the class containing all of the Debtor's general unsecured claims:

| CLASS # | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 1 | Claims<br>All Allowed General Unsecured Claims<br><br>Amount of Claims Approximately $29,293.17 | N | N | Holders of allowed Class 1 claims shall receive payment in an amount equal to 100% of their allowed pre-petition claims against the Debtor on the Effective Date of the Plan. |

### 2.    Class of Equity Holders

Interest holders are the parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor.  The following chart identifies the Plan's treatment of the class of interest holders:

8

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---------|-------------|----------------|-----------|
| 2 | All Equity Interests in Debtor | N | After all allowed creditor claims are paid in full, Liberty, as the 100% equity holder of the Debtor: (1) shall receive any remaining Estate Funds (*i.e.*, approximately $773,711.11, minus any actual fees and costs incurred by the Reorganized Debtor's professionals paid from the Post Effective Date Reserve). |

### E.    Means of Effectuating the Plan

#### 1.    Funding for the Plan and Post Effective Date Reserve

The source of funding for the Plan is the $1,034,640.45 of Estate Funds currently in the Debtor's Bank Accounts.  Based on the Plan, the following payments will be required to be made on or about the Effective Date:

| | | |
|---|---|---|
| Admin Claim | LNBYB | Est. $100,000.00 |
| Admin Claim | SCP | Est. $50,000.00 |
| Admin Claim | YMS | Est. $65,000.00 |
| Admin Claim | GT | Est. $15,000 |
| Admin Claim | UST | Est. $0 |
| Priority Tax Claim | Franchise Tax Board | $1,636.17 |
| Class 1 | General Unsecured Creditors | $29,293.17 |
| Class 2 | Equity | Any Remaining Estate Funds |
| **TOTAL** | | **$260,929.34** |

Based on the $1,034,640.45 of Estate Funds and the total Plan payments of approximately $260,929.34 on the Effective Date to the estate's creditors, the Debtor is confident that it will have sufficient funds to make all required Effective Date payments, thereby rendering all classes of creditors unimpaired.

Before distributions are made to Class 2 (Equity) on or about the Effective Date, the Debtor shall hold back funds in the amount of $15,000.00 (the "Post Effective Date Reserve"). Post Effective Date Reserve funds may be used to compensate actual fees and costs incurred by

9

the Reorganized Debtor's professionals after the Effective Date of the Plan. The Reorganized Debtor shall have the right to pay professional fees and expenses incurred after the Effective Date out of the Post Effective Date Reserve, and without further order of the Court. Any amounts remaining in the Post-Confirmation Reserve will be paid to Class 2 (Equity) before the Court enters an order for final decree.

### 2. Post-confirmation Management

Since this is a liquidating Plan, the Debtor does not anticipate the need for active management after the Effective Date. Nevertheless, to the extent that there are any operations for the Debtor after the Effective Date, the CRO will continue to supervise all of the Debtor's functions, and will continue to oversee the general operations of the Debtor's business before the Court enters an order for final decree.

### 3. Disbursing Agent

The Reorganized Debtor, through the CRO, shall act as the disbursing agent for the purpose of making all distributions provided for under the Plan. The Disbursing Agent shall serve without bond, but is entitled to compensation for any actual fees and costs incurred after the Effective Date of the Plan from the Post Effective Date Reserve.

### 4. Objections to Claims

The Debtor does not anticipate objecting to any claims filed against its estate.

However, pursuant to 11 U.S.C. § 502(a), any party in interest may assert objections to claims. Objections to claims shall be filed not later than one hundred and twenty (120) days after the date of entry of the Plan Confirmation Order. As provided by Section 502(c) of the Bankruptcy Code, the Court may estimate any contingent or unliquidated disputed claim for purposes of confirmation of the Plan. The Court shall retain jurisdiction over the Debtor, the Reorganized Debtor, and the Case to resolve such objections to claims following the confirmation of the Plan.

Nothing contained in the Plan shall constitute a waiver or release by the Debtor of any rights of setoff or recoupment, or of any defense, it may have with respect to any claim. The

Reorganized Debtor shall withhold from property to be distributed under the Plan and will place in reserve a sufficient amount of cash to be distributed on account of claims that are disputed and have not been allowed as of the date of distribution to creditors (the "Disputed Claims") of any particular class as if such claims were allowed in full.

### 5.    Interest Pending Allowance of Claims

Except as specifically provided for in the Plan, in the Plan Confirmation Order, or in some other order of the Court, interest shall not accrue on claims and no holder of a claim shall be entitled to interest accruing on or after the Petition Date on any claim.

To the extent the Debtor or any other party in interest objects to the allowance of any claim, nothing in the Plan or herein shall be deemed to imply or create for the holders of any Disputed Claims any entitlement to receive interest upon the allowed amount of any such Disputed Claims as a result, *inter alia*, of the delay in payment of such claims, except as expressly stated in the treatment pursuant to the Plan.

### 6.    Distributions to Be Made Pursuant to the Plan

Distributions to be made by the Reorganized Debtor on the Effective Date on account of any claim shall be made on the Effective Date or as promptly thereafter as practicable. Distributions to be made by the Reorganized Debtor under the Plan shall be made by check drawn on a domestic bank or by wire transfer at the sole election of the Reorganized Debtor.

Except as otherwise agreed to by the Reorganized Debtor in writing, distributions to be made to holders of allowed claims pursuant to the Plan may be delivered by regular mail, postage prepaid, to the address shown in the Debtor's schedules, as they may from time to time be amended in accordance with Bankruptcy Rule 1009, or, if a different address is stated in a proof of claim duly filed with the Court, to such address.

Checks issued by the Reorganized Debtor to pay allowed claims shall be null and void if not negotiated within sixty (60) days after the date of issuance thereof.  Requests for reissuance of any check shall be made to the Reorganized Debtor by the holder of the allowed claim to whom such check originally was issued, prior to the expiration of one hundred and twenty (120)

days from the date of issuance of such check.  After such date, the claim shall be deemed disallowed and the monies otherwise payable on account of such claim shall revest in the Reorganized Debtor free and clear of all claims and interests.

In connection with the Plan and any instruments issued in connection therewith, the Reorganized Debtor shall comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements.

### 7.    <u>Avoidance Actions</u>

The Debtor is not aware of any payments made during the ninety-day preference period for non-insiders or the one-year period for insiders which would be clearly avoidable as preference payments.  Moreover, pursuant to the Plan, all claims will be satisfied in full and therefore no need for pursuit of avoidance actions exists.

Nevertheless, all claims, causes of action and avoidance actions of the Debtor and its estate are preserved by the Plan, and the Reorganized Debtor shall have full power and authority to settle, adjust, retain, enforce or abandon any claim, cause of action or avoidance action as the representative of the Debtor's estate under section 1123(b) of the Bankruptcy Code or otherwise, regardless of whether such claims, causes of action or avoidance actions were commenced prior or subsequent to the Effective Date.

### 8.    <u>Exculpations and Releases</u>

To the maximum extent permitted by law, neither the Debtor, its estate, nor any of their employees, agents, representatives, or the professionals employed or retained by any of them, whether or not by Bankruptcy Court order (each, a "<u>Released Person</u>"), shall have or incur liability to any person or entity for an act taken or omission made in good faith in connection with or related to the formulation of the Plan, or a contract, instrument, release, or other agreement or document created in connection therewith, the solicitation of acceptances for or confirmation of the Plan, or the consummation and implementation of the Plan and the transactions contemplated therein.  Each Released Person shall in all respects be entitled to

reasonably rely on the advice of counsel with respect to its duties and responsibilities under the Plan.

Nothing set forth herein shall be deemed to be a third party release or a request to approve any third party release, including, without limitation, any guaranties associated with the claims asserted herein.

**9.    Injunctions**

The occurrence of the Effective Date after the entry of the Plan Confirmation shall enjoin the prosecution, whether directly, derivatively or otherwise, of any claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, liability or interest released, discharged or terminated pursuant to the Plan.

Except as provided in the Plan or the Plan Confirmation Order, as of the Effective Date, all entities that have held, currently hold or may hold a claim or other debt or liability that is discharged or an interest or other right of an equity security holder that is terminated pursuant to the terms of the Plan are permanently enjoined from taking any of the following actions against the Debtor, its estate, or their property on account of any such discharged claims, debts or liabilities or terminated interests or rights: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor; and (v) commencing or continuing any action in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.

By accepting distribution pursuant to the Plan, each holder of an allowed claim or allowed interest receiving distributions pursuant to the Plan will be deemed to have specifically consented to the injunctions set forth in this Section.

**F.    Risk Factors**

The Debtor believes that there is virtually no risk associated with its making of the

13

Effective Date payments under the Plan.  The Estate Funds, which are currently in the Debtor's Bank Accounts, will exceed the proposed Plan payment amounts set forth herein.

**G.** **Other Provisions of the Plan**

**1.** **Executory Contracts and Unexpired Leases**

The Debtor is not aware of any other leases or executory contracts to assume or reject. However, out of the abundance of caution, on the Effective Date, any and all leases or executory contracts that the Debtor has an interest in will be deemed rejected.

**2.** **Changes in Rates Subject to Regulatory Commission Approval**

This Debtor is not subject to governmental regulatory commission approval of its rates.

**3.** **Retention of Jurisdiction**

After confirmation of the Plan and occurrence of the Effective Date, in addition to jurisdiction which exists in any other court, the Bankruptcy Court will retain such jurisdiction as is legally permissible including for the following purposes:

i.      To resolve any and all disputes regarding the operation and interpretation of the Plan and the Plan Confirmation Order;

ii.     To determine the validity, classification, or priority of claims and interests upon objection by the Debtor, the Reorganized Debtor, or by other parties in interest with standing to bring such objection or proceeding;

iii.    To determine the extent, validity and priority of any lien asserted against property of the Debtor or property of the Debtor's estate;

iv.     To construe and take any action to enforce the Plan, the Plan Confirmation Order, and any other order of the Court, issue such orders as may be necessary for the implementation, execution, performance, and consummation of the Plan, the Plan Confirmation Order, and all matters referred to in the Plan, the Plan Confirmation Order, and to determine all matters that may be pending before the Court in this Case on or before the Effective Date with respect to any person or entity related thereto;

v.      To determine (to the extent necessary) any and all applications for

14

allowance of compensation and reimbursement of expenses of professionals for the period on or before the Effective Date;

vi.     To determine any request for payment of administrative expenses;

vii.    To determine all applications, motions, adversary proceedings, contested matters, and any other litigated matters instituted during the pendency of this Case whether before, on, or after the Effective Date;

viii.   To determine such other matters and for such other purposes as may be provided in the Plan Confirmation Order;

ix.     To modify the Plan under Section 1127 of the Bankruptcy Code in order to remedy any apparent defect or omission in the Plan or to reconcile any inconsistency in the Plan so as to carry out its intent and purpose;

x.      Except as otherwise provided in the Plan or the Plan Confirmation Order, to issue injunctions to take such other actions or make such other orders as may be necessary or appropriate to restrain interference with the Plan or the Plan Confirmation Order, or the execution or implementation by any person or entity of the Plan or the Plan Confirmation Order;

xi.     To issue such orders in aid of consummation of the Plan or the Plan Confirmation Order, notwithstanding any otherwise applicable nonbankruptcy law, with respect to any person or entity, to the fullest extent authorized by the Bankruptcy Code or Bankruptcy Rules; and

xii.    To enter a final decree closing this Case.

## III.

## EFFECT OF CONFIRMATION OF PLAN

### A.    Discharge

This is a liquidating Plan.  Pursuant to 11 U.S.C. § 1141(d)(3)(A), confirmation of this Plan will not result in a discharge for the Debtor.

Subject to the provision below, on or after the Effective Date, all parties that have held, currently hold, or may hold a claim discharged pursuant to the terms of the Plan shall be

permanently enjoined by Section 524 of the Bankruptcy Code from taking any of the following actions on account of any such discharged claim:  (a) commencing or continuing in any manner any action or other proceeding against the Reorganized Debtor, (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Reorganized Debtor,  (c) creating, perfecting, or enforcing any lien or encumbrance against the Reorganized Debtor, and (d) commencing or continuing any action, in any manner, in any place, that does not comply with or is inconsistent with the provisions of the Plan or the Plan Confirmation Order.  Any person violating such injunction may be liable for actual damage, including costs and attorneys' fees and, in appropriate circumstances, punitive damages.

### B.    Revesting of Property in the Reorganized Debtor

Except as provided elsewhere herein, the confirmation of the Plan revests all of the property of the estate in the Reorganized Debtor.  In addition, on the Effective Date, all of the claims against and/or interests in third parties that constitute property of the estate shall be revested in the Reorganized Debtor.  Following the Effective Date, the Reorganized Debtor shall have absolute authority to prosecute, waive, adjust or settle any claims without the need for approval by the Court.  Following the Effective Date, the Reorganized Debtor shall have the authority to employ such professionals as it deems necessary to prosecute or defend such claims asserted without the need for Court approval.

### C.    Default

Except as otherwise provided herein or in the Plan Confirmation Order, in the event that the Reorganized Debtor defaults in the performance of any of its obligations under the Plan and shall not have cured such a default within thirty (30) days after receipt of written notice of default from the creditor to whom the performance is due, then the entity or individual to whom the performance is due may pursue such remedies as are available at law or in equity.  An event of default occurring with respect to one claim shall not be any event of default with respect to any other claim.

### D.    Modification of Plan

16

The Debtor may modify the Plan at any time before confirmation.  The Debtor may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated <u>and</u> (2) the Court authorizes the proposed modifications after notice and a hearing.

### E.    Post-Confirmation Status Report

Within 30 days following the entry of the Plan Confirmation Order, the Reorganized Debtor shall file a status report with the Court explaining what progress has been made toward consummation of the confirmed Plan.  The status report shall be served on the United States Trustee, the twenty largest unsecured creditors, and those parties who have requested special notice after the Effective Date.

### F.    Post-Confirmation Conversion/Dismissal

A creditor or party in interest may bring a motion to convert or dismiss the Case under § 1112(b) after the Plan is confirmed if there is a default in performing the Plan.  If the Court orders the Case converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will re-vest in the Chapter 7 estate.  The automatic stay will be re-imposed upon the re-vested property, but only to the extent that the Court did not previously authorize relief from stay during the Case.  The Plan Confirmation Order may also be revoked under very limited circumstances. The Court may revoke the Plan Confirmation Order if the Plan Confirmation Order was procured by fraud and if the party in interest brings an adversary proceeding to revoke confirmation within 180 days after the entry of the Plan Confirmation Order.

### G.    Post-Confirmation U.S. Trustee Fees

The Reorganized Debtor shall be responsible for the timely payment of all fees incurred after the Effective Date pursuant to 28 U.S.C. § 1930(a)(6).

### H.    Final Decree

Once this estate has been fully administered as referred to in Bankruptcy Rule 3022, the Reorganized Debtor or other party as the Court shall designate in the Plan Confirmation Order

17

1  shall file a motion with the Court to obtain a final decree to close the Case.

2  Dated: August 3, 2020                          OAK RIVER ASSET MANAGEMENT, LLC

3

4                                                 By:    Lawrence Perkins

5                                                 Its:   Chief Restructuring Officer

6  Presented By:

7  LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.

8

   By:    /s/ David B. Golubchik
9         DAVID B. GOLUBCHIK
          JEFFREY S. KWONG
10 LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.

11 Attorneys for Chapter 11 Debtor and Debtor in Possession

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                      18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT "1"**

[Financing Motion, Docket 35]

DAVID B. GOLUBCHIK (State Bar No. 185520)
EVE H. KARASIK (State Bar No. 155356)
JEFFREY S. KWONG (State Bar No. 288239)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone:  (310) 229-1234
Facsimile:  (310) 229-1244
Email: DBG@LNBYB.COM; EHK@LNBYB.COM; JSK@LNBYB.COM

Attorneys for Debtor and Debtor in Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>OAK RIVER ASSET MANAGEMENT LLC,<br><br>      Debtor and Debtor in Possession. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.: 2:16-bk-19233-TD<br><br>Chapter 11 Case<br><br>***EMERGENCY* MOTION FOR AUTHORITY TO OBTAIN FINANCING PURSUANT TO 11 U.S.C. § 364(d); MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF LAWRENCE PERKINS AND DAVID G. GILBERTSON IN SUPPORT THEREOF**<br><br>**[Emergency Hearing Requested]**<br><br>DATE:    TBD<br>TIME:    TBD<br>PLACE:   Courtroom 1668<br>         255 East Temple Street<br>         Los Angeles, CA 90012 |

**RELIEF REQUESTED IN THE MOTION**

Pursuant to Local Bankruptcy Rule 2081-1(a)(9), Section 364 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "Bankruptcy Code"), and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Oak River Asset Management LLC, the debtor and debtor in possession in the above-entitled Chapter 11 bankruptcy case (the "Debtor"), hereby moves (the "Motion"), on an *emergency basis*, for the entry of an order authorizing the Debtor to obtain senior secured, post-petition financing in the total amount of $500,000.00 on an interim basis pursuant to Section 364(d) of the Bankruptcy Code (the "Interim DIP Order"); and setting a final hearing on this Motion.

The Debtor's primary asset is its fifty percent (50%) interest in a single family residence located at 119 Furlong Lane, Bradbury CA 91008 (the "Property"), which it intends to sell in bankruptcy under section 363 of the Bankruptcy Code. Although the Debtor has identified an experienced and qualified broker to sell the Property and believes that the sale of the Property – even in its current condition – will likely yield a substantial sum of money, a portion of which can be used to benefit its estate (the "Estate"), the Debtor is cognizant that: (1) there is a "failing slope" on the Property (the "Failing Slope") that requires immediate remedial action (the "Slope Repairs"); (2) there are several other relatively minor repairs and improvements that need to be made to the Property (the "Other Improvements, and together with the Slope Repairs, the "Repairs"); and (3) that the Slope Repairs and Other Improvements will likely cost no more than $500,000.00 and will likely generate an eventual sale price for the Property that is several million dollars more than if the Property were to be sold in its current condition.

More importantly, the Debtor requires immediate financing to conduct the Slope Repairs to avoid any potential future liability to its Estate. Specifically, with regards to the Failing Slope, the Debtor has been informed by the City of Bradbury (the "City") that if the Slope Repairs are not made before "the next significant rain event,": (1) there would be a "high likelihood" that the integrity of the 30,000 gallon pool and the residence on the Property would be jeopardized; and (2) the Estate may face liability if the neighboring (downslope) properties

1

1    suffer damages as a result of the Failing Slope. *See* (Gilbertson's Decl. ¶ 14, Doc. No. 28). The

2    City has further informed the Debtor that, if immediate remedial measures are not taken to

3    repair the Failing Slope, the City intends to commence criminal and/or civil actions against,

4    among other parties, the Debtor – including the appointment of a receiver over the Property, and

5    assessment of daily fines because the Property is allegedly in violation of certain municipal

6    ordinances. Since the rainy season will be upon us shortly, time is of the essence. As a result of

7    the immediate need to commence the Slope Repairs, through this Motion, the Debtor is seeking

8    to obtain post-petition financing for such required work.

9         In connection with the foregoing, the Debtor solicited the co-owner of the property as

10    well as numerous third parties to seek financing. Many parties were concerned with the stigma

11    of bankruptcy, mechanic's liens in place and unstable hillside. Based on the Debtor's efforts,

12    the best financing commitment received by the Debtor was from William Grant Lammersen

13    (the "DIP Lender"). The DIP Lender has agreed to provide financing, the approval of which the

14    Debtor seeks on an ***emergency interim basis***, upon the terms and conditions set forth in the

15    financing agreement (the "Agreement") attached hereto as **Exhibit "1"**.

16         The salient terms of the Agreement are as follows:

17              •    Amount: The DIP Loan will be a cash loan of $500,000.00.

18              •    Term: The term of the DIP Loan is twelve (12) months (the "Twelve

19    Month Term"), with two options to extend for six (6) months each (the "Options"). In other

20    words, if both Options are exercised, the term of the loan would be for twenty-four (24) months.

21              •    Interest: The interest rate for the DIP Loan during the Twelve Month

22    Term is 9.95%, and each six (6) month Option to extend shall come with a 1.00 point extension

23    fee which is to be paid in full. The Options can only be exercised if the DIP Lender is notified

24    between 30 and 60 days before the expiration term.

25              •    Late Fee: Payments under the DIP Loan are due on the first day of each

26    month (the "Monthly Payment Due Date"), with an additional late fee of 10% for each five (5)

27

28

day period that passes after the Monthly Payment Due Date, for the month which the payment has not been made.

- **Interest Past Maturity Date**: For each month in which the loan is not repaid in full beyond the term of the DIP Loan, the interest rate of the DIP Loan shall increase to 15% until all of the criteria of the loan documentation have been met and the original loan amount, with agreed upon interest, has been paid in full.

Origination Fee: A 5 point origination fee (the "Origination Fee") shall be paid out of the loan proceeds concurrently with the funding of the DIP Loan.

The DIP Loan is a secured loan being made pursuant to 11 U.S.C. § 364(d). In exchange for the DIP Loan to the Debtor, the DIP Lender will be receiving a first priority lien upon the Property. The Debtor estimates that the value of the Property is approximately $10 million, and that there are approximately $936,362[1] of asserted claims secured by the Property (which includes the $36,362 secured claim of TRI/CON that is to be paid in full from the DIP Loan proceeds), consisting partially of disputed mechanics' liens on the Property (see Schedule D of the Debtor's Schedules of Assets and Liabilities, Docket No. 11). The Debtor submits that all such alleged lienholders are adequately protected by the enormous equity cushion in the Property and, further, by the increase in value of the Property once necessary remediation is completed.

The Debtor believes that the terms and conditions of the DIP Loan are extremely favorable and, more importantly, the best received to date through a formal commitment. No other financing alternative under the terms agreed to by the DIP Lender is presently available to the Debtor. Despite Mr. Perkins' attempts to obtain a loan on an unsecured or junior secured basis, neither the DIP Lender nor any other potential lender contacted by Mr. Perkins is willing to extend credit on an unsecured or junior secured basis. To date, the best (and only current) financing commitment that has been provided to the Debtor is the one offered by the DIP

---

[1] A mechanic's lien in the amount of approximately $900,000 was assigned to Prolien. Litigation is currently pending with Prolien whereby, among other things, the Debtor disputes the obligation owed and asserts its own claims for damage resulting from construction work on the Property, including the unstable land which is the basis for this Motion. As a result, the alleged secured claim is disputed.

1  Lender.  Under the circumstances, the DIP Loan represents the most favorable and cost-effective

2  method of allowing the Debtor to ensure that the necessary Repairs are made on the Property, so

3  that it may be promptly sold for a fair and reasonable price for the benefit of the Estate's

4  creditors.  The amounts from the DIP Loan will help preserve and protect the Debtor's primary

5  asset thereby benefiting the Debtor's estate.

6  Based on the Debtor's cash flow forecast setting forth the intended use of the DIP Loan

7  proceeds (the "Preliminary Budget") during the Twelve Month Term, the Debtor believes that

8  the proposed funding will provide it with the necessary funds to repair and improve the Property.

9  A true and correct copy of the Preliminary Budget is attached as **Exhibit "3"** hereto.  In addition

10 to the amounts disclosed in the Preliminary Budget, because the Debtor needs its civil engineer,

11 TRI/CON Engineering Inc. ("TRI/CON"), to promptly complete its engineering work on the

12 Property, the Debtor will pay TRI/CON in full (*i.e.*, thereby satisfying its asserted mechanics'

13 lien/ secured claim in the approximate amount of $36,362.00) from the DIP Loan proceeds.

14 Pursuant to the provisions of Local Bankruptcy Rule 4001-2, the Debtor hereby provides

15 the following disclosures with respect to the terms of the DIP Loan:

| Provisions that grant cross-collateralization protection to the prepetition secured creditors | Does not apply | |
|---|---|---|
| Provisions that bind the estate or all parties in interest with respect to the validity, perfection, or amount of the secured creditor's prepetition lien or debt or the waiver of claims against a secured creditor | Does Not Apply | However, because the Debtor needs TRI/CON to promptly complete its engineering work on the Property, the Debtor will pay TRI/CON in full from the DIP Loan proceeds, which is approximately $36,362.00. |
| Provisions that seek to waive or limit the estate's rights under 11 U.S.C. § 506(c) | Does not apply | |
| Provisions that grant to the prepetition secured creditor liens on the debtor's claims and causes of action arising | Does not apply | |

4

| | | |
|---|---|---|
| under 11 U.S.C. §§ 544, 545, 547, 548, or 549 | | |
| Provisions that deem secured debt to be postpetition debt or that use postpetition loans from a prepetition secured creditor to pay part or all of that secured creditor's prepetition debt, other than as provided in 11 U.S.C. § 552(b) | Does not apply | |
| Provisions that provide disparate treatment for the professionals retained by a creditors' committee from that provided for the professionals retained by the debtor with respect to a professional fee carve out | Does not apply | |
| Provisions that prime any secured lien | Does apply | The DIP Loan is a secured loan being made pursuant to 11 U.S.C. § 364(d).  In exchange for the DIP Loan to the Debtor, the DIP Lender will be receiving a first priority lien upon the Property.  The Debtor estimates that the value of the Property is $10 million, and that there are approximately $936,362 of asserted claims secured by the Property, consisting partially of disputed mechanics' liens on the Property (see Schedule D of the Debtor's Schedules of Assets and Liabilities, Docket No. 11). The Debtor submits that all such alleged lienholders are adequately protected by the enormous equity cushion in the Property.  In addition, litigation is currently pending with Prolien and, the Debtor contends, that the |

| | | |
|---|---|---|
| | | alleged claim is disputed. |

Pursuant to Rule 4001 of the Federal Rules of Bankruptcy Procedure, the Debtor hereby provides the following disclosures with respect to the DIP Loan, which are also summarized in the Court's mandatory form (F 4001-2.STMT.FINANCE) attached as **Exhibit "4"** hereto:

| | | |
|---|---|---|
| A grant of priority or a lien on property of the estate under § 364(c) or (d) | Does apply | The DIP Loan is a secured loan being made pursuant to 11 U.S.C. § 364(d). In exchange for the DIP Loan to the Debtor, the DIP Lender will be receiving a first priority lien upon the Property. The Debtor estimates that the value of the Property is $15 million, and that there are approximately $936,362 of asserted claims secured by the Property, consisting partially of disputed mechanics' liens on the Property (see Schedule D of the Debtor's Schedules of Assets and Liabilities, Docket No. 11). The Debtor submits that all such alleged lienholders are adequately protected by the enormous equity cushion in the Property. |
| The providing of adequate protection or priority for a claim that arose before the commencement of the case, including the granting of a lien on property of the estate to secure the claim, or the use of property of the estate or credit obtained under § 364 to make cash payments on account of the claim | Does not apply | |
| A determination of the validity, enforceability, | Does not apply | |

| | | |
|---|---|---|
| priority, or amount of a claim that arose before the commencement of the case, or of any lien securing the claim | | |
| A waiver or modification of Code provisions or applicable rulings relating to the automatic stay | Does not apply | |
| A waiver or modification of any entity's authority or right to file a plan, seek an extension of time in which the debtor has the exclusive right to file a plan, request the use of cash collateral under § 363(c), or request to obtain authority to obtain credit under § 364 | Does not apply | |
| The establishment of deadlines for filing a plan of reorganization, for approval of a disclosure statement, for a hearing on confirmation, or for entry of a confirmation order | Does not apply | |
| A waiver or modification of the applicability of nonbankruptcy law relating to the perfection of a lien on property of the estate, or on the foreclosure or other enforcement of the lien | Does apply | The Interim DIP Order (and Final DIP Order) will waive the requirement of the perfection of the post-petition liens being granted to the DIP Lender to secure the Debtor's post-petition obligations to the DIP Lender, which the Debtor submits is a routine right granted to a post-petition lender. |
| A release, waiver, or limitation on any claim or other cause of action belonging to the estate or the trustee, including any modification of the statute of limitations or other deadline to commence an action | Does not apply | |
| The indemnity of an entity | Does not apply | |

| A release, waiver, or limitation of any right under Section 506(c) | Does not apply | |
|---|---|---|
| The granting of a lien on any claim or cause of action arising under Sections 544, 545, 547, 548, 549, 553(b), 723(a), or 724(a) | Does not apply | |

The relief sought in this Motion is based upon the Motion, the annexed Memorandum of Points and Authorities, the Perkins Declaration and Gilbertson Declaration, the statements, arguments and representations of counsel to be made at the hearing on the Motion, and any other evidence properly presented to the Court at or prior to the hearing on the Motion.

Pursuant to Bankruptcy Rule 4001, while the Court cannot conduct a final hearing on the Motion earlier than 14 days after service of this Motion, the Court may conduct a preliminary hearing before such 14-day period expires to enable the Debtor to obtain post-petition financing as is necessary to avoid immediate and irreparable harm to the Debtor's estate pending a final hearing. Here, the Debtor must be able to immediately obtain financing, so that it can commence the necessary Slope Repairs, to both maintain/improve the value of the Property and avoid any potential future claims against the Estate for damage caused by the Failing Slope.

**WHEREFORE**, the Debtor respectfully requests that this Court:

(a)    enter the proposed Interim DIP Order attached hereto as **Exhibit "2"**;

(b)    authorize the Debtor to borrow $500,000.00 from the DIP Lender on an interim basis in accordance with the terms set forth above and in the Interim DIP Order;

(c)    authorize the Debtor to execute all documents (including all loan and security agreements, promissory notes and related documents) necessary to enable the Debtor to implement the terms of the Interim DIP Order;

(d)    schedule a final hearing on the Motion; and

(e)    grant such further relief as the Court deems just and proper.

///

DATED:  September 8, 2016          OAK RIVER ASSET MANAGEMENT LLC


                                              _/s/ Jeffrey S. Kwong_
                                        DAVID B. GOLUBCHIK
                                        EVE H. KARASIK
                                        JEFFREY S. KWONG
                                        LEVENE, NEALE, BENDER, YOO
                                              & BRILL L.L.P.
                                        Attorneys for Chapter 11 Debtor,
                                        Oak River Asset Management LLC
                                        Attorneys for Chapter 11 Debtor and Debtor in
                                        Possession

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    STATEMENT OF FACTS

**A.    Background.**

1.    The Debtor commenced its chapter 11 bankruptcy case by filing a voluntary petition under chapter 11 of title 11, sections 101 *et seq.* of the United States Code, (the "Bankruptcy Code") on July 12, 2016 (the "Petition Date").

2.    No committee of unsecured creditors has been formed, and no trustee has been appointed.  The Debtor continues to operate its business and manage its financial affairs as a debtor in possession pursuant to 11 U.S.C. §§ 1107 and 1108.

3.    The Debtor's primary asset is its fifty percent (50%) interest in a single family residence located at 119 Furlong Lane, Bradbury CA 91008 (the "Property").  The Property consists of a luxurious single family residence with seven (7) bedrooms, ten (10) bathrooms, pool, basketball court, and tennis court – totaling more than 12,000 square feet.  The Property is located in the affluent and exclusive Bradbury Estates community, which has one of the most expensive zip codes in America.

4.    Prior to the Debtor's bankruptcy filing, in 2012, the Debtor acquired and obtained its 50% interest in the Property for the benefit of certain investors and its affiliated entity, Liberty Asset Management Corporation ("Liberty"), who is a debtor and debtor-in-possession in a related chapter 11 case filed on March 21, 2016 captioned *In re Liberty Asset Management Corporation*, Case No. 2:16-bk-13575-TD (the "Liberty Case").  Liberty asserts a forty-four percent (44%) equity interest in the Debtor.  In addition to Liberty, the Debtor's equity is asserted to be owned by the following individuals and entities: Christopher Deryen Lee ("Lee"), Lee Living Trust dated 6/23/1987 ("Living Trust"), and YCJS 2012 LLC ("YCJS, and along with Lee and Living Trust, the "Other Equity Members").

5.    Based on the foregoing, the Debtor, after substantial consideration, determined that commencement of its bankruptcy case was necessary and proper to: (1) sell the Property

1    under section 363 of the Bankruptcy Code and use the Debtor's portion of the proceeds (*i.e.*,

2    those amounts for the Debtor's partial interest in the Property, which are being held for the

3    benefit of Liberty) to benefit its creditors and Liberty's estate; (2) stay all litigation matters

4    against the Debtor; (3) have the Bankruptcy Court determine the nature, amount, and validity of

5    claims asserted by and against the bankruptcy estate (the "Estate"); and (4) have the Bankruptcy

6    Court determine the extent and validity of certain liens (*e.g.*, the disputed mechanics lien

7    described below) asserted against property of the Estate.

8    **B.**    **Construction and Subsequent Damage to Property.**

9        6.    The loan related to the Property was a distressed loan which was acquired by the

10   Debtor's affiliate.  After foreclosure, equity in the Debtor was divided 50/50.  Among the

11   efforts of the parties to remediate the Property was to engage a contractor to do extensive work

12   on the Property.  Such work included, among other things, installing over 30 caissons in the

13   back yard, surrounding the luxurious pool.  It is the Debtor's position that, after construction,

14   the contractor, among other things, did not properly replace and recompact the soil which

15   caused slope failure.  Based on this and other disputes between the parties, the contractor

16   recorded a mechanic's lien in the original amount of approximately $900,000, which lien has

17   been assigned to Prolien.

18        7.    There are two pending and related lawsuits with respect to the contractor and the

19   mechanic's lien.  Prolien, as the purported assignee of the mechanic's lien, commenced

20   litigation to foreclose on the mechanic's lien, which is subject to litigation and was stayed upon

21   the commencement of this case.  In addition, the Debtor is pursuing litigation against the

22   contractor and related parties related to damage caused to the Property.  Both matters have been

23   removed to this Court for litigation.  The Debtor asserts that Prolien's alleged secured claim is

24   disputed.

25

26

27

28

**C.    The Current Condition Of The Property, The Failing Slope, And The Immediate Need For Financing.**

8.    Although the Debtor has identified an experienced and qualified broker to sell the Property and believes that the sale of the Property – even in its current condition – will likely yield a substantial sum of money, a portion of which can be used to benefit its estate (the "Estate"), the Debtor and the Other Equity Members are also cognizant that: (1) there is a "failing slope"[2] on the Property (the "Failing Slope") that requires immediate remedial action (the "Slope Repairs") to protect the integrity and value of the Property before it is marketed; (2) there are several other relatively minor repairs and improvements that need to be made to the Property (the "Other Improvements," and together with the Slope Repairs, the "Repairs") before it is marketed; and (3) that the Slope Repairs and Other Improvements will likely cost no more than $500,000 and will likely generate an eventual sale price for the Property that is several million dollars more than if the Property were to be sold in its current condition.

9.    More importantly, the Debtor believes that the Slope Repairs will have to be immediately commenced to avoid any potential future damage to the Property and related liability to its Estate.  Specifically, with regards to the Failing Slope, the Debtor has been informed by the City of Bradbury (the "City") that if the Slope Repairs are not made before "the next significant rain event,": (1) there would be a "high likelihood" that the integrity of the 30,000 gallon pool and the residence on the Property would be jeopardized; and (2) the Estate may face liability if the neighboring (downslope) properties suffer damages as a result of the Failing Slope.  *See* (Gilbertson's Decl. ¶ 14, Doc. No. 28).

10.    On or around July 2016, the City recorded a "*Notice Of Substandard*" (the "Substandard Notice") against the Property.

11.    Shortly after the Petition Date, the City reached out to Lawrence Perkins, the Debtor's authorized agent and proposed chief restructuring officer ("Mr. Perkins"), to inform

---

[2] In other words, the Debtor has been informed by the City that the irrigation lines are leaking large amounts of water and the manufactured slope below the pool and residence is experiencing some failures from landslides.  *See* (Gilbertson's Decl. ¶ 3, Doc. No. 28).

1   him of the Failing Slope, and for a proposed schedule to "re-install the temporary erosion

2   control measures." *See* (Gilbertson's Decl. ¶ 8, Doc. No. 28).

3       12.    Subsequently, the City informed Mr. Perkins that, if immediate remedial

4   measures are not taken to repair the Failing Slope, the City intends to commence criminal

5   and/or civil actions against, among other parties, the Debtor – including the appointment of a

6   receiver over the Property, and assessment of daily fines because the Property is allegedly in

7   violation of certain municipal ordinances.

8       13.    Because the Property is not currently being rented, the Debtor does not have any

9   source of income to conduct the necessary Repairs to the Property.  Having been informed of

10  the Failing Slope and to avoid any potential future liability to the Estate, the Debtor has been

11  working jointly with the Other Equity Members to procure the necessary financing to conduct

12  the Slope Repairs and Other Improvements on the Property.  Further, the Debtor believes that it

13  would be most prudent to obtain financing to conduct the necessary Repairs to the Property,

14  because doing so would likely result in a sale price for the Property that is several million

15  dollars more than if sold in its current condition, a portion of which would accrue to the Estate's

16  benefit.

17  **D.    The DIP Loan.**

18      14.    In order to ensure that the Debtor is capable of making the necessary Repairs to

19  the Property, thereby preserving and improving the value of the Estate's primary asset, the

20  Debtor requires Court authority to borrow $500,000.00 (the "<u>DIP Loan</u>") from Mr. William

21  Grant Lammersen (the "<u>DIP Lender</u>"), pursuant to § 364(d), upon the terms and conditions set

22  forth in the financing agreement (the "<u>Agreement</u>") attached hereto as **<u>Exhibit "1"</u>**.

23      15.    The terms and conditions set forth in the Agreement have been negotiated

24  extensively, in good faith and at arms' length, by the parties.

25      16.    The salient terms of the Agreement are as follows:

26          •    <u>Amount</u>:  The DIP Loan will be a cash loan of $500,000.00.

27

28

-     <u>Term</u>:  The term of the DIP Loan is twelve (12) months (the "<u>Twelve Month Term</u>"), with two options to extend for six (6) months each (the "<u>Options</u>").  In other words, if both Options are exercised, the term of the loan would be for twenty-four (24) months.

-     <u>Interest</u>:  The interest rate for the DIP Loan during the Twelve Month Term is 9.95%, and each six (6) month Option to extend shall come with a 1.00 point extension fee which is to be paid in full.  The Options can only be exercised if the DIP Lender is notified between 30 and 60 days before the expiration term.

-     <u>Late Fee</u>:  Payments under the DIP Loan are due on the first day of each month (the "<u>Monthly Payment Due Date</u>"), with an additional late fee of 10% for each five (5) day period that passes after the Monthly Payment Due Date, for the month which the payment has not been made.

-     <u>Interest Past Maturity Date</u>:  For each month in which the loan is not repaid in full beyond the term of the DIP Loan, the interest rate of the DIP Loan shall increase to 15% until all of the criteria of the loan documentation have been met and the original loan amount, with agreed upon interest, has been paid in full.

-     <u>Origination Fee</u>:  A 5 point origination fee (the "<u>Origination Fee</u>") shall be paid out of the loan proceeds concurrently with the funding of the DIP Loan.

17.     The DIP Loan is a secured loan being made pursuant to 11 U.S.C § 364(d).  In exchange for the DIP Loan to the Debtor, the DIP Lender will be receiving a first priority lien upon the Property.

18.     The Debtor estimates that the value of the Property is $10 million.  The Debtor further estimates that there are approximately $936,362 of asserted claims secured by the Property (which includes the $36,362 secured claim of TRI/CON that is to be paid in full from the DIP Loan proceeds), consisting partially of disputed mechanics' liens on the Property (see Schedule D of the Debtor's Schedules of Assets and Liabilities, Docket No. 11).  The Debtor submits that all such alleged lienholders are adequately protected by the enormous equity cushion in the Property.

19.     The Debtor believes that the terms and conditions of the DIP Loan are extremely favorable.  Additionally, no other financing alternative under the terms agreed to by the DIP Lender is presently available to the Debtor.  Despite Mr. Perkins' attempts to obtain a loan on an unsecured or junior secured basis, neither the DIP Lender nor any other potential lender contacted by Mr. Perkins was willing to extend credit on an unsecured or junior secured basis.  To date, the best (and only current) financing commitment that has been provided to the Debtor is the one offered by the DIP Lender.  Under the circumstances, the DIP Loan represents the most favorable and cost-effective method of allowing the Debtor to ensure that the necessary Repairs are made on the Property, so that it may be promptly sold for a fair and reasonable price for the benefit of the Estate.  The amounts from the DIP Loan will help preserve and protect the Debtor's primary asset, thereby benefiting the Estate.

20.     Based on the Debtor's cash flow forecast setting forth the intended use of the DIP Loan proceeds during the Twelve Month Term (the "Preliminary Budget"), the Debtor believes that the proposed funding will provide it with the necessary funds to repair and improve the Property.  A true and correct copy of the Preliminary Budget is attached as **Exhibit "3"** hereto.  In addition to the amounts disclosed in the Preliminary Budget, because the Debtor needs its civil engineer, TRI/CON Engineering Inc. ("TRI/CON"), to promptly complete its engineering work on the Property, the Debtor will pay TRI/CON in full (*i.e.*, thereby satisfying its alleged mechanics' lien/ secured claim in the approximate amount of $36,362.00) from the DIP Loan proceeds.

**E.     Compliance With Federal Rule Of Bankruptcy Procedure 4001(c)(1)(B) And Local Bankruptcy Rule 4001-2(b).**

21.     Pursuant to the provisions of Local Bankruptcy Rule 4001-2, the Debtor hereby provides the following disclosures with respect to the terms of the DIP Loan:

| | | |
|---|---|---|
| Provisions that grant cross-collateralization protection to the prepetition secured creditors | Does not apply | |
| Provisions that bind the estate | Does Not Apply | However, because the Debtor |

| or all parties in interest with respect to the validity, perfection, or amount of the secured creditor's prepetition lien or debt or the waiver of claims against a secured creditor | | needs TRI/CON to promptly complete its engineering work on the Property, the Debtor will pay TRI/CON in full from the DIP Loan proceeds. |
|---|---|---|
| Provisions that seek to waive or limit the estate's rights under 11 U.S.C. § 506(c) | Does not apply | |
| Provisions that grant to the prepetition secured creditor liens on the debtor's claims and causes of action arising under 11 U.S.C. §§ 544, 545, 547, 548, or 549 | Does not apply | |
| Provisions that deem secured debt to be postpetition debt or that use postpetition loans from a prepetition secured creditor to pay part or all of that secured creditor's prepetition debt, other than as provided in 11 U.S.C. § 552(b) | Does not apply | |
| Provisions that provide disparate treatment for the professionals retained by a creditors' committee from that provided for the professionals retained by the debtor with respect to a professional fee carve out | Does not apply | |
| Provisions that prime any secured lien | Does apply | The DIP Loan is a secured loan being made pursuant to 11 U.S.C. § 364(d). In exchange for the DIP Loan to the Debtor, the DIP Lender will be receiving a first priority lien upon the Property. The Debtor estimates that the value of the Property is $15 million, and that there are approximately $936,362 of asserted claims secured by the Property, consisting |

| | | partially of disputed mechanics' liens on the Property (see Schedule D of the Debtor's Schedules of Assets and Liabilities, Docket No. 11). The Debtor submits that all such alleged lienholders are adequately protected by the enormous equity cushion in the Property. Moreover, the alleged secured claim is disputed and subject to litigation. |

Pursuant to Rule 4001 of the Federal Rules of Bankruptcy Procedure, the Debtor hereby provides the following disclosures with respect to the DIP Loan, which are also summarized in the Court's mandatory form (F 4001-2.STMT.FINANCE) attached as **Exhibit "4"** hereto:

| A grant of priority or a lien on property of the estate under § 364(c) or (d) | Does apply | The DIP Loan is a secured loan being made pursuant to 11 U.S.C. § 364(d). In exchange for the DIP Loan to the Debtor, the DIP Lender will be receiving a first priority lien upon the Property. The Debtor estimates that the value of the Property is $10 million, and that there are approximately $936,362 of asserted claims secured by the Property, consisting partially of disputed mechanics' liens on the Property (see Schedule D of the Debtor's Schedules of Assets and Liabilities, Docket No. 11). The Debtor submits that all such alleged lienholders are adequately protected by the enormous equity cushion in the Property. |

| | | |
|---|---|---|
| The providing of adequate protection or priority for a claim that arose before the commencement of the case, including the granting of a lien on property of the estate to secure the claim, or the use of property of the estate or credit obtained under § 364 to make cash payments on account of the claim | Does not apply | |
| A determination of the validity, enforceability, priority, or amount of a claim that arose before the commencement of the case, or of any lien securing the claim | Does not apply | |
| A waiver or modification of Code provisions or applicable rulings relating to the automatic stay | Does not apply | |
| A waiver or modification of any entity's authority or right to file a plan, seek an extension of time in which the debtor has the exclusive right to file a plan, request the use of cash collateral under § 363(c), or request to obtain authority to obtain credit under § 364 | Does not apply | |
| The establishment of deadlines for filing a plan of reorganization, for approval of a disclosure statement, for a hearing on confirmation, or for entry of a confirmation order | Does not apply | |
| A waiver or modification of the applicability of nonbankruptcy law relating to the perfection of a lien on property of the estate, or on the foreclosure or other enforcement of the lien | Does apply | The Interim DIP Order (and Final DIP Order) will waive the requirement of the perfection of the post-petition liens being granted to the DIP Lender to secure the Debtor's post-petition obligations to the DIP |

| | | Lender, which the Debtor submits is a routine right granted to a post-petition lender. |
|---|---|---|
| A release, waiver, or limitation on any claim or other cause of action belonging to the estate or the trustee, including any modification of the statute of limitations or other deadline to commence an action | Does not apply | |
| The indemnity of an entity | Does not apply | |
| A release, waiver, or limitation of any right under Section 506(c) | Does not apply | |
| The granting of a lien on any claim or cause of action arising under Sections 544, 545, 547, 548, 549, 553(b), 723(a), or 724(a) | Does not apply | |

## II.  DISCUSSION

**A.    The Debtor Should Be Authorized To Obtain The DIP Loan From The DIP Lender To Ensure That It Is Able To Perform The Necessary Repairs To Preserve/ Improve The Property, And Protect The Estate From Potential Liability Resulting From The Failing Slope.**

Pursuant to Bankruptcy Code § 364(d), the Debtor requests authority to incur $500,000.00 of post-petition financing from the DIP Lender, upon the terms and conditions set forth in the Agreement attached hereto as **Exhibit "1"**.  The DIP Loan proposed to be provided by the DIP Lender will infuse the Debtor with the funds necessary to enable the Debtor to conduct the necessary repairs to preserve and improve the Property, so that it can promptly be sold at a fair and reasonable price for the Estate's benefit.

Section 364(d)(1) of the Bankruptcy Code governs the incurrence of senior secured debt or "priming" loans.  Pursuant to Section 364(d)(1), the Court may, after notice and a hearing, authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien only if –

1               (1)      the trustee is unable to obtain such credit otherwise; and

2               (2)      there is adequate protection of the interest of the holder of the lien on the

3 property of the estate on which such senior or equal lien is proposed to be granted.

4 11 U.S.C. § 364(d)(1).  Section 364 of the Bankruptcy Code is structured with an escalating

5 series of inducements which a debtor in possession may offer to attract credit during the post-

6 petition period.  In re Photo Promotion Associates, Inc., 87 B.R. 835, 839 (Bankr. S.D.N.Y.

7 1988), aff'd, 881 F.2d 6 (2d. Cir. 1989).  Where a trustee or debtor in possession cannot

8 otherwise obtain unsecured post-petition credit, such credit may be obtained under certain

9 carefully proscribed conditions.  In re T.M. Sweeney & Sons LTL Services, Inc., 131 B.R. 984,

10 989 (Bankr. N.D. Ill.1991).  For example, if creditors are unwilling to extend unsecured credit to

11 a debtor in possession, further inducements are offered, with court approval after notice and a

12 hearing, including, without limitation, liens equal to or senior to existing liens on encumbered

13 property in accordance with 11 U.S.C. § 364(d).  In re Photo Promotion Associates, Inc., 87 B.R.

14 at 839.

15       Section 364(c) of the Bankruptcy Code also enumerates certain incentives that a court

16 may grant to post-petition lenders.  The Section 364(c) list, however, is not exhaustive.  Courts

17 frequently have authorized the use of inducements not specified in the statute.  See, e.g., In re

18 Ellingsen MacLean Oil Co., 834 F.2d 599 (6th Cir. 1987) (affirming financing order which

19 prohibited any challenges to the validity of already existing liens); In re Defender Drug Stores,

20 126 B.R. 76 (Bankr. D. Ariz. 1991) (authorizing enhancement fee to post-petition lender), aff'd

21 145 B.R. 312, 316 (9th Cir. BAP 1992) ("[b]ankruptcy courts . . . have regularly authorized

22 postpetition financial arrangements containing lender incentives beyond the explicit priorities

23 and liens specified in section 364").

24       Subject to the approval of the Court, in exchange for the DIP Loan to the Debtor, the DIP

25 Lender will be receiving a first priority lien upon the Property.

26       For all of the reasons explained above, the Debtor believes that granting these protections

27 to the DIP Lender is warranted, appropriate and necessary given the circumstances of this case.

28

1    Specifically, the terms of the DIP Loan are favorable to the Debtor and the Estate, and the

2    Debtor does not believe that any other lender would be willing to provide financing to the Debtor

3    upon the terms and conditions of the DIP Loan.  Indeed, despite Mr. Perkins' attempts to obtain a

4    loan on an unsecured or junior secured basis, neither the DIP Lender nor any other potential

5    lender contacted by Mr. Perkins was willing to extend credit on an unsecured or junior secured

6    basis.  Moreover, the Debtor estimates that the value of the Property is $15 million, and that

7    there are approximately $936,362 of asserted claims secured by the Property, consisting partially

8    of disputed mechanics' liens on the Property (see Schedule D of the Debtor's Schedules of

9    Assets and Liabilities, Docket No. 11).  The Debtor submits that all such alleged lienholders are

10   adequately protected by the enormous equity cushion in the Property.

11           Moreover, the Debtor believes that the DIP Loan should be approved to avoid any

12   potential future damage to the Property and related liability to its Estate.  Specifically, with

13   regards to the Failing Slope, the Debtor has been informed by the City of Bradbury (the "City")

14   that if the Slope Repairs are not made before "the next significant rain event,": (1) there would

15   be a "high likelihood" that the integrity of the 30,000 gallon pool and the residence on the

16   Property would be jeopardized; and (2) the Estate may face liability if the neighboring

17   (downslope) properties suffer damages as a result of the Failing Slope.  *See* (Gilbertson's Decl. ¶

18   14, Doc. No. 28).  In fact, the City has expressed its intentions to commence criminal and/or civil

19   actions against the Debtor, including to seek the appointment of a receiver over the Property, if

20   the Slope Repairs are not immediately commenced.

21           Two factors courts consider in determining whether to authorize post-petition financing

22   which contemplates the granting of a security interest in favor of the lender are (1) whether the

23   debtor is unable to obtain unsecured credit per 11 U.S.C. § 364(b), i.e., by allowing a lender *only*

24   an administrative claim per 11 U.S.C. § 364(b)(1)(A); and (2) whether the terms of the

25   transaction are fair, reasonable and adequate, given the circumstances of the debtor-borrower and

26   the proposed lender.  In re Crouse Group, Inc., 71 B.R. 544, 549 (Bankr. E.D. Pa. 1987); see also

27   In re Aqua Assoc., 123 B.R. 192, 195 (Bankr. E.D. Pa. 1991).

28

1    In addition to the foregoing, a debtor in possession seeking subordination of liens to new

2    financing must establish adequate protection of the liens to be subordinated to the new financing.

3    In re C.B.G. Ltd., 150 B.R. 570, 571 (Bankr. M.D. Pa. 1992).

4        The Debtor submits that these standards have been satisfied in this case.

5    **1.    The Debtor Is Unable To Obtain Unsecured Credit.**

6        Section 364(d)(1)(A) does not impose upon a debtor-in-possession the onerous duty to

7    seek credit from every possible lender before concluding that such credit is unavailable. See In re

8    Snowshoe Co., Inc., 789 F. 2d 1085, 1089 (4th Cir. 1986).   Instead, a good faith effort to obtain

9    less burdensome credit is required of the debtor.

10       The Debtor has extensively negotiated with the DIP Lender at arms-length regarding the

11   payment and other terms of the DIP Loan.  The Debtor believes that the terms and conditions of

12   the DIP Loan are extremely favorable, especially given the immediacy and necessity of the Slope

13   Repairs on the Property.  Additionally, no other financing alternative under the terms agreed to

14   by the DIP Lender is presently available to the Debtor.  Despite Mr. Perkins' attempts to obtain a

15   loan on an unsecured or junior secured basis, neither the DIP Lender nor any other potential

16   lender contacted by Mr. Perkins was willing to extend credit on an unsecured or junior secured

17   basis.    Under the circumstances, the DIP Loan represents the most favorable and cost-effective

18   method of allowing the Debtor to ensure that the necessary Repairs are made on the Property, so

19   that it may be promptly sold for a fair and reasonable price for the benefit of the Estate.  If such

20   financing was not provided, the result would be that the Debtor cannot timely perform the

21   necessary Repairs on the Property which could result in: (1) a delay of the sale of the Property;

22   (2) major damage to the Property; and (3) possible liability to the Estate if the Failing Slope

23   causes damages to any of the neighboring (downslope) properties.

24       The Debtor does not believe that any other lender is prepared to or would provide the

25   financing needed by the Debtor on terms more favorable than those proposed by the DIP Lender.

26   Under these circumstances, the Debtor believes that the terms of the DIP Loan are very favorable

27   to the Debtor and the Estate.

28

**2.**     <u>**The Terms Of The DIP Loan Are Fair, Reasonable and Appropriate.**</u>

The Debtor submits that the terms of the DIP Loan from the DIP Lender are fair, reasonable and adequate.  While in determining whether to approve such a transaction, a court is authorized to act in its informed discretion, <u>In re Ames Department Stores, Inc.</u>, 115 B.R. 34, 37 (Bankr. S.D.N.Y. 1990), and should give broad deference to the business decision of a chapter 11 debtor, particularly with respect to a debtor's business judgment regarding the need for and proposed use of funds.  <u>Richmond Leasing Co. v. Capital Bank N.A.</u>, 762 F.2d 1303, 1311 (5th Cir. 1985).  As the court noted in <u>Ames Dept. Stores</u>, "the court's discretion under section 364 is to be utilized on the grounds that permit the reasonable business judgment [of the debtor] to be exercised . . . ." <u>In re Ames Dept. Stores, Inc.</u>, 115 B.R. at 40.

The Debtor, in the exercise of its business judgment, has concluded that borrowing this money from the DIP Lender is in the clear best interests of the Debtor's estate because without such funds, the Debtor will be unable to perform the necessary Repairs on the Property.   As described above, if the Repairs are not immediately made, the integrity of the 30,000 gallon pool and the residence of the Property may be jeopardized and the Estate may face potential liability if the "neighboring (downslope) properties suffer damages as a result of the Failing Slope." *See* (Gilbertson's Decl. ¶ 14, Doc. No. 28).  Further, the City has informed the Debtor that, if immediate remedial measures are not taken to repair the Failing Slope, the City intends to commence criminal and/or civil actions against the Debtor, including to seek the appointment of a receiver over the Property, and assessing fees for allegedly violations of the City's municipal ordinances.  Further, the DIP Loan provides the Debtor with immediate necessary cash at a reasonable rate of interest, and the term of the Loan will, at the earliest, expire in one year.

The DIP Loan is a favorable financing arrangement to the Debtor which has been proposed for the benefit of the Estate.  For these reasons, the Court should approve the DIP Loan.

**3.**     <u>**The Liens Being "Subordinated" Are Adequately Protected.**</u>

The proposed priming lien is authorized by the Bankruptcy Code, even absent consent of

1   the other existing, but disputed, lienholders.   Bankruptcy Code § 364(d)(1)(B) requires the

2   furnishing of adequate protection in favor of lienholders which assert an interest in collateral.

3   Neither this nor any other Bankruptcy Code provision specifically defines the term "adequate

4   protection".   However, Bankruptcy Code §361 requires that adequate protection be furnished to

5   the extent the debtor's "use, sale, lease or grant results in a decrease in the value of such entity's

6   interest in such property."   11 U.S.C. §§ 361(1), (2), (3) (emphasis added).   Stated succinctly,

7   adequate protection protects a secured creditor against a decrease in the value of its collateral.

8   See e.g., In re Planned System, Inc., 78 B.R. 852, 861-62 (Bankr. S.D. Ohio 1987).   This

9   standard applies equally with respect to "priming" financing under section 364(d)(1)(B).   See,

10  e.g., In re Hubbard Power & Light, 202 B.R. 680, 685 (Bankr. E.D.N.Y. 1996) ("The goal of

11  adequate protection for purposes of the provision entitling a debtor to obtain financing secured

12  by liens senior to all other interests is to safeguard the secured creditor from diminution in the

13  value of its interests."); In re Aqua Assoc., 123 B.R. 192, 196 (Bankr. E.D. Pa. 1991); In re

14  Beker Ind. Corp., 58 B.R. 725, 741-42 (Bankr. S.D.N.Y. 1986).

15      The Court has broad discretion to determine whether adequate protection is furnished.

16  See e.g., In re 495 Cent. Park Ave. Corp., 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992).   For

17  example, the "existence of an equity cushion" is the "classic form of protection for a secured

18  debt justifying the restraint of lien enforcement by a bankruptcy court."   In re Mellor, 734 F.2d

19  1396, 1400 (9th Cir. 1984).   "A 20% cushion has been held to be an adequate protection for a

20  secured creditor."   Id. at 1401.   See also In re McGowan, 6 B.R. 241, 243 (Bankr. E.D. Pa. 1980)

21  (finding that a 10% equity cushion is sufficient for adequate protection); In re Rogers

22  Development Corp., 2 B.R. 679, 685 (B.Ct.E.D.Virg.1980) (ruling that an equity cushion of

23  approximately 15% to 20% was sufficient adequate protection to the secured creditor).

24      Furthermore, whether the party entitled to such protection is over or undersecured is not

25  dispositive of whether adequate protection is furnished.   As the court in Aqua Assoc., 123 B.R.

26  192, noted:

27

28      Therefore, we believe that, while the presence of an equity cushion

24

1
2
3
4

> should be a relevant factor, it should not be a determinative factor
> in any 'adequate protection' analysis, and particularly one relating
> to § 364(d)(1)(B). The important question, in determination of
> whether the protection to a creditor's secured interest is adequate,
> is whether that interest, whatever it is, is being unjustifiably
> jeopardized.

5
6

Id. at 196 (emphasis added; approving priming financing where interest rate was 5% over prime

and loan likely would enhance value of estate).

7
8
9
10
11
12
13
14
15
16
17
18

      The preservation of the value of a secured creditor's lien is sufficient to provide adequate

protection to a secured creditor when a debtor seeks to use cash collateral. In re Triplett, 87 B.R.

25 (Bankr. W.D. Tex. 1988). See also In re Stein, 19 B.R. 458 (Bankr. E.D. Pa. 1982). In Stein,

the court found that, as a general rule, a debtor may use cash collateral where such use would

enhance or preserve the value of the collateral, and allowed the debtor therein to use cash

collateral even though the secured party had no equity cushion for protection. The Stein court

determined that the use of cash collateral was necessary to the continued operations of the

debtor, and that the creditor's secured position could only be enhanced by the continued

operation of the debtor's business. See also In re McCombs Properties VI, Ltd., 88 B.R. 261

(Bankr. C.D. Cal. 1988) (determining that the debtor's use of cash collateral for needed repairs,

renovations and operating expenses eliminated the risk of diminution in the creditor's interest in

the cash collateral and such use would more likely increase cash collateral).

19
20
21
22
23
24
25
26
27
28

      Here, the only existing lienholders are those holding disputed mechanics' liens against

the Property. Even putting aside the disputed nature of their asserted secured claims, they are

sufficiently protected by an ***enormous equity cushion in the Property that is exponentially***

***greater than the 20% addressed by Mellor (i.e., claims secured by the Property are***

***approximately $936,362 – which includes the $36,362 secured claim of TRI/CON that is to be***

***paid in full from the DIP Loan proceeds – while the Property is valued by the Debtor at $10***

***million)***. See Mellor, 734 F.2d at 140. Furthermore, the use of the DIP Loan proceeds towards

the Repairs and improvements to the Property, will preserve the Debtor's primary asset – the

Property. The Debtor therefore submits that holders of liens against the Property are adequately

1    protected.

2    **B.**    **The DIP Loan Should Be Approved On An Interim Basis Pursuant To The**

3        **Proposed Interim DIP Order, Pending A Final Hearing.**

4        Rule 4001(c)(2) of the Federal Rules of Bankruptcy Procedure governs certain

5    procedures for obtaining authorization to obtain post-petition financing and provides, in relevant

6    part, that "[t]he court may commence a final hearing "[t]he court may commence a final hearing

7    on a motion for authority to obtain credit no earlier than 14 days after service of the motion . . .

8    [but] if the motion so requests, the court may conduct a hearing before such 14-day period

9    expires . . . only to the extent necessary to avoid immediate and irreparable harm to the estate

10    pending a final hearing." Fed. R. Bankr. P. 4001(c)(2).

11        Here, the Debtor is requesting that the Motion be held on an emergency basis.  As

12    discussed above, the Debtor requires immediate financing to promptly commence the Slope

13    Repairs to avoid any potential future liability to the Estate.  Specifically, with regards to the

14    Failing Slope, the Debtor has been informed by the City that if the Slope Repairs are not made

15    before "the next significant rain event,": (1) there would be a "high likelihood" that the integrity

16    of the 30,000 gallon pool and the residence on the Property would be jeopardized; and (2) the

17    Estate may face liability if the neighboring (downslope) properties suffer damages as a result of

18    the Failing Slope. *See* (Gilbertson's Decl. ¶ 14, Doc. No. 28).  The City has also informed the

19    Debtor that, if immediate remedial measures are not taken to repair the Failing Slope, the City

20    intends to commence criminal and/or civil actions against, among other parties, the Debtor,

21    including to seek the appointment of a receiver over the Property, and the assessment of fines

22    because the Property is allegedly in violation of certain municipal ordinances.

23        Further, based on the Debtor's cash flow forecast setting forth the intended use of the DIP

24    Loan proceeds (the "Preliminary Budget") during the Twelve Month Term, the Debtor believes

25    that the proposed funding will provide it with the necessary funds to repair and improve the

26    Property.  A true and correct copy of the Preliminary Budget is attached as **Exhibit "3"** hereto.

27    In addition to the amounts disclosed in the Preliminary Budget, because the Debtor needs its civil

28

1    engineer, TRI/CON Engineering Inc. ("TRI/CON"), to promptly complete its engineering work

2    on the Property, the Debtor will pay TRI/CON in full (*i.e.*, thereby satisfying its alleged

3    mechanics' lien/ secured claim in the approximate amount of $36,362.00) from the DIP Loan

4    proceeds.

5         Given the immediate need for financing coupled with the fact that the Debtor has

6    complied with all applicable Bankruptcy Code provisions regarding this Motion, has negotiated

7    the DIP Loan at arm's length and in good faith, and adequate notice of the relief requested herein

8    has been provided, the DIP Loan should be approved on an interim basis pending a final hearing.

9    **C.    The Debtor Has Satisfied All Procedural Requirements Regarding Approval Of The**

10        **DIP Loan.**

11        Rule 4001(d) of the Federal Rules of Bankruptcy Procedure also sets forth procedural

12   requirements for obtaining post-petition credit.  There are three general provisions of Bankruptcy

13   Rule 4001(d).  First, the Motion must contain a copy of the proposed form of order, which has

14   been done by attaching the proposed interim DIP order (the "Interim DIP Order") as **Exhibit "2"**

15   hereto.  Second, the Motion must provide a concise statement of the relief requested, which was

16   done above.  Third, the Motion is required to be served on a creditors' committee or on the

17   twenty largest unsecured creditors if there is no committee and on such other parties as the Court

18   directs.  Here, the Debtor served the Motion on the twenty largest unsecured creditors, the Office

19   of the United States Trustee, all known lienholders, and those parties who have requested special

20   notice.  Accordingly, the Motion complies with the requirements of Rule 4001(d).  Also, the

21   Debtor has addressed the requirements of Local Bankruptcy Rule 4001-2 and Bankruptcy Rule

22   4001(c) regarding a motion for obtaining post-petition credit.

23                    **III.    CONCLUSION**

24        **WHEREFORE**, the Debtor respectfully requests that this Court:

25        (a)    enter the proposed Interim DIP Order attached hereto as **Exhibit "2"**;

26        (b)    authorize the Debtor to borrow $500,000.00 from the DIP Lender on an interim

27   basis in accordance with the terms set forth above and in the Interim DIP Order;

28

                              27

1   (c)  authorize the Debtor to execute all documents (including all loan and security

2 agreements, promissory notes and related documents) necessary to enable the Debtor to

3 implement the terms of the Interim DIP Order;

4   (d)  schedule a final hearing on the Motion; and

5   (e)  grant such further relief as the Court deems just and proper.

6 DATED:  September 8, 2016    OAK RIVER ASSET MANAGEMENT LLC

7

8           _/s/ Jeffrey S. Kwong_____
            DAVID B. GOLUBCHIK

9            EVE H. KARASIK
            JEFFREY S. KWONG

10           LEVENE, NEALE, BENDER, YOO
              & BRILL L.L.P.

11           Attorneys for Chapter 11 Debtor,
            Oak River Asset Management LLC

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**DECLARATION OF LAWRENCE PERKINS**

2          I, Lawrence Perkins, hereby declare as follows:

3          1.       I am Co-Founder, and Chief Executive Officer of Sierra Constellation Partners,

4   LLC. ("SCP") which maintains offices at 400 S. Hope St. Suite 1050, Los Angeles, California

5   90071.   I am the authorized agent and proposed chief restructuring officer of the Debtor.   I

6   submit this Declaration in support of the "*Emergency Motion For Authority To Obtain Financing*

7   *Pursuant To 11 U.S.C. § 364(d)*" (the "Motion").   Except as otherwise noted, I have personal

8   knowledge of the matters set forth herein.

9          2.       The Debtor commenced its chapter 11 bankruptcy case by filing a voluntary

10  petition under chapter 11 of title 11, sections 101 *et seq.* of the United States Code, (the

11  "Bankruptcy Code") on July 12, 2016 (the "Petition Date").

12         3.       The Debtor's primary asset is its fifty percent (50%) interest in a single family

13  residence located at 119 Furlong Lane, Bradbury CA 91008 (the "Property").   The Property

14  consists of a luxurious single family residence with seven (7) bedrooms, ten (10) bathrooms,

15  pool, basketball court, and tennis court – totaling more than 12,000 square feet.   The Property is

16  located in the affluent and exclusive Bradbury Estates community, which has one of the most

17  expensive zip codes in America.

18         4.       Prior to the Debtor's bankruptcy filing, in 2012, the Debtor acquired and obtained

19  its 50% interest in the Property for the benefit of its affiliated entity, Liberty Asset Management

20  Corporation ("Liberty"), who is a debtor and debtor-in-possession in a related chapter 11 case

21  filed on March 21, 2016 captioned *In re Liberty Asset Management Corporation*, Case No. 2:16-

22  bk-13575-TD (the "Liberty Case").   Liberty owns a forty-four percent (44%) equity interest in

23  the Debtor.   In addition to Liberty, the Debtor's equity is asserted to be owned by the following

24  individuals and entities: Christopher Deryen Lee ("Lee"), Lee Living Trust dated 6/23/1987

25  ("Living Trust"), and YCJS 2012 LLC ("YCJS, and along with Lee and Living Trust, the "Other

26  Equity Members").

27

28

5.      Based on the foregoing, the Debtor, after substantial consideration, determined that commencement of its bankruptcy case was necessary and proper to: (1) sell the Property under section 363 of the Bankruptcy Code and use the Debtor's portion of the proceeds (*i.e.*, those amounts for the Debtor's partial interest in the Property, which are being held for the benefit of Liberty) to benefit its creditors and Liberty's estate; (2) stay all litigation matters against the Debtor; (3) have the Bankruptcy Court determine the nature, amount, and validity of claims asserted by and against the bankruptcy estate (the "<u>Estate</u>"); and (4) have the Bankruptcy Court determine the extent and validity of certain liens (*e.g.*, the disputed mechanics lien described below) asserted against property of the Estate.

6.      Although the Debtor has identified an experienced and qualified broker to sell the Property and believes that the sale of the Property – even in its current condition – will likely yield a substantial sum of money, a portion of which can be used to benefit its estate (the "<u>Estate</u>"), I am cognizant that: (1) there is a "failing slope" on the Property (the "<u>Failing Slope</u>") that requires immediate remedial action (the "<u>Slope Repairs</u>") to protect the integrity and value of the Property before it is marketed; (2) there are several other relatively minor repairs and improvements that need to be made to the Property (the "<u>Other Improvements</u>," and together with the Slope Repairs, the "<u>Repairs</u>") before it is marketed; and (3) that the Slope Repairs and Other Improvements will likely cost no more than $500,000 and will likely generate an eventual sale price for the Property that is several million dollars more than if the Property were to be sold in its current condition.

7.      More importantly, I believe that the Slope Repairs will have to be immediately commenced to avoid any potential future damage to the Property and related liability to its Estate.  Specifically, with regards to the Failing Slope, I have been informed by the City of Bradbury (the "<u>City</u>") that if the Slope Repairs are not made before "the next significant rain event,": (1) there would be a "high likelihood" that the integrity of the 30,000 gallon pool and the residence on the Property would be jeopardized; and (2) the Estate may face liability if the

1    neighboring (downslope) properties suffer damages as a result of the Failing Slope.  *See*

2    (Gilbertson's Decl. ¶ 14, Doc. No. 28).

3        8.    On or around July 2016, the City recorded a "*Notice Of Substandard*" (the

4    "Substandard Notice") against the Property.  My understanding is that such Substandard Notice

5    will impede the Debtor's efforts to sell the Property.

6        9.    Shortly after the Petition Date, the City reached out to me to inform me about the

7    Failing Slope, and for a proposed schedule to "re-install the temporary erosion control

8    measures."  *See* (Gilbertson's Decl. ¶ 8, Doc. No. 28).

9        10.    Subsequently, the City informed me that, if immediate remedial measures are not

10    taken to repair the Failing Slope, the City intends to commence criminal and/or civil actions

11    against, among other parties, the Debtor – including the appointment of a receiver over the

12    Property, and assessment of daily fines because the Property is allegedly in violation of certain

13    municipal ordinances.

14        11.    Because the Property is not currently being rented, the Debtor does not have any

15    source of income to conduct the necessary Repairs to the Property.  Having been informed of the

16    Failing Slope and to avoid any potential future liability to the Estate, I have been working jointly

17    with the Other Equity Members to procure the necessary financing to conduct the Slope Repairs

18    and Other Improvements on the Property.  Further, I believe that it would be most prudent to

19    obtain financing to conduct the necessary Repairs to the Property, because doing so would likely

20    result in a sale price for the Property that is several million dollars more than if sold in its current

21    condition, a portion of which would accrue to the Estate's benefit.

22        12.    In order to ensure that the Debtor is capable of making the necessary Repairs to

23    the Property, thereby preserving and improving the value of the Estate's primary asset, the

24    Debtor requires Court authority to borrow $500,000 (the "DIP Loan") from William Grant

25    Lammersen (the "DIP Lender"), pursuant to § 364(d), upon the terms and conditions set forth in

26    the financing agreement (the "Agreement") attached hereto as **Exhibit "1"**.

27

28

13.    The terms and conditions set forth in the Agreement have been negotiated extensively, in good faith and at arms' length, by the parties.

14.    The salient terms of the Agreement are as follows:

- Amount:  The DIP Loan will be a cash loan of $500,000.00.

- Term:  The term of the DIP Loan is twelve (12) months (the "Twelve Month Term"), with two options to extend for six (6) months each (the "Options").  In other words, if both Options are exercised, the term of the loan would be for twenty-four (24) months.

- Interest:  The interest rate for the DIP Loan during the Twelve Month Term is 9.95%, and each six (6) month Option to extend shall come with a 1.00 point extension fee which is to be paid in full.  The Options can only be exercised if the DIP Lender is notified between 30 and 60 days before the expiration term.

- Late Fee:  Payments under the DIP Loan are due on the first day of each month (the "Monthly Payment Due Date"), with an additional late fee of 10% for each five (5) day period that passes after the Monthly Payment Due Date, for the month which the payment has not been made.

- Interest Past Maturity Date:  For each month in which the loan is not repaid in full beyond the term of the DIP Loan, the interest rate of the DIP Loan shall increase to 15% until all of the criteria of the loan documentation have been met and the original loan amount, with agreed upon interest, has been paid in full.

- Origination Fee:  A 5 point origination fee (the "Origination Fee") shall be paid out of the loan proceeds concurrently with the funding of the DIP Loan.

15.    The DIP Loan is a secured loan being made pursuant to 11 U.S.C § 364(d).  In exchange for the DIP Loan to the Debtor, the DIP Lender will be receiving a first priority lien upon the Property.

16.    According to the Debtor's schedules, the value of the Property is approximately $15 million.  However, based on my investigation and meetings with other professionals, including experienced real estate brokers in the area, I believe that the fair market value of the

1    Property is closer to $10 million.  There is no bank financing in place.  There are approximately

2    $936,362 of asserted claims secured by the Property (which includes the $36,362 secured claim

3    of TRI/CON that is to be paid in full from the DIP Loan proceeds), consisting partially of

4    disputed mechanics' liens on the Property (see Schedule D of the Debtor's Schedules of Assets

5    and Liabilities, Docket No. 11).    I submit that all such alleged lienholders are adequately

6    protected by the enormous equity cushion in the Property.

7          17.    I believe that the terms and conditions of the DIP Loan are extremely favorable.

8    Additionally, no other financing alternative under the terms agreed to by the DIP Lender is

9    presently available to the Debtor.  Despite my attempts to obtain a loan on an unsecured or junior

10   secured basis, neither the DIP Lender nor any other potential lender contacted by me was willing

11   to extend credit on an unsecured or junior secured basis.  To date, the best (and only current)

12   financing commitment that has been provided to the Debtor is the one offered by the DIP

13   Lender.  Under the circumstances, the DIP Loan represents the most favorable and cost-effective

14   method of allowing the Debtor to ensure that the necessary Repairs are made on the Property, so

15   that it may be promptly sold for a fair and reasonable price for the benefit of the Estate.    The

16   amounts from the DIP Loan will help preserve and protect the Debtor's primary asset, thereby

17   benefiting the Estate.

18         18.    Based on the Debtor's cash flow forecast setting forth the intended use of the DIP

19   Loan proceeds (the "Preliminary Budget") during the Twelve Month Term, which I prepared

20   based on my knowledge of the Debtor's needs and discussions with others relevant to the

21   process, I believe that the proposed funding will provide the Debtor with the necessary funds to

22   repair and improve the Property.  A true and correct copy of the Preliminary Budget is attached

23   as **Exhibit "3"** hereto.  In addition to the amounts disclosed in the Preliminary Budget, because

24   the Debtor needs its civil engineer, TRI/CON Engineering Inc. ("TRI/CON"), to promptly

25   complete its engineering work on the Property, the Debtor will pay TRI/CON in full (*i.e.*,

26   thereby satisfying its alleged mechanics' lien/ secured claim in the approximate amount of

27   $36,362.00) from the DIP Loan proceeds.

28

1     I declare under penalty of perjury that the foregoing is true and correct.

2     Executed this ___7th___ day of September 2016 at Los Angeles, California.

3

4                             Lawrence Perkins

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF DAVID GILBERTSON

I, David Gilbertson, hereby declare under penalty of perjury as follows:

1.     I am, and at all times mentioned herein have been, the Deputy City Engineer of the City of Bradbury (the "City"), and am the supervisor of inspector Walt Pruszynski ("Pruszynski").

2.     I am familiar with the property located at 119 Furlong, Bradbury, California 91008 (the "Property").  The City received a complaint from the downstream neighbor regarding mud coming from the Property.  The City's subsequent inspection determined that the irrigation lines were leaking a large amount of water and the manufactured slope below the pool and residence was experiencing some failures from landslides (the "Slope Failure").  Deep fissures in the slope were also observed.

3.     On or around July 2016, the City recorded a "*Notice Of Substandard*" (the "Substandard Notice") against the Property.

4.     If the Slope Failure is not immediately shored up before the next significant rain event, there is a high likelihood of a catastrophic failure of the hillside.  This jeopardizes the integrity of the 30,000 gallon pool and the residence as well as downslope properties.

5.     Further, the Property is in violation of the City's municipal ordinances – including Chapter 3, Section 7302 of the Bradbury Municipal Code prohibiting the discharge of contaminated water into the City's water conveyance system – therefore fines of approximately $1,000 a day may be assessed.

6.     If immediate remedial measures are not taken to repair the Failing Slope, the City intends to commence criminal and/or civil actions against, among other parties, the Debtor, including to seek the appointment of a receiver over the Property.

///

///

///

///

1    I declare under penalty of perjury that the foregoing is true and correct.

2    Executed this 8 ᵀᴴ day of September 2016 at Walnut, California.

3

4    _____

5    David Gilbertson

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT "1"

September 1, 2016

TO: DAVID B. GOLUBCHIK, Esq.
LEVENE, NEALE, BENDER, TOO & BRILL L.L.P.
10250 CONSTELLATION BLVD | SUITE 1700
LOS ANGELES CA, 90067

From: Mr. William Grant Lammersen
Commitment Letter regarding 119 Furlong Lane Bradbury, CA 91008 here in referred to as the "Property".

Per your request please find the general loan terms under which William Grant Lammersen would provide a new, federally recognized, 1st T.D. for the refinance of the Property:

| | |
|---|---|
| Loan Amount: | $500,000.00 |
| Term: | 12 Months (1 Year) with two options to extend 6 months each making the total term, if all options are exercised, 24 months total (2 years) |
| Interest Rate: | 9.95% for the entirety of the 12 months of the term. Each 6 month options to extend, as referenced above, shall come with a 1.00 point extension fee which is to be paid in full up front. Options shall only be exercised if William Grant Lammersen is notified between 30 and 60 days before the expiration term (between months 10-11). |
| | Payments to be due on the 1st (first) day of each month, with an additional late fee of 10% for each 5 day period that passes past the payments due date (the first of every month) in which the payment has not been made. |
| | For each month in which the loan is not repaid in full beyond the term of this loan (every month past the date of maturity which shall be determined at a later date) the interest rate of the loan shall increase to 15% until all criteria of the loan documentation have been meet and the original loan amount with agreed upon interest has been paid out in full. |
| Origination Fee: | A 5 point origination fee shall be paid out of the loan proceeds concurrently with funding of loan. |
| Good Faith Deposit: | None. |
| Prepayment Penalty: | None. |
| Legal Fees: | All fees associated with any and all legal counsel pertaining to the creation, execution, or events that pertain to this transaction shall be paid in full by the Borrower |
| Title/Escrow: | To be mutually agreed upon between Borrower and William Grant Lammersen. |
| Additional Limitations: | Loan is subject to approval of bankruptcy court to place loan in first position and requirement is to keep property tax current and any default is default under loan |

The above general terms constitute lenders interest to lend and are in no way to be construed as a formal commitment or in any way legally binding. Said terms (including loan amount) are subject to change and further inspections and underwriting as William Grant Lammersen sees fit. If the above proposed terms are acceptable, please sign below and return original to William Grant Lammersen.

Sincerely,

William Grant Lammersen

AGREED TO BY:


Perkins                    , Lawrence R.
‾‾‾‾‾‾‾‾‾‾                   ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
(last name)                  (first name, middle initial)


x _____    Signed on: __9/6/2016__

EXHIBIT "2"

DAVID B. GOLUBCHIK (State Bar No. 185520)
EVE H. KARASIK (State Bar No. 155356)
JEFFREY S. KWONG (State Bar No. 288239)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone:  (310) 229-1234
Facsimile:  (310) 229-1244
Email: DBG@LNBYB.COM; EHK@LNBYB.COM; JSK@LNBYB.COM

Attorneys for Debtor and Debtor in Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>OAK RIVER ASSET MANAGEMENT LLC,<br><br>       Debtor and Debtor in Possession. | Case No.: 2:16-bk-19233-TD<br><br>Chapter 11 Case<br><br>**ORDER GRANTING *EMERGENCY* MOTION FOR AUTHORITY TO OBTAIN FINANCING PURSUANT TO 11 U.S.C. § 364(d)**<br><br>Emergency Hearing Schedule:<br>DATE:    _____<br>TIME:    _____<br>PLACE:    Courtroom 1668<br>             255 East Temple Street<br>             Los Angeles, CA 90012 |

On September ___, 2016 at 11:00 a.m., this Court held an emergency hearing on the motion (the "Motion") filed by Oak River Asset Management LLC, the debtor and debtor in possession in the above-entitled Chapter 11 bankruptcy case (the "Debtor"), for the entry of an order authorizing the Debtor to borrow $50,000.00 (the "DIP Loan") from William Grant Lammersen (the "DIP Lender") on a senior-secured basis, pursuant to 11 U.S.C. § 364(d), upon the terms and conditions set forth in the financing agreement (the "Agreement") annexed as **Exhibit "1"** to this Order, for purposes of repairing the "failing slope" on the property located at 119 Furlong Lane, Bradbury, California 91008 (the "Property") and conducting several other repairs/improvements to the Property (collectively, the "Repairs").

The Court, having considered the Motion and the pleadings filed by the Debtor in support of the Motion, any opposition to the Motion, and the statements, arguments and representations of the parties made at the hearing on the Motion, after due deliberation and consideration, and good and sufficient cause appearing therefore,

THIS COURT HEREBY ORDERS as follows:

1.      The Motion is hereby approved and granted on an interim basis, pending a final hearing on the Motion which is set before this Court at 11:00 a.m. on September __, 2016 (the "Final Hearing Date").

2.      The Debtor is hereby authorized to enter into the DIP Loan transaction in accordance with the terms of the Agreement annexed as **Exhibit "1"** to this Order.

3.      In furtherance of the foregoing and without further approval of this Court, the Debtor is authorized to do and perform all acts, to make, execute, and deliver all instruments and documents including, without limitation, the execution or recordation of security agreements, mortgages and financing statements, necessary for the Debtor's performance under the Agreement.

4.      As security for the DIP Loan, effective and perfected upon the entry of this Order and without the necessity of the execution, recordation of filings by the Debtor or the DIP Lender of mortgages, security agreements, control agreements, pledge agreements, financing

1  statements or other similar documents, the DIP Lender shall have a perfected lien upon and

2  against the Property.

3                                    ###

EXHIBIT "3"

Case 2:16-bk-19233-ER    Doc 35    Filed 09/08/16    Entered 09/08/16 10:21:53    Desc
Main Document    Page 46 of 52

Oak River Asset Management, LLC
Projected 13 Week Cash Flow
As of 7/26/2016

| | Week 1 Forecast 7/25/16 | Week 2 Forecast 8/1/16 | Week 3 Forecast 8/8/16 | Week 4 Forecast 8/15/16 | Week 5 Forecast 8/22/16 | Week 6 Forecast 8/29/16 | Week 7 Forecast 9/5/16 | Week 8 Forecast 9/12/16 | Week 9 Forecast 9/19/16 | Week 10 Forecast 9/26/16 | Week 11 Forecast 10/3/16 | Week 12 Forecast 10/10/16 | Week 13 Forecast 10/17/16 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Cash In-flows** | | | | | | | | | | | | | |
| Checks | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Wires | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Other Deposits | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Other | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Receipts** | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Operating Expenditures** | | | | | | | | | | | | | |
| Total Payroll and Related | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Utilities | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Professional Fees | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Insurance | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Real Estate/Property Taxes | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Banking Fees | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Other Travel | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Maintenance | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Part Time Labor | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Operating Expense** | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Rent Expense** | | | | | | | | | | | | | |
| Land & Building | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Equipment | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Rent Expense** | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Operating Expenses** | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Non-Operating Expenditures** | | | | | | | | | | | | | |
| Interest | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Term Loan Principal Repayment | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Legal | - | - | - | 1,000 | - | - | - | - | - | - | - | - | - |
| Other Distributions/US Trustee Fees | - | - | - | - | - | - | - | - | 1,000 | - | - | - | 1,000 |
| **Total Non-Operating Expenditures** | - | - | - | 1,000 | - | - | - | - | 1,000 | - | - | - | 1,000 |
| **Total Expenditures** | - | - | - | 1,000 | - | - | - | - | 1,000 | - | - | - | 1,000 |
| **Net Increase/(decrease)** | - | - | - | (1,000) | - | - | - | - | (1,000) | - | - | - | (1,000) |
| Total beginning cash | - | - | - | - | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (2,000) | (2,000) | (2,000) | (2,000) |
| Cash Flow | - | - | - | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (2,000) | (2,000) | (2,000) | (2,000) | (3,000) |
| **Total Ending Cash** | - | - | - | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (2,000) | (2,000) | (2,000) | (2,000) | (3,000) |

3. Projections and Forecast.xlsx
CF Forecast- Master

1 of 1

Printed: 9/8/2016
Confidential

# EXHIBIT "4"

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| DAVID B. GOLUBCHIK (State Bar No. 185520)<br>EVE H. KARASIK (State Bar No. 155356)<br>JEFFREY S. KWONG (State Bar No. 288239)<br>LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.<br>10250 Constellation Boulevard, Suite 1700<br>Los Angeles, California 90067<br>Telephone: (310) 229-1234<br>Facsimile: (310) 229-1244<br>Email: DBG@LNBYB.com; EHK@LNBYB.COM; JSK@L<br><br>☐ *Individual appearing without attorney*<br>☒ *Attorney for:* Chapter 11 Debtor | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

| In re:<br><br>OAK RIVER ASSET MANAGEMENT LLC,<br><br><br><br><br><br>                                           Debtor(s). | CASE NO.: 2:16-bk-19233-TD<br>CHAPTER: 11 |
|---|---|
| | **STATEMENT REGARDING<br>CASH COLLATERAL OR<br>DEBTOR IN POSSESSION FINANCING<br>[FRBP 4001; LBR 4001-2]** |
| | DATE:            TBA<br>TIME:            TBA<br>COURTROOM:  1668<br>ADDRESS:      255 East Temple Street<br>                        Los Angeles, CA 90012 |

Secured party(ies): Prolien Services, LLC; TRI/CON ENGINEERING INC.

The Debtor has requested the approval of either (1) a motion for use of cash collateral, or postpetition financing, or both, or (2) through a separately-filed motion, a stipulation providing for the use of cash collateral, or postpetition financing, or both.  The proposed form of order on the motion or the stipulation contains the following provisions or findings of fact:

| | Disclosures Tracking FRBP 4001(c)(1)(B)(i) through (xi) and (d)(1)(B) | Page No.: | Line No. (if applicable) |
|---|---|---|---|
| ☒ | (i): "[A] grant of priority or a lien on property of the estate under § 364(c) or (d)" | 1 | |
| ☐ | (ii): "[T]he providing of adequate protection or priority for a claim that arose before the commencement of the case, including the granting of a lien on property of the estate to secure the claim, or the use of property of the estate or credit obtained under § 364 to make cash payments on account of the claim" | | |
| | ☐ Cross-collateralization, *i.e.*, clauses that secure prepetition debt by postpetition assets in which the secured party would not otherwise have a security interest by virtue of its prepetition security agreement or applicable law | | |
| | ☐ Roll-up, *i.e.*, provisions deeming prepetition debt to be postpetition debt or using postpetition loans from a prepetition secured party to pay part or all of that secured party's prepetition debt, other than as provided in § 552(b) | | |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

| | | | |
|---|---|---|---|
| | *Continued from page 1* | | |
| | ☐     Grant a replacement lien in an amount in excess of the dollar amount of the lien on cash collateral as of the petition date | | |
| ☐ | (iii): "[A] determination of the validity, enforceability, priority, or amount of a claim that arose before the commencement of the case, or of any lien securing the claim" | | |
| ☐ | (iv): "[A] waiver or modification of Code provisions or applicable rules relating to the automatic stay"<br>☐     Automatic relief from the automatic stay upon occurrence of certain events. | | |
| ☐ | (v): "[A] waiver or modification of any entity's authority or right to file a plan, seek an extension of time in which the debtor has the exclusive right to file a plan, request the use of cash collateral under § 363(c), or request authority to obtain credit under § 364" | | |
| ☐ | (vi): "[T]he establishment of deadlines for filing a plan of reorganization, for approval of a disclosure statement, for a hearing on confirmation, or for entry of a confirmation order" | | |
| ☒ | (vii): "[A] waiver or modification of the applicability of nonbankruptcy law relating to the perfection of a lien on property of the estate, or on the foreclosure or other enforcement of the lien" | 1 | |
| ☐ | (viii): "[A] release, waiver, or limitation on any claim or other cause of action belonging to the estate or the trustee, including any modification of the statute of limitations or other deadline to commence an action" | | |
| ☐ | (ix): "[T]he indemnification of any entity" | | |
| ☐ | (x): "[A] release, waiver, or limitation of any right under § 506(c)"<br>☐     The granting of any lien on any claim or cause of action arising under § 506(c) | | |
| ☐ | (xi): "The granting of any lien on any claim or cause of action arising under §§ 544, 545, 547, 548, 549, 553(b), 723(a), or 724(a)" | | |

| | **Additional Disclosures Required by LBR 4001-2** | **Page No.:** | **Line No. (if applicable)** |
|---|---|---|---|
| ☐ | With respect to a professional fee carve out, disparate treatment for professionals retained by a creditors' committee from that provided for the professionals retained by the debtor | | |
| ☒ | Pay down prepetition principal owed to a creditor    (Debtor intends to use the proceeds to pay the TRI/Con secured claim in full) | | |
| ☐ | Findings of fact on matters extraneous to the approval process | | |

| | | |
|---|---|---|
| 09/08/2016 | Jeffrey S. Kwong | /s/ Jeffrey S. Kwong |
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

A true and correct copy of the foregoing document entitled: **STATEMENT REGARDING CASH COLLATERAL OR DEBTOR IN POSSESSION FINANCING [FRBP 4001; LBR 4001-2]** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)** :  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On ( *date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL** :
On ( *date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**  (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on ( *date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| _____ | _____ | _____ |
| Date | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*December 2015*                    Page 3                    **F 4001-2.STMT.FINANCE**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled **EMERGENCY MOTION FOR AUTHORITY TO OBTAIN FINANCING PURSUANT TO 11 U.S.C. § 364(d); MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF LAWRENCE PERKINS AND DAVID G. GILBERTSON IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.   TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **September 8, 2016**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Robert T Bryson    rbryson@elllaw.com
- John-Patrick M Fritz    jpf@lnbyb.com, JPF.LNBYB@ecf.inforuptcy.com
- David B Golubchik    dbg@lnbyb.com, dbg@ecf.inforuptcy.com
- Gail S Greenwood    ggreenwood@pszjlaw.com, efitzgerald@pszjlaw.com
- David S Henshaw    david@henshawlaw.com, info@henshawlaw.com
- Eve H Karasik    ehk@lnbyb.com
- Jeffrey S Kwong    jsk@lnbyb.com, jsk@ecf.inforuptcy.com
- Queenie K Ng    queenie.k.ng@usdoj.gov
- Giovanni Orantes    go@gobklaw.com, gorantes@orantes-law.com,cmh@gobklaw.com,gobklaw@gmail.com,go@ecf.inforuptcy.com
- Uzzi O Raanan    uor@dgdk.com, DanningGill@gmail.com;uraanan@ecf.inforuptcy.com
- Jeremy V Richards    jrichards@pszjlaw.com, bdassa@pszjlaw.com;imorris@pszjlaw.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

**2.  SERVED BY UNITED STATES MAIL**: On **September 8, 2016**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be underlinecompleted no later than 24 hours after the document is filed.

**3.   SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **September 8, 2016**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**SERVED BY PERSONAL DELIVERY**
Hon. Thomas B. Donovan
United States Bankruptcy Court
Edward R. Roybal Federal Building
255 E. Temple Street, Ctrm 1345
Los Angeles, CA 90012

☒ Service information continued on attached page **VIA OVERNIGHT MAIL OR NEF**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| September 8, 2016 | Lourdes Cruz | /s/ Lourdes Cruz |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

_June 2012_                    **F 9013-3.1.PROOF.SERVICE**

Oak River
MML
File No.: 7894
SERVICE BY OVERNIGHT MAIL
OR NEF IF MARKED WITH *

Queenie K Ng
Office of the U.S. Trustee
915 Wilshire Blvd., Suite 1850
Los Angeles, CA 90017

Oak River Asset Management LLC
400 S. Hope St., Suite 1050
Los Angeles, CA 90071-2801

Committee Counsel
c/o Jeremy Richards, Esq. **NEF***
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 13th Floo
Los Angeles, CA 90067-4003

AHA 2012 LLC
c/o David Henshaw, Esq. **NEF***
1871 The Alameda, Suite 333
San Jose, CA 95126-1746

Benny Kirk
c/o David Meadows
1801 Century Park East, Suite 1235
Los Angeles, CA 90067-2314

Christopher D. Lee
c/o David Henshaw, Esq. **NEF***
1871 The Alameda, Suite 333
San Jose, CA 95126-1746

City of Bradbury
c/o David Gilbertson, RKA Group
398 Lemon Creek Drive Suite E
Walnut, CA 91789-2649

Franchise Tax Board
Special Procedures - Insolvency
P.O. Box 2952
Sacramento, CA 95812-2952

Frank Lee, T'ee of Lee Living Trust
c/o David Henshaw, Esq. **NEF***
1871 The Alameda, Suite 333
San Jose, CA 95126-1746

Guy Jamison, Esq.
Jamison Duncan
301 E. Colorado Ave., Suite 501
Pasadena, CA 91101-1919

Han Ding Holdings Limited
c/o Jose Padilla, Esq., Cox Castle
2029 Century Park East   Suite 2100
Los Angeles, CA 90067-3007

INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY
OPERATIONS
PO BOX 7346
PHILADELPHIA PA 19101-7346

Liberty Asset Management Corp.
c/o Larry Perkins
400 S. Hope St. Suite 1050
Los Angeles, CA 90071-2801

Los Angeles County Tax Collector
P.O. Box 54018
Los Angeles, CA 90054-0018

Los Angeles County Treasurer and Tax
Collect
PO Box 54110
Los Angeles, CA 90054-0110

Lucy Gao
c/o Alexandre Cornelius, Esq.
1299 Ocean Avenue, Suite 450
Santa Monica, CA 90401-1050

Prolien Services, LLC
c/o Robert Bryson, Esq. **NEF***
10100 Santa Monica Bl., 12th Floor
Los Angeles, CA 90067-4003

SOUTHERN CALIFORNIA EDISON
COMPANY
RECEIVABLES MANAGEMENT
BANKRUPTCY GROUP
1551 W SAN BERNARDINO ROAD
COVINA CA 91722-3407

TLH REO Management LLC
c/o Jose Padilla, Esq., Cox Castle
2029 Century Park East   Suite 2100
Los Angeles, CA 90067-3007

TRI/CON ENGINEERING INC.
Attn:  John Campbell
122 West Olive Avenue
Monrovia, CA 91016-3410

The Gas Company
PO Box C
Monterey Park, CA 91754-0932

YCJS 2012 LLC
c/o David Henshaw, Esq. **NEF***
1871 The Alameda, Suite 333
San Jose, CA 95126-1746

Giovanni Orantes **NEF***
The Orantes Law Firm, A Professional
Cor
3435 wilshire blvd #2920
Los Angeles
Los Angeles, Ca 90010-2015

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT "2"**

[Financing Order, Docket 47]

1 DAVID B. GOLUBCHIK (State Bar No. 185520)
2 EVE H. KARASIK (State Bar No. 155356)
JEFFREY S. KWONG (State Bar No. 288239)
3 LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
4 Los Angeles, California 90067
Telephone:  (310) 229-1234
5 Facsimile:  (310) 229-1244
Email: DBG@LNBYB.COM; EHK@LNBYB.COM; JSK@LNBYB.COM
6

FILED & ENTERED

SEP 16 2016

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY penning   DEPUTY CLERK

7 Attorneys for Debtor and Debtor in Possession

8

9 **UNITED STATES BANKRUPTCY COURT**

10 **CENTRAL DISTRICT OF CALIFORNIA**

11 **LOS ANGELES DIVISION**

12

13

14 In re:                                    ) Case No.: 2:16-bk-19233-TD
                                            )
15 OAK RIVER ASSET MANAGEMENT                )
   LLC,                                      )
16                                           ) Chapter 11 Case
                                            )
17          Debtor and Debtor in Possession. )
                                            )
18                                           ) **ORDER    GRANTING    *EMERGENCY***
                                            ) **MOTION FOR AUTHORITY TO OBTAIN**
19                                           ) **FINANCING PURSUANT TO 11 U.S.C. §**
                                            ) **364(d)**
20                                           )
                                            )
21                                           ) Hearing:
                                            ) DATE:       September 14, 2016
22                                           ) TIME:       11:00 a.m.
                                            ) PLACE:      Courtroom 1345
23                                           )             255 East Temple Street
                                            )             Los Angeles, CA 90012
24                                           )
                                            )
25                                           )
                                            )
26                                           )
                                            )
27 _____ )

28

1       On September 14, 2016 at 11:00 a.m., this Court held a hearing on the motion (the

2       "<u>Motion</u>") filed by Oak River Asset Management LLC, the debtor and debtor in possession in

3       the above-entitled Chapter 11 bankruptcy case (the "<u>Debtor</u>"), for the entry of an order

4       authorizing the Debtor to borrow $500,000.00 (the "<u>DIP Loan</u>") on a senior-secured basis,

5       pursuant to 11 U.S.C. § 364(d), upon the terms and conditions set forth in the financing

6       agreement (the "<u>Agreement</u>") annexed as **<u>Exhibit "1"</u>** to this Order, for maintenance and

7       repairs (the "<u>Repairs</u>") to the property located at 119 Furlong Lane, Bradbury, California 91008

8       (the "<u>Property</u>").

9       The Court, having considered the Motion and the pleadings filed by the Debtor in

10       support of the Motion, any opposition to the Motion asserted at the hearing, the response to the

11       Motion filed by the Office of the United States Trustee [Doc. No. 44] (the "<u>Response</u>"), and the

12       statements, arguments and representations of the parties made at the hearing on the Motion,

13       including the agreement stated on the record of the parties present at the hearing on the Motion,

14       after due deliberation and consideration, and finding that the need for the DIP Loan is

15       immediate and critical for the administration of the Debtor's estate, finding that, given current

16       conditions, the Debtor has been unable to obtain or secure credit or capital on more favorable

17       terms, and good and sufficient cause appearing therefore,

18       **THIS COURT HEREBY ORDERS** as follows:

19       1.     The Motion, as modified by this Order, is hereby approved and granted.

20       2.     The Debtor is hereby authorized to enter into the DIP Loan transaction in

21       accordance with the terms of the Agreement annexed as **<u>Exhibit "1"</u>** to this Order, the material

22       terms of which are restated and/or modified and superseded by this Order as follows:

23       a.  **<u>Lender Entity</u>**: OakRiverHML, LLC (the "<u>DIP Lender</u>")

24       b.  **<u>Loan Amount</u>**: $500,000 (the "<u>Loan Amount</u>")

25       c.  **<u>Origination Fee</u>**: The origination fee shall be 5% of the Loan Amount

26       ($25,000), which shall be paid from the loan proceeds concurrently with the

27       funding of the DIP Loan.

28

d. __Interest__: 9.95% per annum simple interest

e. __Monthly Payments__:    No monthly interest payments will be required. Interest will accrue and paid at loan payoff, as discussed below.

f. __Term__:    The initial term of the loan is 12 months, with two (2) options to extend for a 6-month period each, provided that: (a) written notice is given not later than 30 days before expiration of the initial term; and (b) the Debtor delivers an extension fee in the amount of $5,000 per 6-month option period, representing 1% of the Loan Amount.

g. __Default__:    If the DIP Loan is not paid in full when due, the interest shall increase by 5% per annum, to 14.95% per annum, on the unpaid balance of the DIP Loan.

h. __Loan Draws__:    Although DIP Lender shall make $500,000 available to the Debtor, loan draws shall only be made upon written request by the Debtor on not less than 5 business days' notice, and shall be in draws of no less than $100,000 and only in increments of $100,000.    Interest will accrue only on the borrowed amount.    There is no penalty for drawing less than the maximum amount of the Loans (*i.e.,* $500,000).

i. __Due On Sale__:    In the event that the Property is sold prior to expiration of the loan term, the outstanding loan balance shall be paid in full, including all accrued fees and costs.

j. __Attorneys' Fees And Costs__:    There shall be no attorneys' fees and costs to the DIP Lender in connection with loan origination and documentation. However, consistent with customary loan terms, the DIP Lender shall be entitled to attorneys' fees and costs in connection with enforcing any and all rights related to the financing.

k. __Security__:    The DIP Loan shall be secured by a first priority lien on the Property, senior to all other liens and encumbrances, and junior only to the

2

statutory property tax lien(s).  No loan may be placed on the Property which is senior to the instant DIP Loan.

1.    **Property Taxes**:    The Debtor shall be obligated to pay all outstanding property taxes on the earlier of a: (a) sale of the Property; or (b) recordation of notice of tax sale.  If a notice of tax sale is recorded by the County, the DIP Lender shall have the right to pay the outstanding tax obligation and add the amount paid to the loan balance upon the same terms and conditions set forth above, which may mean that the loan balance will be in excess of $500,000.

3.    In furtherance of the foregoing and without further approval of this Court, the Debtor is authorized to do and perform all acts, to make, execute, and deliver all instruments and documents including, without limitation, the execution or recordation of security agreements, mortgages and financing statements, necessary for the Debtor's performance under the Agreement, as modified by this Order, including to allow the placement and recordation of a security interest as to the entirety of the Property.

4.    As security for the DIP Loan, effective and perfected upon the entry of this Order and without the necessity of the execution, recordation of filings by the Debtor or the DIP Lender of mortgages, security agreements, control agreements, pledge agreements, financing statements or other similar documents (although such filing is permitted), the DIP Lender is hereby granted, continuing valid, binding, enforceable, non-avoidable and automatically and properly perfected security interest in and to the Property in its entirety, including, without limitation, any and all proceeds, products and offsprings derived therefrom

5.    The DIP Loan shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in this Chapter 11 case or any successor case. The DIP Liens shall be valid and enforceable against any trustee or other estate representative appointed in this case or any successor case, upon the conversion of the Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code (or in any other successor case), and/or upon the dismissal of

1   the Chapter 11 Case or successor case. The DIP Loan shall not be subject to challenge under

2   sections 510, 549, or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for

3   the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with

4   or senior to the DIP Loan.

5       6.    Proceeds of the Loan shall be used to satisfy only obligations related to the

6   Property, with exception of quarterly fees to the United States Trustee in the Oak River Asset

7   Management, LLC bankruptcy case.  To the extent that any DIP Loan proceeds are utilized to

8   pay quarterly fees of the United States Trustee, such payment shall be allocated to the Debtor

9   and ultimately paid out of the Debtor's share of any proceeds of the Property's sale.

11                 ###

23

Date: September 16, 2016              Thomas B. Donovan
24                        United States Bankruptcy Judge

1    Agreed:

2    DANNING, GILL, DIAMOND & KOLLITZ, LLP

3    By: _____

4    UZZI O. RAANAN
     Attorneys for TLH REO
5    Management LLC and Han Ding Holding, LTD

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT "1"

September 1, 2016

TO: DAVID B. GOLUBCHIK, Esq.
LEVENE, NEALE, BENDER, TOO & BRILL L.L.P.
10250 CONSTELLATION BLVD | SUITE 1700
LOS ANGELES CA, 90067

From: Mr. William Grant Lammersen
Commitment Letter regarding 119 Furlong Lane Bradbury, CA 91008 here in referred to as the "Property".

Per your request please find the general loan terms under which William Grant Lammersen would provide a new, federally recognized, 1st T.D. for the refinance of the Property:

| | |
|---|---|
| Loan Amount: | $500,000.00 |
| Term: | 12 Months (1 Year) with two options to extend 6 months each making the total term, if all options are exercised, 24 months total (2 years) |
| Interest Rate: | 9.95% for the entirety of the 12 months of the term. Each 6 month options to extend, as referenced above, shall come with a 1.00 point extension fee which is to be paid in full up front. Options shall only be exercised if William Grant Lammersen is notified between 30 and 60 days before the expiration term (between months 10-11). |
| | Payments to be due on the 1st (first) day of each month, with an additional late fee of 10% for each 5 day period that passes past the payments due date (the first of every month) in which the payment has not been made. |
| | For each month in which the loan is not repaid in full beyond the term of this loan (every month past the date of maturity which shall be determined at a later date) the interest rate of the loan shall increase to 15% until all criteria of the loan documentation have been meet and the original loan amount with agreed upon interest has been paid out in full. |
| Origination Fee: | A 5 point origination fee shall be paid out of the loan proceeds concurrently with funding of loan. |
| Good Faith Deposit: | None. |
| Prepayment Penalty: | None. |
| Legal Fees: | All fees associated with any and all legal counsel pertaining to the creation, execution, or events that pertain to this transaction shall be paid in full by the Borrower |
| Title/Escrow: | To be mutually agreed upon between Borrower and William Grant Lammersen. |
| Additional Limitations: | Loan is subject to approval of bankruptcy court to place loan in first position and requirement is to keep property tax current and any default is default under loan |

The above general terms constitute lenders interest to lend and are in no way to be construed as a formal commitment or in any way legally binding. Said terms (including loan amount) are subject to change and further inspections and underwriting as William Grant Lammersen sees fit. If the above proposed terms are acceptable, please sign below and return original to William Grant Lammersen.

Sincerely,

William Grant Lammersen

AGREED TO BY:

Perkins                    , Lawrence R.
(last name)                (first name, middle initial)

x _____    Signed on:  9/6/2016

Agreed:

DANNING, GILL, DIAMOND & KOLLITZ, LLP


By: _____
     UZZI O. RAANAN
     Attorneys for TLH REO
     Management LLC and Han Ding Holding, LTD

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT "3"**

[Sale Order, Docket 138]



1  DAVID B. GOLUBCHIK (State Bar No. 185520)
   JEFFREY S. KWONG (State Bar No. 288239)
2  LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
3  10250 Constellation Boulevard, Suite 1700
   Los Angeles, California 90067
4  Telephone:  (310) 229-1234
   Facsimile:  (310) 229-1244
5  Email: DBG@LNBYB.com; JSK@LNBYB.COM

6  Attorneys for Debtor and Debtor in Possession

7

**FILED & ENTERED**

**AUG 23 2018**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY gonzalez  DEPUTY CLERK**

8                **UNITED STATES BANKRUPTCY COURT**

9                **CENTRAL DISTRICT OF CALIFORNIA**

10                   **LOS ANGELES DIVISION**

11

12

13  In re                                    ) Case No. 2:16-bk-19233-ER
                                             )
14  OAK   RIVER   ASSET   MANAGEMENT         ) Chapter 11
15  LLC,                                     )
                                             ) **ORDER  GRANTING  MOTION  FOR**
16        Debtor and Debtor in Possession.   ) **ORDER  (A)  APPROVING  SALE  OF**
                                             ) **PROPERY  FREE  AND  CLEAR  OF**
17                                           ) **LIENS,  CLAIMS  AND  INTERESTS,**
                                             ) **SUBJECT    TO    OVERBID;    (B)**
18                                           ) **APPROVE  BIDDING  PROCEDURES;**
                                             ) **AND    (C)    GRANTING    RELATED**
19                                           ) **RELIEF**
                                             )
20                                           )
                                             )
21                                           ) Hearing:
22                                           ) Date:    August 16, 2018
                                             ) Time:    11:00 a.m.
23                                           ) Place:   Courtroom 1568
                                             )          255 E. Temple Street
24                                           )          Los Angeles, CA
                                             )
25                                           )
                                             )
26                                           )
                                             )
27  _____ )

28

1

On August 16, 2018 at 11:00 a.m., this Court held a hearing on the motion (the "<u>Motion</u>") filed by Oak River Asset Management LLC, the debtor and debtor in possession in the above-entitled Chapter 11 bankruptcy case (the "<u>Debtor</u>"), motion for order (a) approving sale of property free and clear of liens, claims and interests, subject to overbid; (b) approve bidding procedures; and (c) granting related relief, with respect to that certain real property located at 119 Furlong Lane, Bradbury, California 91008 (the "<u>Property</u>"). Appearances were as set forth on the Court's record.

The Court, having considered the Motion and the pleadings filed by the Debtor in support of the Motion, Los Angeles County Treasurer and Tax Collector's ("<u>Tax Collector</u>") Statement of Obligations in Response to the Motion, Plan Administrator's Response to the Motion, the entire record in this case, having incorporated the tentative ruling with respect to the Motion into this Order, and other good cause appearing,

**THE COURT HEREBY FINDS AND DETERMINES THAT:[1]**

**<u>Jurisdiction, Final Order and Statutory Predicates</u>**

A.    This Court has jurisdiction to hear and determine this matter pursuant to 28 U.S.C. §§ 157(b)(l) and 1334(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O). Venue is proper in this District and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    The statutory predicates for the relief requested in the Motion are §§ 105(a) and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 9006, and Local Bankruptcy Rules 2002 and 6004-1.

C.    This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).

**<u>Notice of the Motion.</u>**

---

[1] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. All findings of fact and conclusions of law announced by the Court at the sale hearing in relation to the Motion are hereby incorporated herein to the extent not inconsistent herewith. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

D.      The notice of the Motion was properly served in accordance with Federal Rules of Bankruptcy Procedure and Central District of California Local Bankruptcy Rules.

E.      A separate *Notice of Sale of Estate Property* relating to the sale of the Property was filed with the Court and posted on the Court's website.

F.      Notice of the Hearing was reasonably calculated to provide all interested parties with appropriate and sufficient notice of the sale of the Property and the hearing under all of the facts and circumstances of the present case.

G.      As evidenced by the declarations of service previously filed with this Court, adequate and sufficient notice of the Motion, hearing and sale of the Property, has been provided in accordance with sections 105(a) and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 9006, and Local Bankruptcy Rules 2002 and 6004-1.  The notices described above were good, sufficient, and appropriate under the circumstances, and no other or further notice of the Motion, Hearing, and the sale of the Property is or shall be required.

H.      A reasonable opportunity to object and be heard with respect to the Motion and the relief requested therein, hearing, and sale of the Property, has been afforded to all interested persons and entities, including the Notice Parties.

**Buyer**

I.      Yeung Sai Yeung ("Buyer") submitted the highest and best price for the Property in the amount of $6,900,000.

J.      Based on declarations submitted in support of the Motion, Buyer learned of the Property for sale and took part in the negotiation and sale process without collusion and in good faith, and, at all times, engaged in arm's length negotiations and bidding.

K.      Buyer has acted in good faith with respect to the sale of the Property and if all of the conditions to closing occur are satisfied, Buyer shall purchase the Property in good faith, and shall be a good-faith buyer within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to all of the protections afforded by Bankruptcy Code section 363(m).  Buyer has proceeded in good faith in all respects in connection with this proceeding.

**Section 363(f) is Satisfied**

L.      The conditions of section 363(f) of the Bankruptcy Code have been satisfied in

full; therefore, the Debtor is authorized to and shall sell the Property free and clear of all

Interests, as that term is defined below, including, without limitation, with the following liens

(as referenced in that Preliminary Title Report ("PTR") attached hereto as **Exhibit "1"** and

filed as Docket No. 137) to attach to the sale proceeds with the same validity and priority as

such lien had prepetition pending further order of this Court:

      a.  Lien in favor of Pioneer General Engineering Contractors [Instrument No.
20140528833 and amended as Instrument No. 20140931680];

      b.  Notice of Pendency recorded by Prolien Services LLC [Instrument No.
20140975888];

      c.  Notice of Pendency recorded by AHA 2012 LLC et al. [Instrument No.
20160147050];

      d.  Notice of Substandard Dwelling recorded by the City of Bradbury [Instrument
No. 20160846314];

      e.  Unsecured Property Taxes for TLH REO Management LLC [Instrument No.
20110673163]; and

      f.  Lien(s) in favor of United Commercial Bank [Instrument No. 05-0802861, as
amended, Instrument No. 05-1092562, as amended].

M.      The sale of the Property shall be free and clear of all such Interests, including

those set forth above, with such Interests to attach to the sale proceeds with the same validity

and priority as such Interests had prepetition. "Interests" is defined collectively as any and all

obligations, interests (including Notices of Pendency and/or Lis Pendens), rights, pledges,

liens (including, without limitation, mechanics', materialmens' and other consensual and non-

consensual liens, and statutory liens), mortgages, deeds of trust, security interests, claims

(including any "claim" as defined in section 101(5) of the Bankruptcy Code), liabilities, debt

obligations, losses, penalties, leases, charges, offsets, contracts, options, rights of first refusal,

rights of first offer, rights of first sale, rights of notice, easements, servitudes, proxies, voting

trusts or agreements, transfer restrictions under any agreement, conditional sale or other title

1    retention agreements, recoupment, hypothecations, demands, licenses, sublicenses,

2    assignments, indentures, loan agreements, instruments, debts, rights of recovery, guaranties,

3    contractual commitments, restrictions, labor and employment rights and claims, employee

4    benefit agreements and obligations, collective bargaining agreements and obligations, pension

5    rights and claims, claims based on reimbursement, contribution, indemnity, exoneration,

6    products liability, tortious conduct, property damage, personal injury, alter-ego, claims based

7    on pension plan contribution and related liabilities, environmental liabilities or obligations

8    (including, without limitation, toxic tort claims), options to purchase, regulatory violations,

9    decrees of any court or governmental entity, charges or any kind or nature, debts arising in

10   any way in connection with any agreements, acts, or failures to act, reclamation claims, and

11   obligation claims, in each case, of whatever kind, nature or description in, against or with

12   respect to the Property, or the Debtor, having arisen, existed, or accrued prior to and though

13   the closing date, whether direct or indirect, absolute or contingent, choate or inchoate, filed or

14   unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or

15   unperfected, material or non-material, disputed or undisputed, known or unknown, matured or

16   unmatured, liquidated or unliquidated, arising or imposed by agreement, understanding, law,

17   equity, statute or otherwise, and whether arising prior to, on or after the commencement of the

18   Bankruptcy Case, including claims or liabilities otherwise arising under doctrines of successor

19   liability, de facto merger or substantial continuity or liabilities or obligations under any law or

20   order.

21         N.    The Debtor is entitled to sell the Property to Buyer free and clear of all

22   Interests against the Debtor, its estate, or any of the Property, including, without limitation

23   those set forth above, because, in each case, one or more of the standards set forth in sub-

24   sections 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  All holders of Interests

25   (except as otherwise provided herein) are adequately protected by having their Interests, if

26   any, in each instance against the Debtor, its estate, or any of the Property, attach to the net

27   proceeds of the Property, in which such creditor or claimant alleges an Interest, in the same

28   order of priority, with the same validity, force, and effect that such Interest had prior to the

1    sale of the Property, without further order of the Court, subject to any claims and defenses the

2    Debtor and its estate may possess with respect thereto.

3        **IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

4        1.    The relief requested in the Motion is granted and approved as set forth in this

5    Order, and the sale of the Property to Buyer is approved. The Debtor, through Lawrence

6    Perkins, is authorized to enter into, execute and deliver all sale and escrow documents and to

7    perform Debtor's obligations under the documents and consummate any transactions

8    contemplated thereby.

9        2.    Pursuant to sections 363(b) and (f) of the Bankruptcy Code, the Debtor is

10   authorized, empowered and directed to take any and all actions necessary or appropriate to

11   (a) consummate the sale of the Property to Buyer (b) close the sale of the Property, if the

12   conditions to closing are satisfied, and (c) complete, execute and deliver, perform under,

13   consummate and implement the sale agreement together with all additional instruments and

14   documents contemplated thereby or are reasonably necessary or desirable to implement the sale

15   of the Property or which are otherwise reasonably requested by Buyer.

16       3.    Buyer shall close escrow, and consummate the sale of the Property, as provided

17   for in the sale documents attached to the Motion as **Exhibit "E"**.  In the event that escrow is not

18   timely closed through the fault of the Buyer, Buyer's deposit shall be forfeited to Debtor

19   without further notice or order.

20       4.    Upon closing, the Debtor shall pay over, or instruct escrow to pay over, the

21   proceeds realized by the Debtor from the sale of the Property as follows:

22           a.    Customary and ordinary closing costs, including escrow and title costs;

23           b.    Broker commissions to the respective real estate brokers;

24           c.    Unpaid and outstanding real property taxes due and owing to the Tax

25               Collector, in the amount of $861,615.11 as of August 31, 2018, or any pro-

26               rated portion thereof based on the date of closing of the sale;

27

28

d.  Unpaid and outstanding obligations due and owing to Oakriverhml, LLC, the post-petition lender to the Debtor [repayment of obligation evidenced by recording as Instrument No. 20161140775];

e.  $850,000.00 to the Co-Owners, as that term is defined in the Motion, pursuant to the previously approved settlement; and

f.  $15,500.00 to the City of Bradbury pursuant to the Stipulation attached as Exhibit "D" to the Motion, which is hereby approved.

5.    The balance of the sale proceeds shall be transferred to the Debtor to be maintained in a segregated account pending further order of this Court.

6.    Nothing set forth herein shall be deemed to determine any rights or interests of any "Minority Investors", as that term is defined in the Motion.

7.    This Order shall be binding in all respects upon the Debtor, its estate, all creditors of, and holders of equity interests in, the Debtor, any holders of Interests in, against, or on all or any portion of the Property (whether known or unknown), Buyer and all successors and assigns of Buyer, and trustees, if any, subsequently appointed in the Debtor's chapter 11 case or upon a conversion of the Debtor's case to a chapter 7 case under the Bankruptcy Code (a "Trustee").  This Order shall inure to the benefit of the Debtor, its bankruptcy estate, and the respective successors and assigns of each of the foregoing, including without limitation any Trustee or any person or entity appointed pursuant to any plan confirmed in the Bankruptcy Case with authority over the Debtor or any assets or property of the Debtor.

8.    Pursuant to  sections 105(a), 363(b) and 363(f) of the Bankruptcy Code, in exchange for the purchase price paid by Buyer, the Debtor is authorized to transfer the Debtor's interest in and convey the Property to Buyer on the closing, and such transfers shall constitute legal, valid, binding, and effective transfers of the Debtor's interest in the Property and shall vest Buyer, with all right, title and interest of the Debtor in and to the Property, and, upon the Debtor's receipt of the purchase price from Buyer, shall be free and clear of all Interests, with all such Interests to attach to the net proceeds as set forth herein, with the same validity, force, and effect, and in the same order of priority, which such Interests now have against the Property,

1   subject to any rights, claims, and defenses the Debtor or its estate, as applicable, may possess

2   with respect thereto.  Upon the closing, Buyer shall take title to and possession of the Property

3   free and clear of any and all Interests.

4          9.      If any person or entity which has filed statements or other documents or

5   agreements evidencing liens on, or Interests in, all or any portion of the Property shall not have

6   delivered to the Debtor prior to the closing, in proper form for filing and executed by the

7   appropriate parties, termination statements, instruments of satisfaction, releases of liens and

8   easements, and any other documents necessary for the purpose of documenting the release of all

9   liens or interests which the person or entity has or may assert with respect to all or any portion

10  of the Property, the Debtor and Buyer, on behalf of the Debtor, are hereby authorized to execute

11  and file such statements, instruments, releases, and other documents on behalf of such person or

12  entity with respect to the Property.  Notwithstanding the foregoing, the provisions of this Order

13  authorizing the transfer of the Property to Buyer, respectively, free and clear of all Interests of

14  any kind or nature whatsoever shall be self-executing and notwithstanding the failure of the

15  Debtor, Buyer, or any other party to execute, file, or obtain termination statements, instruments

16  of satisfaction, release of liens and easements, and any other documents necessary for the

17  purpose of documenting the release of all liens or interests with respect to all or any portion of

18  the Property, all such Interests shall be deemed unconditionally released, discharged,

19  terminated, divested, void, and unenforceable upon the occurrence of the closing.

20         10.     This Order is and shall be binding upon and govern the acts of all persons and

21  entities, including, without limitation, all filing agents, filing officers, title agents, title

22  companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative

23  agencies, governmental departments, secretaries of state, federal, state, and local officials, and

24  all other persons and entities who may be required by operation of law, the duties of their office,

25  or contract, to accept, file, register, or otherwise record or release any documents or instruments,

26  or who may be required to report or insure any title or state of title in or to any lease; and each

27  of the foregoing persons and entities is hereby directed to accept for filing any and all of the

28  documents and instruments necessary and appropriate to consummate the transaction.

11.     The purchase of the Property was undertaken by Buyer without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Property sale shall not affect the validity of the Property sale, unless such authorization and sale are duly stayed pending such appeal.  Buyer is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

12.     The failure specifically to include any particular provision of the sale agreement or any related ancillary document in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the sale agreement and all related ancillary documents be authorized and approved in their entirety.  All of the provisions of this Order are nonseverable and mutually dependent.

13.     The sale agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on the Debtor's estate.

14.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

15.     Notwithstanding Bankruptcy Rule 6004(h), this Order shall be effective and enforceable immediately upon entry and shall not be subject to any stay as provided therein and its provisions shall be self-executing.

        IT IS SO ORDERED.

1

**Approved:**
Los Angeles County Treasurer and Tax Collector

2

3

By: _____

4

Barry S. Glaser
Steckbauer, Weinhart, LLP

5

Attorneys For Los Angeles County
Treasurer and Tax Collector

6

###

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Date: August 23, 2018

_____
Ernest M. Robles
United States Bankruptcy Judge

25

26

27

28

**Approved: August 17, 2018**
Los Angeles County Treasurer and Tax Collector

By: _____

Barry S. Glaser
Steckbauer, Weinhart, LLP
Attorneys For Los Angeles County
Treasurer and Tax Collector

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT "4"**

[Co-Owners 9019 Order, Docket 119]

1  DAVID B. GOLUBCHIK (State Bar No. 185520)
   JEFFREY S. KWONG (State Bar No. 288239)
2  LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
3  10250 Constellation Boulevard, Suite 1700
   Los Angeles, California 90067
4  Telephone: (310) 229-1234
   Facsimile: (310) 229-1244
5  Email: DBG@LNBYB.com; EHK@LNBYB.COM; JSK@LNBYB.COM

6  Attorneys for Debtor and Debtor in Possession

7

**FILED & ENTERED**

APR 17 2018

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY gonzalez DEPUTY CLERK

8              **UNITED STATES BANKRUPTCY COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10                **LOS ANGELES DIVISION**

11

| | |
|---|---|
| 12  In re | Case No. 2:16-bk-19233-ER |
| 13  OAK RIVER ASSET MANAGEMENT LLC, | Chapter 11 |
| 14 | |
| 15      Debtor and Debtor in Possession. | **ORDER GRANTING MOTION PURSUANT TO BANKRUPTCY RULE 9019(a) FOR AN ORDER APPROVING SETTLEMENT** |
| 16 | |
| 17 | |
| 18 | [No Hearing Required Unless Requested – Local Bankruptcy Rule 9013-1(o)] |
| 19 | |

20

21

22

23

24

25

26

27

28

1    The Court having read and considered the *Notice Of Motion And Motion Pursuant To*

2  *Bankruptcy Rule 9019(a) For An Order Approving Settlement* [Doc. No. 116] (the "Motion")

3  filed by Oak River Asset Management LLC (the "Debtor"), the debtor and debtor-in-possession

4  in the above-captioned bankruptcy case, and good cause appearing therefor,

5    IT IS HEREBY ORDERED AS FOLLOWS:

6    1.    The Motion is granted in its entirety.

7    2.    The proposed settlement between and among the Debtor and the Co-Owners as it

8       pertains to the subject real property and proceeds resulting therefrom in

9       accordance with the terms set forth in that certain *"Settlement Agreement and*

10      *Releases"* (the "Agreement"), a true and correct copy of which Agreement is

11      attached as Exhibit "1" to the Declaration of Lawrence Perkins annexed to the

12      Motion, is approved.

13   3.    The Debtor and the Co-Owners are authorized to take all steps reasonably

14      necessary to consummate the terms and conditions of the Agreement.

15                             # # #

Date: April 17, 2018

Ernest M. Robles
United States Bankruptcy Judge

2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT "5"**

[Prolien 9019 Order, Docket 160]

1   David B. Golubchik, Esq. (SBN 185520)
      *dbg@lnbyb.com*
2   Jeffrey S. Kwong, Esq. (SBN 288239)
      *jsk@lnbyb.com*
3   **LEVENE, NEALE, BENDER,**
      **YOO & BRILL, L.L.P.**
4   10250 Constellation Blvd., Suite 1700
5   Los Angeles, CA 90067
    Tel: (310) 229-1234 / Fax: (310) 229-1244
6
7   Attorneys for Debtor and Debtor in Possession

FILED & ENTERED

NOV 02 2018

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY llewis       DEPUTY CLERK

CHANGES MADE BY COURT

8               **UNITED STATES BANKRUPTCY COURT**
9               **CENTRAL DISTRICT OF CALIFORNIA**
                    **LOS ANGELES DIVISION**
10

11  In re                              )   Case No. 2:16-bk-19233-ER
                                       )
12  OAK RIVER ASSET MANAGEMENT LLC,    )   Chapter 11
                                       )
13              Debtor.                )   **ORDER GRANTING MOTION**
                                       )   **PURSUANT TO BANKRUPTCY RULE**
14                                     )   **9019(a) FOR AN ORDER APPROVING**
                                       )   **SETTLEMENT**
15                                     )
16                                     )   [No Hearing Required]
                                       )
17                                     )
                                       )
18                                     )
                                       )
19  _____)

20

21

22

23

24

25

26

27

28

                                    1

1    The Court, having considered the "Notice Of Motion And Motion Pursuant To Bankruptcy Rule

2    9019(a) For An Order Approving Settlement; Memorandum Of Points And Authorities; Declaration Of

3    Lawrence Perkins In Support Thereof" (the "Motion")[1] [Docket No. 140], filed by Oak River Asset

4    Management LLC (the "Debtor") pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure

5    and Local Bankruptcy Rule 9013-1(o), all papers filed in support of the Motion, notice of the Motion

6    having been proper and in accordance with all applicable rules and requirements, the Declaration of

7    David B. Golubchik incorporating the First Amendment to Settlement Agreement ("Amendment")

8    [Docket No. 159], no objections to the Motion having been filed, the entire record in this case, and good

9    cause appearing,

10    **IT IS HEREBY ORDERED THAT:**

11    (1)    The Motion is granted in its entirety;

12    (2)    The Settlement Agreement, subject to the Amendment, is hereby approved; and

13    (3)    All parties to the Settlement Agreement, subject to the Amendment, are authorized and

14    directed to take any and all steps reasonably necessary to consummate the terms and conditions of the

15    agreement.

16                                    # # #

17

18

19

20

21

22

23    Date: November 2, 2018

24                                              Ernest M. Robles
                                               United States Bankruptcy Judge

25

26

27

28    _____
[1] Capitalized but undefined terms herein shall have the same meanings ascribed to them in the Motion.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT "6"**

[AHA 9019 Order, Docket 195]

DAVID B. GOLUBCHIK (State Bar No. 185520)
JEFFREY S. KWONG (State Bar No. 288239)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone:  (310) 229-1234
Facsimile:  (310) 229-1244
Email: DBG@LNBYB.com; EHK@LNBYB.COM; JSK@LNBYB.COM

Attorneys for Debtor and Debtor in Possession

FILED & ENTERED

APR 15 2019

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY gonzalez  DEPUTY CLERK

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:16-bk-19233-ER |
| OAK RIVER ASSET MANAGEMENT LLC, | Chapter 11 |
| Debtor and Debtor in Possession. | **ORDER GRANTING MOTION PURSUANT TO BANKRUPTCY RULE 9019(a) FOR AN ORDER APPROVING SETTLEMENT AND MUTUAL RELEASE** |
| | [No Hearing Required Unless Requested – Local Bankruptcy Rule 9013-1(o)] |

1      The Court having read and considered the *Notice Of Motion And Motion Pursuant To*

2   *Bankruptcy Rule 9019(a) For An Order Approving Settlement And Mutual Release* [Doc. No.

3   190] (the "Motion") filed by Oak River Asset Management LLC (the "Debtor"), the debtor and

4   debtor-in-possession in the above-captioned bankruptcy case, and good cause appearing

5   therefor,

6      IT IS HEREBY ORDERED AS FOLLOWS:

7      1.     The Motion is granted in its entirety.

8      2.     The proposed settlement between and among the Debtor, Liberty and Claimants

9          in accordance with the terms set forth in that certain *"Settlement Agreement and*

10         *Mutual Release"* (the "Agreement"), a true and correct copy of which Agreement

11         is attached as Exhibit "1" to the Declaration of Lawrence Perkins annexed to the

12         Motion, is approved.

13      3.     The Debtor, Liberty and Claimants are authorized to take all steps reasonably

14         necessary to consummate the terms and conditions of the Agreement.

15                               # # #

16

17

18

19

20

21

22

23

24   Date: April 15, 2019

25                                    Ernest M. Robles
United States Bankruptcy Judge

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>EXHIBIT "7"</u>**

[Bank Account Statement]

# Mechanics Bank

P.O. Box 6010
Santa Maria, CA  93456-6010
*Return Service Requested*

Mechanics Bank
Member FDIC

EQUAL HOUSING
LENDER    NMLS #442116

Period Covered:
June 01, 2020 - June 30, 2020
Page 1 of 2

Lawrence  Perkins
400 S. Hope St.
Suite 1050
Los Angeles CA 90071

| | |
|---|---|
| Case Number | 2:16-BK-19233 |
| Case Name | OAK RIVER ASSET MANAGEMENT LLC |
| Trustee Number | 0000450030 |
| Trustee Name | Lawrence  Perkins |

📞 **Questions**
(800) 634-7734
banking.services@stretto.com
**www.stretto.com**

## CONSOLIDATED BALANCE SUMMARY

| Account | Number | Ending Balance Prior Period | Ending Balance This Period |
|---|---|---|---|
| Checking Account | | | |
|   TRUSTEE CHECKING | 0166 | $1,035,040.45 | $1,034,640.45 |
| **Total** | | **$1,035,040.45** | **$1,034,640.45** |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT "8"**

[Claims Chart]

| | FILED CLAIM | | | | SCHEDULED CLAIM | | | | AMOUNT / TREATMENT OF CLAIM UNDER PLAN | | | STATUS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Creditor | Claim No. | Date Claim Filed | Secured | Priority | General Unsecured | Schedule "D" Secured | Schedule "E" Priority | Schedule "F" Unsecured | C/ U/ D | Proposed Secured Amount | Proposed Priority Amount | Proposed Unsecured Amount | Notes |
| AHA 2012 LLC | 2 | 8/12/16 | | | $959,868.49 | | | Unk | | | | $0.00 | **Previously paid and satisfied in full through the proceeds from the sale of the Property, in accordance with the AHA 9019 Order.** |
| Benny Kirk | | | | | | | | $0.00 | | | | $0.00 | No claim filed. |
| Christopher D. Lee | | | | | | | | Unk | | | | $0.00 | **Previously paid and satisfied in full** through the proceeds from the sale of the Property, in accordance with the AHA 9019 Order. |
| City of Bradbury | | | | | | | | $0.00 | | | | $0.00 | No claim filed. |
| Forensis Group | 7 | 10/4/16 | | | $25,726.50 | | | | | | | $25,726.50 | Treatment Under Class 1 of the Plan. |
| Franchise Tax Board | 6 | 9/15/16 | $1,636.17 | $152.00 | | | | $0.00 | | | $1,636.17 | $152.00 | Priority amount to be paid in full on the Effective Date pursuant to the Plan.<br><br>Unsecured amount to be afforded treatment under Class 1 of the Plan. |
| Frank Lee, Co-Trustee of The Lee Living Trust Dated 6/23/1987 and Christopher Lee | 3 | 8/12/16 | | | $1,176,164.38 | | | Unk | | | | $0.00 | **Previously paid and satisfied in full** through the proceeds from the sale of the Property, in accordance with the AHA 9019 Order. |
| Guy Jamison, Esq. | | | | | | | | $0.00 | | | | $0.00 | No claim filed. |
| Han Ding Holdings Limited | | | | | | | | $0.00 | | | | $0.00 | No claim filed. |
| Internal Revenue Service | 5 | 8/22/16 | | | $3,414.67 | | | $0.00 | | | | $3,414.67 | Treatment Under Class 1 of the Plan. |
| Liberty Asset Management Corp. | | | | | | | | $0.00 | | | | $0.00 | No claim filed. |
| Los Angeles County Tax Collector (2016-2017) | 1 | 8/8/16 | $547,596.61 | | | | | Unk | | | | $0.00 | **Previously paid and satisfied in full** through escrow from the Property's sale proceeds. |
| Los Angeles County Tax Collector (2018-2019) | 8 | 6/27/18 | $270,022.16 | | | | | Unk | | | | $0.00 | **Previously paid and satisfied in full** through escrow from the Property's sale proceeds. |
| Lucy Gao | | | | | | | | $0.00 | | | | $0.00 | No claim filed. |
| Prolien Services, LLC | | | | | | $900,000.00 | | | U/D | | | $0.00 | **Previously paid and satisfied in full**, in accordance with the Prolien 9019 Order. |
| Southern California Edison | | | | | | | | $0.00 | | | | $0.00 | No claim filed. |
| The Gas Company | | | | | | | | $0.00 | | | | $0.00 | No claim filed. |
| TLH REO Management LLC | | | | | | | | $0.00 | | | | $0.00 | No claim filed. Co-Owners were also paid $850,000 from the Property's sale proceeds, pursuant to the Co-Owners 9019 Order. |
| TRI/CON ENGINEERING INC. | | | | | | $36,362.00 | | | | | | $0.00 | TriCon's secured claim was **previously satisfied and paid in full** prior to the sale of the Property, as authorized by the Financing Order. |
| YCJS 2012 LLC | 4 | 8/12/16 | | | $1,210,191.78 | | | Unk | | | | $0.00 | **Previously paid and satisfied in full** through the proceeds from the sale of the Property, in accordance with the AHA 9019 Order. |
| **Subtotals:** | | | | | | | | | | **$0.00** | **$1,636.17** | **$29,293.17** | |
| **Total Distribution To Non-Administrative Claims Under Plan:** | | | | | | | | | | | | **$30,929.34** | |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled **DEBTOR'S CHAPTER 11 PLAN** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **August 4, 2020**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Robert T Bryson    rbryson@elllaw.com, lmarquez@robinscloud.com**
- **Robert Thomas Bryson    rbryson@robinscloud.com, lmarquez@robinscloud.com**
- **John-Patrick M Fritz    jpf@lnbyb.com, JPF.LNBYB@ecf.inforuptcy.com**
- **Barry S Glaser    bglaser@lkfirm.com, jlee@lkfirm.com**
- **David B Golubchik    dbg@lnbyb.com, stephanie@lnbyb.com**
- **Gail S Greenwood    ggreenwood@pszjlaw.com, rrosales@pszjlaw.com**
- **David S Henshaw    david@henshawlaw.com, info@henshawlaw.com**
- **Eve H Karasik    ehk@lnbyb.com**
- **Jeffrey S Kwong    jsk@lnbyb.com, jsk@ecf.inforuptcy.com**
- **Kelly L Morrison    kelly.l.morrison@usdoj.gov**
- **Giovanni Orantes    go@gobklaw.com, gorantes@orantes-law.com,cmh@gobklaw.com,gobklaw@gmail.com,go@ecf.inforuptcy.com;orantesgr89122@notify.bestcase.com**
- **Uzzi O Raanan    uraanan@DanningGill.com, DanningGill@gmail.com;uraanan@ecf.inforuptcy.com**
- **Jeremy V Richards    jrichards@pszjlaw.com, bdassa@pszjlaw.com;imorris@pszjlaw.com**
- **United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov**

**2.  SERVED BY UNITED STATES MAIL**: On **August 4, 2020**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ *Service information continued on attached page*

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **August 4, 2020**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**_Served by Overnight Mail_**
Hon. Ernst M. Robles
United States Bankruptcy Court
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1560 / Courtroom 1568
Los Angeles, CA 90012

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| August 4, 2020 | Stephanie Reichert | /s/ Stephanie Reichert |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                    **F 9013-3.1.PROOF.SERVICE**

Label Matrix for local noticing
0973-2
Case 2:16-bk-19233-ER
Central District of California
Los Angeles
Tue Aug  4 09:29:46 PDT 2020

Bradley D. Sharp
Ch. 11 Trustee for Namco Capital Group
333 S. Grand Ave.
Suite 4300
Los Angeles, CA 90071-1578

Los Angeles County Treasurer & Tax  Collecto
Steckbauer Weinhart, LLP
c/o Barry S. Glaser
333 S. Hope Street, Ste. 3600
Los Angeles, CA 90071-3045

Oak River Asset Management LLC
400 S. Hope St., Suite 1050
Los Angeles, CA 90071-2836

Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067-4003

SLBiggs
10960 Wilshire Boulevard
7th Floor
Los Angeles, CA 90024-3710

AHA 2012 LLC
c/o David Henshaw, Esq.
1871 The Alameda, Suite 333
San Jose, CA 95126-1746

Benny Kirk
c/o David Meadows
1801 Century Park East, Suite 1235
Los Angeles, CA 90067-2314

Christopher D. Lee
c/o David Henshaw, Esq.
1871 The Alameda, Suite 333
San Jose, CA 95126-1746

City of Bradbury
c/o David Gilbertson, RKA Group
398 Lemon Creek Drive Suite E
Walnut, CA 91789-2649

FORENSIS GROUP
301 N LAKE AVE STE 420
PASADENA CA 91101-5119

FRANCHISE TAX BOARD
BANKRUPTCY SECTION MS A340
PO BOX 2952
SACRAMENTO CA 95812-2952

Franchise Tax Board
Special Procedures - Insolvency
P.O. Box 2952
Sacramento, CA 95812-2952

Frank Lee, T'ee of Lee Living Trust
c/o David Henshaw, Esq.
1871 The Alameda, Suite 333
San Jose, CA 95126-1746

Guy Jamison, Esq.
Jamison Duncan
301 E. Colorado Ave., Suite 501
Pasadena, CA 91101-1919

Han Ding Holdings Limited
c/o Jose Padilla, Esq., Cox Castle
2029 Century Park East   Suite 2100
Los Angeles, CA 90067-3007

(p)INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY OPERATIONS
PO BOX 7346
PHILADELPHIA PA 19101-7346

(p)LOS ANGELES COUNTY TREASURER AND TAX COLLE
ATTN BANKRUPTCY UNIT
PO BOX 54110
LOS ANGELES CA 90054-0110

Liberty Asset Management Corp.
c/o Larry Perkins
400 S. Hope St. Suite 1050
Los Angeles, CA 90071-2836

Lucy Gao
c/o Alexandre Cornelius, Esq.
1299 Ocean Avenue, Suite 450
Santa Monica, CA 90401-1050

Prolien Services, LLC
c/o Robert Bryson, Esq.
10100 Santa Monica Bl., 12th Floor
Los Angeles, CA 90067-4003

(p)SOUTHERN CALIFORNIA EDISON COMPANY
RECEIVABLES MANAGEMENT BANKRUPTCY GROUP
1551 W SAN BERNARDINO ROAD
COVINA CA 91722-3407

TLH REO Management LLC
c/o Jose Padilla, Esq., Cox Castle
2029 Century Park East   Suite 2100
Los Angeles, CA 90067-3007

TRI/CON ENGINEERING INC.
Attn:  John Campbell
122 West Olive Avenue
Monrovia, CA 91016-3410

The Gas Company
PO Box C
Monterey Park, CA 91754-0932

United States Trustee (LA)
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017-3560

Unsecured Committee of Liberty
c/o Jeremy Richards, Esq.
10100 Santa Monica Blvd., 13th Floo
Los Angeles, CA 90067-4003

YCJS 2012 LLC
c/o David Henshaw, Esq.
1871 The Alameda, Suite 333
San Jose, CA 95126-1746

Giovanni Orantes
The Orantes Law Firm, A Professional Cor
3435 wilshire blvd #2920
Los Angeles
Los Angeles, Ca 90010-2015

Lawrence R Perkins
400 S Hope St Suite 1050
Los Angeles, CA 90071-2836

Robert Thomas Bryson
Robins Cloud
808 Wilshire Boulevard
Suite 450
Los Angeles, CA 90017