DAVID B. GOLUBCHIK (State Bar No. 185520)
JEFFREY S. KWONG (State Bar No. 288239)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: DBG@LNBYB.com; JSK@LNBYB.COM

Attorneys for Chapter 11 Debtor and Plan Proponent

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>OAK RIVER ASSET MANAGEMENT LLC,<br><br>    Debtor and Debtor in Possession. | Case No. 2:16-bk-19233-ER<br><br>Chapter 11 Case<br><br>**NOTICE OF MOTION AND MOTION FOR CONFIRMATION OF DEBTOR'S CHAPTER 11 PLAN; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF LAWRENCE PERKINS IN SUPPORT THEREOF**<br><br>Plan Confirmation Hearing:<br>Date:  September 2, 2020<br>Time:  10:00 a.m.<br>Place:  Courtroom 1568<br>    255 East Temple Street<br>    Los Angeles, CA 90012 |

1

# TABLE OF CONTENTS

**MEMORANDUM OF POINTS AND AUTHORITIES** ...................................................... **4**

**I.**      **STATEMENT OF RELEVANT FACTS**.............................................................. **4**

     **A.**      **Case Background, Sale Of Property, Compromises Of Controversies** .... **4**

     **B.**      **Summary of the Plan** ........................................................................ **7**

**II.**      **DISCUSSION** ....................................................................................... **9**

     **A.**      **The Plan Does Not Have Any Impaired Classes** ........................... **9**

     **B.**      **The Plan Complies With All Of The Applicable Provisions Of 11 U.S.C. § 1129(a)** ............................................................... **9**

         **1.**      **Section 1129(a)(1) of the Code** .......................................... **9**

         **2.**      **Section 1129(a)(2) of the Code** ........................................ **13**

         **3.**      **Section 1129(a)(3) of the Code** ........................................ **14**

         **4.**      **Section 1129(a)(4) of the Code** ........................................ **15**

         **5.**      **Section 1129(a)(5) of the Code** ........................................ **15**

         **6.**      **Section 1129(a)(6) of the Code** ........................................ **16**

         **7.**      **Section 1129(a)(7) of the Code** ........................................ **16**

         **8.**      **Section 1129(a)(8) of the Code** ........................................ **17**

         **9.**      **Section 1129(a)(9) of the Code** ........................................ **18**

         **10.**      **Section 1129(a)(10) of the Code** ...................................... **19**

         **11.**      **Section 1129(a)(11) of the Code** ...................................... **20**

         **12.**      **Section 1129(a)(12) of the Code** ...................................... **21**

         **13.**      **Section 1129(a)(13) of the Code** ...................................... **21**

         **14.**      **Section 1129(a)(14) of the Code** ...................................... **21**

         **15.**      **Section 1129(a)(15) of the Code** ...................................... **22**

         **16.**      **Section 1129(a)(16) of the Code** ...................................... **22**

**III.**    **CONCLUSION** .................................................................................... **22**

i

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*In re Acequia, Inc.*
    787 F.2d 1352 (9th Cir. 1986) .................................................................... 20

*In re American Solar King Corp.*
    90 B.R. 808 (Bankr. W.D. Tex. 1988) ....................................................... 14

*In re Apex Oil Co.*
    118 B.R. 683 (Bankr. E.D. Mo. 1990) ........................................................ 20

*In re Bel Air Assocs.*
    4 B.R. 168, 174-75 (Bankr. W.D. Okla. 1980) ........................................... 11

*Cane v. Johns-Manville Corp.*
    843 F.2d 636 (2nd Cir. 1988) ........................................................................ 9

*In re Downtown Inv. Club III*
    89 B.R. 59 (9th BAP Cir. 1988) ................................................................... 13

*In re Gillette Assocs., Ltd.*
    101 B.R. 866 (Bankr. N.D. Ohio 1989) ................................................. 13, 19

*In re Holley Garden Apartments. Ltd.*
    238 B.R. 488 (Bankr. M.D. Fla. 1999) ................................................... 13, 19

*In re Johnston*
    21 F.3d 323 (9th Cir. 1994) ............................................................................ 9

*In re Montclair Retail Center*
    177 B.R. 663 (9th Cir. BAP 1995) ............................................................ 9, 10

*In re Parks Lumber Co., Inc.*
    19 B.R. 285 (Bankr. W.D. La. 1982) ........................................................... 16

*In re Pike's Peak Water Co.*
    779 F.2d 1456 (10th Cir. 1985) .................................................................... 20

*In re Produce Hawaii, Inc.*
    41 B.R. 301 (Bankr. D.. Hawaii 1984) ......................................................... 16

*In re Stanley Hotel, Inc.*
    13 B.R. 926 (Bankr. D. Colo. 1981) ............................................................ 13

*In re Texaco, Inc.*
    84 B.R. 893 (Bankr. S.D.N.Y. 1988) ........................................................... 13

ii

*In re Tucson Self-Storage, Inc.*
    166 B.R. 892 (9th Cir. BAP 1994) ..................................................................9, 10

*In re Union County Wholesale Tobacco & Candy Co.*
    8 B.R. 442 (Bankr. D.N.J. 1981) .............................................................................13

*In re Victory Constr. Co.*
    42 B.R. 145 (Bankr. C.D. Cal. 1984) ......................................................................13

*In re Warren*
    89 B.R. 87 (9th Cir. BAP 1988) ..............................................................................14

**Other State Cases**

*in re Liberty Asset Management Corporation*
    Case No. 2:16-bk-13575-ER .....................................................................................4

**Federal Statutes**

11 U.S.C. § 101 ............................................................................................... passim

11 U.S.C. § 364(d) ....................................................................................................5

11 U.S.C. § 365 .......................................................................................................12

11 U.S.C. § 502(a) ...................................................................................................12

11 U.S.C. § 507(a) .............................................................................................10, 18

11 U.S.C. § 1121 .....................................................................................................13

11 U.S.C. § 1122 ................................................................................9, 10, 12, 14, 18

11 U.S.C. § 1123 .........................................................................................9, 12, 14

11 U.S.C. § 1123(a) ...........................................................................................10, 11

11 U.S.C. § 1123(b) ...........................................................................................11, 12

11 U.S.C. § 1125 .............................................................................................13, 14

11 U.S.C. § 1126 .....................................................................................17, 19, 20

11 U.S.C. § 1127 .............................................................................................13, 14

11 U.S.C. § 1129(a) .........................................................................................8, 9, 22

11 U.S.C. § 1129(a)(1) ........................................................................................9, 12

11 U.S.C. § 1129(a)(2) .............................................................................................13

11 U.S.C. § 1129(a)(3) ........................................................................................... 14

11 U.S.C. § 1129(a)(4) ........................................................................................... 15

11 U.S.C. § 1129(a)(5) ..................................................................................... 15, 16

11 U.S.C. § 1129(a)(6) ........................................................................................... 16

11 U.S.C. § 1129(a)(7) ........................................................................................... 16

11 U.S.C. § 1129(a)(8) ............................................................................... 17, 19, 20

11 U.S.C. § 1129(a)(9) ..................................................................................... 18, 19

11 U.S.C. § 1129(a)(10) ................................................................................... 19, 20

11 U.S.C. § 1129(a)(11) ......................................................................................... 20

11 U.S.C. § 1129(a)(12) ......................................................................................... 21

11 U.S.C. § 1129(a)(13) ......................................................................................... 21

11 U.S.C. § 1129(a)(14) ......................................................................................... 21

11 U.S.C. § 1129(a)(15) ......................................................................................... 22

11 U.S.C. § 1129(a)(16) ......................................................................................... 22

11 U.S.C. § 1129(b) ........................................................................................... 8, 22

**Other Authorities**

Fed. R. Bankr. P. 3020(b)(2) ................................................................................. 14

Fed. R. Bankr. P. 9019(a) ........................................................................................ 5

H.R. Rep. No. 95-595, 9th Cong., 1st Sess. 412 (1977) ......................................... 9

1    **PLEASE TAKE NOTICE** that a hearing will be held on September 2, 2020, at 10:00

2    a.m. (the "Confirmation Hearing"), before the Honorable Ernest M. Robles, United States

3    Bankruptcy Judge, in Courtroom "1568", located at 255 E. Temple Street, Los Angeles,

4    California, to consider the motion (the "Motion") for confirmation of the *Debtor's Chapter 11*

5    *Plan* (the "Plan") filed by Oak River Asset Management, LLC, the debtor and debtor in

6    possession in the above-captioned Chapter 11 bankruptcy case (the "Debtor").  As set forth more

7    fully in the accompanying Memorandum of Points and Authorities, the Debtor's Plan should be

8    confirmed because all of the applicable requirements of Bankruptcy Code Sections 1129(a) and

9    (b) have been met.

10    **PLEASE TAKE FURTHER NOTICE** that, as of the filing of the Plan, the Debtor's

11    bank accounts with Signature Bank (x4425) and Rabo Bank (x0166) (collectively, the "Bank

12    Accounts") are holding funds in the aggregate amount of approximately **$1,034,640.45** (the

13    "Estate Funds").   Excluding administrative claims (which are currently estimated to total

14    **$888,920.02**), the total amount of the claims asserted against the Debtor's estate that have not yet

15    been satisfied is **$30,929.34**.  The Plan proposes to, among other things: (1) first, allocate the

16    Estate Funds to pay all allowed and remaining claims in full on the Effective Date (as defined in

17    the Plan); and (2) second, distribute any remaining Estate Funds to Liberty, as the 100% equity

18    holder of the Debtor.[1]

19    **PLEASE TAKE FURTHER NOTICE** that the Motion is based upon this Notice of

20    Motion and Motion, 11 U.S.C §1129, the attached Memorandum of Points and Authorities and

21    Declaration of Lawrence Perkins, the entire record of the Debtor's bankruptcy case, the

22    statements, arguments and representations of counsel to be made at the hearing on the Motion,

23    and any other evidence properly presented to the Court at or prior to the hearing on the Motion.

24

---

25    [1] As described more fully in Section II.E.1 of the Plan, before distributions are made to Class 2
(Equity) on or about the Effective Date, the Debtor shall hold back funds in the amount of

26    $15,000.00 to fund the Post Effective Date Reserve.  The Reorganized Debtor shall have the
right to pay professional fees and expenses incurred after the Effective Date out of the Post

27    Effective Date Reserve, and without further order of the Court.  Any amounts remaining in the
Post-Confirmation Reserve will be paid to Class 2 (Equity) before the Court enters an order for

28    final decree.

**PLEASE TAKE FURTHER NOTICE** that responses to the Motion, if any, must be in writing and filed with the Bankruptcy Court and served upon counsel for the Debtor at the address set forth in the upper left-hand corner of the first page of this Notice and Motion by not later than 14 days prior to the hearing on plan confirmation.  Failure to timely file and serve an opposition to the Motion may be deemed by the Court to be consent to the granting of the relief requested in the Motion.

**PLEASE TAKE FURTHER NOTICE** that, any reply to any responses to the Motion, if any, must be filed with the Court and served upon any parties who filed responses to the Motion by not later than seven (7) days prior to the hearing on plan confirmation.

**WHEREFORE**, the Debtor respectfully requests that the Court enter an Order:

(1)     finding that the Plan meets each and every requirement for confirmation pursuant to 11 U.S.C. §§ 1129(a) and (b);

(2)     confirming the Plan; and

(3)     granting such other and further relief as is just and proper under the circumstances.

Dated: August 3, 2020                OAK RIVER ASSET MANAGEMENT, LLC

By: ___*/s/ David Golubchik*_____
                                        DAVID B. GOLUBCHIK
                                        JEFFREY S. KWONG
                                        LEVENE, NEALE, BENDER, YOO
                                        & BRILL, L.L.P.
                                        Attorneys for Chapter 11 Debtor
                                        and Debtor in Possession

3

Oak River Asset Management, LLC, the debtor and debtor in possession in the above-captioned Chapter 11 bankruptcy case (the "Debtor") submits this Motion and Memorandum of Points and Authorities (the "Memorandum") in support of confirmation of the *Debtor's Chapter 11 Plan* (the "Plan"), and respectfully represents as follows:[2]

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    STATEMENT OF RELEVANT FACTS

**A.    Case Background, Sale Of Property, Compromises Of Controversies.**

1.    The Debtor filed a voluntary petition under chapter 11 of 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") on July 12, 2016 (the "Petition Date").   No official committee of creditors was formed in the Bankruptcy Case.   No bankruptcy trustee was appointed in the Bankruptcy Case.   On September 27, 2016, the Court entered an order approving the Debtor's employment of Lawrence R. Perkins ("Perkins") of SierraConstellation Partners LLC ("SCP") as the Debtor's Chief Restructuring Officer ("CRO") effective as of the Petition Date.

2.    On the Petition Date, the Debtor's primary asset was its fifty percent (50%) interest in a single family residence located at 119 Furlong Lane, Bradbury California 91008 (the "Property").   TLH REO Management LLC and Han Ding Holdings, LTD (collectively, the "Co-Owners") had a thirty-six percent (36%) and fourteen percent (14%) ownership interest in the Property.   In 2012, the Debtor acquired and obtained its 50% interest in the Property for the benefit of its affiliated entity, Liberty Asset Management Corporation ("Liberty"), who is a reorganized debtor in a related chapter 11 case filed on March 21, 2017 captioned *in re Liberty Asset Management Corporation*, Case No. 2:16-bk-13575-ER (the "Liberty Case").

3.    Because the: (1) Property required some urgent slope repair, engineering, and other work before its sale value can be maximized for the benefit of the estate (the "Repairs"); and (2) the Debtor required funding from OakRiverHML, LLC (the "DIP Lender") to complete the Repairs, on September 8, 2016, the Debtor filed the "*Emergency Motion For Authority To*

---

[2]    Unless otherwise noted, all capitalized terms in this Motion and Memorandum shall have the definitions ascribed to them in the *Debtor's Chapter 11 Plan* (referred to herein as the "Plan").

*Obtain Financing Pursuant To 11 U.S.C. § 364(d)*" [Doc. No. 35] (the "<u>Financing Motion</u>").  In the Financing Motion, the Debtor stated that it needed its "civil engineer, TRI/CON Engineering Inc. . . . to promptly complete its engineering work on the Property," and disclosed that it was obtaining a post-petition loan to, among other things, "pay TRI/CON in full (*i.e.*, thereby satisfying its alleged mechanics' lien/ secured claim in the approximate amount of $36,362.00) from the DIP loan proceeds." *See* (Plan Ex. 1).  On September 16, 2019, the Court entered its "*Order Granting Emergency Motion For Authority To Obtain Financing Pursuant To 11 U.S.C. § 364(d)*" [Doc. No. 47] (the "<u>Financing Order</u>"), which provided that the Financing Motion "as modified by th[e Financing Order], is hereby approved and granted . . . . Proceeds of the Loan shall be used to satisfy only obligations related to the Property[.]" *See* (Plan Ex. 2).  Shortly thereafter, on or around September 21, 2016, the $36,362.00 scheduled claim (the "<u>Tricon Claim</u>") for Tri/Con Engineering Inc. ("<u>Tricon</u>") was paid and fully satisfied from the loan proceeds from the DIP Lender, and Tricon continued performing Repairs on the Property.  True and correct copies of the Financing Motion and Financing Order are attached respectively as **Exhibits "1" and "2"** to the Plan.

4.	After some extensive property remediation, marketing, and negotiation efforts, the Debtor received a $6,900,000 written offer from Yeung Sai Yeung (the "<u>Buyer</u>") to purchase the Property (the "<u>APA</u>").  As a result, on July 26, 2018, the Debtor filed its "*Motion For Order (A) Approving Sale Of Property Free And Clear Of Liens, Claims And Interests, Subject To Overbid; (B) Approve Bidding Procedures; And (C) Granting Related Relief*" [Doc. No. 127] (the "<u>Sale Motion</u>"), seeking Court approval of the sale of the Property to the Buyer subject to overbidding. The Sale Motion was granted by an order entered by the Court on August 23, 2018 [Doc. No. 138] (the "<u>Sale Order</u>").  A true and correct copy of the Sale Order is attached as **Exhibit "3"** to the Plan.

5.	In addition to secured creditor claims, the Co-Owners were also paid $850,000 from the Property's sale proceeds, pursuant to the agreement between the Debtor and the Co-Owners, that was approved by the Court pursuant to the "*Order Granting Motion Pursuant To Bankruptcy Rule 9019(a) For An Order Approving Settlement*" [Doc. No. 119] (the "<u>Co-Owners</u>

1    9019 Order"). A true and correct copy of the Co-Owners 9019 Order is attached as **Exhibit "4"**

2    to the Plan.

3       6.  Around the time that, or shortly after the Sale Order was entered, the Debtor

4    reached a resolution of its disputes with: (1) claimant Prolien Services, LLC ("Prolien"), Pioneer

5    General Engineering Contractors, Inc. ("Pioneer"), and their related entities and individuals (the

6    "Prolien Claimants"); and (2) claimants AHA 2012 LLC, Frank Lee, Co-Trustee of The Living

7    Trust dated 6/23/1987, and Christopher Lee (collectively, the "AHA Claimants"). On November

8    2, 2018 and March 25, 2019 respectively, the Court entered orders approving: (1) the

9    compromise of controversy that the Debtor reached with the Prolien Claimants for, among other

10    things, a release of certain mechanic's liens on the Property and full and final satisfaction of the

11    Prolien Parties' claims for a payment of $350,000 to be paid directly from the escrow account for

12    the sale of the Property [Doc. No. 160] (the "Prolien 9019 Order"); and (2) the compromise of

13    controversy that the Debtor had reached with the AHA Claimants for, among other things, the

14    AHA Claimants to have a $2,000,000 general unsecured claim against the Debtor's estate that

15    shall be authorized to be paid promptly after Court approval thereof [Doc. No. 195] (the "AHA

16    9019 Order"). Pursuant to the Prolien 9019 Order and AHA 9019 Order, the claims of the

17    Prolien Claimants and AHA Claimants – including, but not limited to, those claims asserted in

18    proof of claim nos. 2, 3, and 4 – have been paid and satisfied in full through the proceeds from

19    the sale of the Property. True and correct copies of the Prolien 9019 Order and AHA 9019 Order

20    are attached respectively as **Exhibits "5" and "6"** to the Plan.

21       7.  In addition, the undisputed secured tax claims of the Los Angeles County Tax

22    Collector, who filed proof of claim nos. 1 and 7, were paid through escrow from the Property's

23    sale proceeds.

24       8.  Currently, the Debtor's bank accounts with Signature Bank (x4425) and Rabo

25    Bank (x0166) (collectively, the "Bank Accounts") are holding funds in the aggregate amount of

26    approximately **$1,034,640.45** (the "Estate Funds"). Excluding administrative claims (which are

27    currently estimated to total approximately **$230,000**), the total amount of the claims asserted

28    against the Debtor's estate that have not yet been satisfied is **$30,929.34**. The Plan proposes to:

(1) first, allocate the Estate Funds to pay all allowed and remaining claims in full on the Effective Date (as defined in the Plan); and (2) second, distribute any remaining Estate Funds to Liberty, as the 100% equity holder of the Debtor.[3]  True and correct redacted copies of the bank statements for the Bank Accounts are attached as **Exhibit "7"** to the Plan.  Further, a chart describing and analyzing all of the claims scheduled by the Debtor, or asserted against the Debtor's estate is attached as **Exhibit "8"** to the Plan.

9.    As discussed below, the Plan complies with all of the requirements for confirmation under Sections 1129(a) and (b) of 11 U.S.C. § 101 *et seq.* (the "Code") and should, therefore, be confirmed.

**B.    Summary of the Plan.**

10.    The Plan's effective date (the "Effective Date") will be the first business day which is at least fifteen days following the date of entry of the Court order confirming the Plan (the "Plan Confirmation Order") and the satisfaction or waiver by the Debtor of all of the following conditions to the effectiveness of the Plan: (a) there shall not be any stay in effect with respect to the Plan Confirmation Order; and (b) the Plan Confirmation Order shall not be subject to any appeal or rehearing.  The Debtor, following the Effective Date, will be referred to as the "Reorganized Debtor."

11.    The Plan provides that all allowed administrative claims of the Estate shall be paid in full on the Effective Date of the Plan; *provided, however*, allowed administrative claims of professionals employed at the expense of the Estate that are required to file and obtain court approval of their fees shall be paid upon the later of: (a) the Effective Date of the Plan, or (b) entry of a final, non-appealable order approving their fees on a final basis.

12.    All allowed priority tax claims, including the priority tax claim filed by the

---

[3] As described more fully in Section II.E.1 of the Plan, before distributions are made to Class 2 (Equity) on or about the Effective Date, the Debtor shall hold back funds in the amount of $15,000.00 to fund the Post Effective Date Reserve.  The Reorganized Debtor shall have the right to pay professional fees and expenses incurred after the Effective Date out of the Post Effective Date Reserve, and without further order of the Court.  Any amounts remaining in the Post-Confirmation Reserve will be paid to Class 2 (Equity) before the Court enters an order for final decree.

Franchise Tax Board (the "FTB"), shall receive on account of such claims payment in full on the Effective Date of the Plan.

13.     The Plan provides treatment for and has two (2) classes of unimpaired creditors and interest holders, as follows:

(a)     Class 1 consists of all of the Debtor's allowed general unsecured claims. This class is not impaired under the Plan, as the Debtor intends to pay any allowed claims in this class in full on the Effective Date, in full and complete satisfaction of all such claims.

(b)     Class 2 consists of the Debtor's interest holder(s).  This class is not impaired under the Plan, as Liberty, the 100% equity holder of the Debtor: (1) will receive any remaining Estate Funds after all allowed creditor claims are paid (i.e., approximately $83,281.22, minus any actual fees and costs incurred by the Reorganized Debtor's professionals paid from the Post Effective Date Reserve); and (2) retain its interests in the Debtor.

14.     Accordingly, the Plan proposes to pay all allowed claims in full on the Effective Date, such that there are no impaired classes.  Specifically, holders of allowed claims in Class 1 (General Unsecured Creditors) shall receive full payment of its/his/her allowed claim on the Effective Date of the Plan, in full and complete satisfaction of their claims.

15.     The interests and rights of equity holders in Class 2 are unaffected by the Plan and remain unchanged.

16.     As set forth in detail below, the Plan complies with all of the applicable provisions of Sections 1129(a) and (b) of the Bankruptcy Code necessary for this Court to confirm the Debtor's Plan.  Among other things, the Debtor will have sufficient Estate Funds to satisfy all allowed creditor claims on the Effective Date, such that the Plan is "feasible." Moreover, because all allowed creditor claims are being paid in full, the Debtor's creditors will not recover less under Chapter 11 than under Chapter 7.  For these reasons and the reasons set forth below, the Debtor respectfully requests that the Court confirm the Plan and grant this Motion.

8

## II.  DISCUSSION

**A.      The Plan Does Not Have Any Impaired Classes.**

The Court should confirm the Plan because it does not have any impaired classes (such that each class is deemed to have accepted the Plan): (1) allowed claims in Class 1 will be paid in full on the Effective Date, in full and complete satisfaction of these claims; and (2) the interests of equity holders in Class 2 are unaffected by the Plan.

**B.      The Plan Complies With All Of The Applicable Provisions Of 11 U.S.C. § 1129(a).**

As set forth more fully below, the Debtor's Plan should be confirmed because all of the applicable requirements of Bankruptcy Code Section 1129(a) are met.

    1.      **Section 1129(a)(1) of the Code.**

Section 1129(a)(1) of the Code provides that a court may confirm a plan only if "the plan complies with the applicable provisions of this title."   The phrase "applicable provisions" has been interpreted to mean Section 1122 and 1123 of the Code which govern the classification of claims and interests and the contents of a plan.   *Cane v. Johns-Manville Corp.,* 843 F.2d 636, 648-9 (2nd Cir. 1988); 5 COLLIER ON BANKRUPTCY § 1129.02 (15th ed. 1986); H.R. Rep. No. 95-595, 9th Cong., 1st Sess. 412 (1977).

        1.1      Section 1122 of the Code.

Section 1122 of the Code governs the classification of claims and interests.   Section 1122(a) requires that a plan "place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests in such class."   The Court has broad discretion in classifying claims under Section 1122 of the Code.   *In re Johnston,* 21 F.3d 323, 327 (9th Cir. 1994).   In evaluating whether claims are "substantially similar," a bankruptcy court must evaluate the kind, species or character of each category of claim.   *Id.*   A plan may place substantially similar claims in different classes when a reasonable nondiscriminatory basis exists for such treatment.   *In re Montclair Retail Center,* 177 B.R. 663, 665 (9th Cir. BAP 1995) (*citing  In re Johnston*, 21 F.3d at 328); *see also In re Tucson Self-Storage, Inc.,* 166 B.R. 892 (9th Cir. BAP 1994) (if Section 1122(a) permits classification of substantially similar claims in different classes, such classification may only be undertaken for reasons independent of the

debtor's motivation to secure the vote of an impaired, assenting class of claims).  In the Ninth Circuit, the burden is on the Debtor to offer a business or economic justification for the separate classification of unsecured claims, or to show a legal distinction between the claims.  *See Montclair Retail Center*, 177 B.R. at 665; *see also Tucson Self-Storage*, 166 B.R. at 898.

In this case, the Plan designates one (1) class of claims and one (1) class of interests. Based on the foregoing principles, the classification of the allowed claims and interests, summarized as follows, is appropriate under the Plan.  The Plan contains the following classifications:

| *Class 1* | All Allowed General Unsecured Claims |
|---|---|
| *Class 2* | All Interest Holders |

All of the foregoing claims are either appropriately classified together (due to the fact that they are "substantially similar") or separately.  The Plan therefore complies with the provisions of Section 1122 of the Code.

1.2    Section 1123(a) of the Code.

The Plan complies with the seven (7) mandatory provisions of Section 1123(a) of the Code.

Section 1123(a)(1) of the Code requires that a plan designate classes of claims other than claims of the kind specified in Section 507(a)(1), (2) and (8) of the Code.  The Plan satisfies the requirements of Section 1123(a)(1) of the Code by designating all classes of the Debtor's remaining and outstanding claims, other than claims specified in Sections 507(a)(1), (2) and (8) of the Code.

Section 1123(a)(2) of the Code requires that a plan specify those classes of claims or interests that are not impaired and Section 1123(a)(3) of the Code requires that a plan specify those classes of claims or interests that are impaired.  The Plan satisfies this requirement by indicating whether each class under the Plan is impaired or not impaired.  In particular, the Plan indicates that Classes 1 and 2 are all unimpaired under the Plan.

Section 1123(a)(4) of the Code requires that a plan provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to

10

less favorable treatment. The Plan satisfies this requirement as no claim holder or interest holder is receiving treatment under the Plan different from any other claim holder or interest holder in the same class.

Section 1123(a)(5) of the Code requires that a plan provide adequate means for the Plan's implementation. The Plan sets forth the implementation and means of execution of the Plan. Specifically, the Debtor's Bank Accounts are currently holding Estate Funds in the approximate amount of **$1,034,640.45**. As described in the Plan, the total amount of administrate claims is estimated to be **$230,000**, and the proposed payment to all other claims of the Estate pursuant to the Plan is estimated to be **$30,929.34**. Based on the foregoing (*i.e.*, the Estate Funds exceed all claims asserted against the Estate), the Debtor believes that it holds sufficient funds to pay all allowed claims required to be paid under the Plan in full on the Effective Date of the Plan (in addition to a surplus distribution to equity).

Section 1123(a)(6) of the Code requires that a plan provide for appropriate distribution of power among all voting equity classes. Section 1123(a)(6) does not apply to the Plan as the Debtor only has one equity class and the Plan does not contemplate the distribution of power or equity in the Reorganized Debtor to different interest classes.

Section 1123(a)(7) of the Code requires that a plan contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director, or trustee. Since this is a liquidating Plan, the Debtor does not anticipate the need for active management after the Effective Date. Nevertheless, to the extent that there are any operations for the Debtor after the Effective Date, the CRO will continue to supervise all of the Debtor's functions, and will continue to oversee the general operations of the Debtor's business before the Court enters an order for final decree.

Based on these and related provisions of the Plan, the Debtor believes that Section 1123(a) of the Code has been satisfied by the Plan.

### 1.3 Section 1123(b) of the Code.

Section 1123(b) of the Code contains five permissive provisions.

1      Section 1123(b)(1) of the Code provides that a plan may impair or leave any class of

2  claims, whether secured or unsecured, or of interests unimpaired under the plan.  Classes 1 and 2

3  are unimpaired under the Plan.  There are no other classes of claims or interests.

4      Section 1123(b)(2) of the Code specifies that, subject to Section 365 of the Code, a plan

5  may provide for the assumption, rejection or assignment of any executory contract or unexpired

6  lease not previously rejected.  The Debtor is not aware of any other leases or executory contracts

7  to assume or reject.  However, out of the abundance of caution, on the Effective Date, any and all

8  leases or executory contracts that the Debtor has an interest in will be deemed rejected.

9      Section 1123(b)(3) of the Code specifies that a plan may provide for "the settlement or

10  adjustment of any claim or interest belonging to the debtor or to the estate," and/or "the retention

11  and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for

12  such purpose, of any such claim or interest."  The Plan does not reflect settlements and

13  adjustments of claims reached between the Debtor and certain creditors.  For disclosure purposes

14  only, the Debtor has reached settlements with several parties and/or claimants with approval by

15  the Court, as reflected in the Co-Owners 9019 Order, Prolien 9019 Order, and AHA 9019 Order.

16  *See* (Plan Ex. 4, 5, 6).  Further, the Debtor does not anticipate objecting to any claims filed

17  against its estate, but may do so pursuant to 11 U.S.C. § 502(a), if the circumstances warrant

18  such action.  As to any claims disputed by the Debtor, the treatment provided to creditors under

19  the Plan will be implemented by the Reorganized Debtor upon the allowance of the claim by the

20  Court.

21      Section 1123(b)(4) of the Code specifies that a plan may "provide for the sale of all or

22  substantially all of the property of the estate, and the distribution of the proceeds of such sale

23  among holders of claims or interests."  This section is inapplicable, as the Property was

24  previously sold pursuant to the Court's Sale Order, resulting in a large portion of the Estate

25  Funds that the Debtor is seeking to administer for the benefit of the Debtor's creditors and equity

26  holders through the Plan.

27      As set forth above, the Plan complies with all of the provisions of Section 1122 and 1123

28  of the Code and, therefore, complies with Section 1129(a)(1) of the Code.

2.    **Section 1129(a)(2) of the Code**.

Section 1129(a)(2) of the Code provides that a court may confirm a plan only if "[t]the proponent of the plan complies with applicable provisions of the title."  The "principal purpose of 11 U.S.C. §1129(a)(2) is to insure that the proponents have complied with the requirements of 11 U.S.C. §1125 in the solicitation of acceptances to the plan," *In re Texaco, Inc.* 84 B.R. 893, 906-07 (Bankr. S.D.N.Y. 1988), and with the requirements of Section 1121 and 1127 of the Code. *In re Downtown Inv. Club III*, 89 B.R. 59, 65 (9th BAP Cir. 1988).

2.1    Section 1121 of the Code.

Section 1121(c) of the Code provides that "[a]ny party in interest including the debtor, the trustee, a creditors' committee . . . , may file a plan . . . ."  Since the Debtor is the proponent of the Plan, the requirements of Section 1121 of the Code have been satisfied.

2.2    Section 1125 of the Code.

Section 1125(b) of the Code provides, in part, that:

> "An acceptance or rejection of a plan may not be solicited after the commencement of the case under this title from a holder of a claim or interest with respect to such claim or interest, unless, at that time or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and hearing, by the Court as containing adequate information."

However, a plan that has no impaired classes is perfectly appropriate under the Bankruptcy Code, and courts have confirmed such plans in the past without requiring a disclosure statements or plan solicitation.  *See e.g.*, *In re Holley Garden Apartments. Ltd.*, 238 B.R. 488 (Bankr. M.D. Fla. 1999); *In re Gillette Assocs., Ltd.*, 101 B.R. 866 (Bankr. N.D. Ohio 1989); *see In re Victory Constr. Co.*, 42 B.R. 145, 154 (Bankr. C.D. Cal. 1984) ("since no class was impaired, no disclosure statement is required"); *In re Stanley Hotel, Inc.*, 13 B.R. 926, 929 (Bankr. D. Colo. 1981) ("if acceptances need not be solicited, a disclosure statement is not required"); *In re Union County Wholesale Tobacco & Candy Co.*, 8 B.R. 442, 443 (Bankr. D.N.J. 1981) ("where acceptances are not required and not solicited, the need for disclosure and approval as a prerequisite to confirmation ... is obviated"); *In re Bel Air Assocs.*, Ltd., 4 B.R.

13

168, 174-75 (Bankr. W.D. Okla. 1980) ("section [1125] seems only to require disclosure statements in the event there are solicitations of acceptances or rejections of a plan.").  Because the Plan does not have any impaired classes, the Debtor is not required to solicit votes for the Plan or to file a disclosure statement.  Concurrently with the filing of this Motion, the Debtor has filed a motion to excuse the disclosure statement requirement.   The Debtor has therefore complied with the provisions of Section 1125 of the Code.

2.3    Section 1127 of the Code.

Section 1127 of the Code sets forth certain requirements that a plan proponent must satisfy in order to modify a plan.  Section 1127(b) of the Code authorizes a plan proponent to modify the plan at any time before confirmation of the plan provided the plan as modified satisfies the requirements of Sections 1122 and 1123 of the Code.  A modification to a plan does not mandate "the preparation of a new disclosure statement and resolicitation of the plan".  *In re American Solar King Corp.*, 90 B.R. 808, 823 (Bankr. W.D. Tex. 1988).  Additional disclosure to creditors is required "only when and to the extent that the debtor intends to solicit votes from previously dissenting creditors or when the modification materially and adversely impacts parties who previously voted for the plan."

No changes or modifications to the Plan are anticipated or have been made.

3.    **Section 1129(a)(3) of the Code**.

Section 1129(a)(3) of the Code provides that a court may confirm a plan only if the plan is proposed "in good faith and not by any means forbidden by law."   Rule 3020(b)(2) of the Federal Rules of Bankruptcy Procedure provides that the Court may determine that a plan proponent proposed a plan in good faith and not by any means forbidden by law, without receiving evidence, if no party in interest has timely objected to the plan proponent's good faith.  *In re Warren*, 89 B.R. 87, 91 (9th Cir. BAP 1988).

Here, the Debtor has filed the Plan in good faith.  In fact, the Plan provides for payment in full of all allowed claims on or around the Effective Date, with a distribution of any surplus Estate Funds to equity.  There was no collusion of any kind involving the Debtor or any insider of the Debtor with regard to the Plan, and any Plan Terms.

14

4.    **Section 1129(a)(4) of the Code**.

Section 1129(a)(4) of the Code provides that a court may confirm a plan only if "[a]ny payment made or to be made by the proponent, by the debtor, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the Court as reasonable."  Here, unless the Court authorized the payment of fees and expenses in connection with the employment of a professional, or pursuant to an order of the Court authorizing interim payment of fees and expenses to certain professionals, none of the professionals employed in the Debtor's bankruptcy case will be paid its outstanding post-petition, pre-Effective Date fees and expenses until such fees and expenses have been approved by the Court.

For disclosure purposes only, Section II.E.1 of the Plan provides that Post Confirmation Reserve funds (*i.e.*, the $15,000.00 held back for the Reorganized Debtor's professional's actual fees and costs) may be used to compensate actual fees and costs incurred by the Reorganized Debtor's professionals after the Effective Date of the Plan without further order of the Court. Any amounts remaining in the Post-Confirmation Reserve will be paid to Class 2 (Equity) before the Court enters an order for final decree.

5.    **Section 1129(a)(5) of the Code**.

Section 1129(a)(5)(A)(i) of the Code provides that a court may confirm a plan only if the plan proponent discloses "the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer of voting trustee of the debtor . . . or a successor to the Debtor under the plan."  Since this is a liquidating Plan, the Debtor does not anticipate the need for active management after the Effective Date.  Nevertheless, to the extent that there are any operations for the Debtor after the Effective Date, the CRO will continue to supervise all of the Debtor's functions, and will continue to oversee the general operations of the Debtor's business before the Court enters an order for final decree.

Section 1129(a)(5)(A)(ii) of the Code requires that the appointment to, or continuance of a director, officer or voting trustee be "consistent with the best interests of creditors and equity

15

holders and with public policy." *In re Produce Hawaii, Inc.*, 41 B.R. 301, 304 (Bankr. D..
Hawaii 1984); *In re Parks Lumber Co., Inc.*, 19 B.R. 285, 291 (Bankr. W.D. La. 1982). The
Debtor submits that public policy favors the continuation of current management; in fact, the
CRO's employment application was previously approved by the Court. The CRO has the
business experience and acumen to manage the Reorganized Debtor's affairs, and is capable of
calculating and authorizing distributions to Classes 1 and 2, as required under the Plan on or after
the Effective Date.

Section 1129(a)(5)(B) of the Code provides that a Court may confirm a plan only if the
plan proponent discloses "the identity of any insider that will be employed or retained by the
reorganized debtor, and the nature of any compensation for such insider." The Plan provides
that, before the Court's final decree order is entered, the CRO will manage the Debtor's business
affairs, to the extent that there are any following Plan confirmation. Mr. Perkins will be
compensated at his current and standard hourly billing rate of $545.00, and be reimbursed any
actual out-of-pocket expenses in connection with his Post-Effective Date duties from the Post
Effective Date Reserve. Based on the foregoing, the Plan satisfies the requirements of Section
1129(a)(5) of the Bankruptcy Code.

> 6.    **Section 1129(a)(6) of the Code**.

Section 1129(a)(6) of the Code requires that after confirmation of a plan, any
governmental regulatory commission with jurisdiction "over the rates of the debtor has approved
any rate change provided for in the plan . . . ." This Section of the Code is inapplicable since no
governmental regulatory commission has jurisdiction over the rates that the Debtor charges.

> 7.    **Section 1129(a)(7) of the Code**.

Section 1129(a)(7)(A) of the Code (referred to as the "best interest of creditors test")
requires that, with respect to each impaired class under the Plan, each member of the class must
either accept the Plan or receive under the Plan property having a value, as of the Effective Date,
that is not less than the amount that such claim holder would receive if the Debtor's Chapter 11
case was converted to a Chapter 7 liquidation.

All classes under the Plan are unimpaired under the Plan and are therefore deemed to accept the Plan.  Holders of allowed Class 1claims will receive payment of their allowed claims in full on the Effective Date, in full and complete satisfaction of their claims.  Further, any and all equity holder(s) in Class 2 will retain his/her/its interest in the Debtor under the Plan. Accordingly, to the extent the "best interest of creditors test" applies herein, the Debtor respectfully submits that the "best interest of creditors test" is satisfied.

Moreover, after consideration of the effects that a Chapter 7 liquidation would have on the ultimate proceeds available for distribution to creditors in the Chapter 11 case, the Debtor believes that confirmation of the Plan will provide each holder of an allowed claim with more than the amount the holder would receive pursuant to liquidation of the Debtor under Chapter 7 of the Bankruptcy Code.  The Plan proposes to pay all allowed amounts in full from the Estate funds in the Debtor's bank accounts (a portion of which constitutes sale proceeds of the Property).  Absent the Plan, there could be Chapter 7 trustee fees and expenses (and a duplication of efforts to sell the Property) which would likely decrease the ultimate recovery to creditors. Under the Plan, the Debtor's remaining creditors receive 100% of their allowed claims on the Effective Date of the Plan, in full and final satisfaction of their allowed claims against the Debtor.  Based on all of the foregoing, the Plan provides fair and equitable treatment and the greatest recovery to creditors.

8.    **Section 1129(a)(8) of the Code**.

Section 1129(a)(8) of the Code provides that a court may confirm a plan only if "[w]ith respect to each class of claims or interests: (A) such class has accepted the plan; or (B) such class is not impaired under the plan."

As discussed above, each of the classes under the Plan is unimpaired under the Plan. Therefore, under Section 1126(f) of the Code, each of these Classes is conclusively presumed to have accepted the Plan, and solicitation of acceptances with respect to such classes from the holders of claims or interests of such classes is not required.  Accordingly, the Debtor did not solicit acceptances of the Plan from any creditor or interest holder in this case.

Based upon the foregoing, the Plan satisfies the requirements of Section 1129(a)(8) of the

1  Code.

2        9.  **Section 1129(a)(9) of the Code**.

3        Section 1129(a)(9) of the Code provides that a court may confirm a plan only if the plan

4  complies with the following:

5        a.  Each holder of a priority claim under Section §507(a)(2) or 507(a)(3) of

6  the Code must receive cash equal to the allowed amount of such claim or agree to a different

7  treatment.

8        b.  Each holder of a priority claim under Sections 507(a)(1), (4), (5), (6) or (7)

9  of the Code must receive, on account of such claim:

10        i.  deferred cash payments of a value, as of the effective date, equal to

11  the allowed amount of such claim, if such class has accepted the plan; or

12        ii.  cash on the effective date equal to the allowed amount of such

13  claim, if such class has not accepted the plan.

14        c.  Each holder of a priority claim under Section 507(a)(8) of the Code must

15  receive, on account of such claim, regular installment payments in cash (i) of a total value, as of

16  the effective date of the plan, equal to the allowed amount of such claims, (ii) over a period

17  ending not later than 5 years after the date of the order for relief under section 301, 302, or 303,

18  and (iii) in a manner not less favorable than the most favored nonpriority unsecured claim

19  provided for by the plan (other than cash payments made to a class of creditors under section

20  1122(b)).

21        Under the Plan, each holder of an allowed administrative claim (*i.e.,* claims arising under

22  Section 507(a)(2) of the Code) will be paid in full on the Effective Date of the Plan.

23        Under the Plan, each holder of an allowed priority claim (*i.e.*, claims arising under

24  Sections 507(a)(1), (4), (5), (6) or (7) of the Code), will be paid in full on the Effective Date of

25  the Plan.

26        Under the Plan, there is one holder of an allowed priority tax claim (*i.e.*, claim arising

27  under Section 507(a)(8) of the Code).  The allowed tax claim of the FTB will be paid in full by

28  the Reorganized Debtor on the Effective Date of the Plan.

1   Based upon the foregoing, the Plan satisfies the requirements of Section 1129(a)(9) of the

2   Code.

3       10.   **Section 1129(a)(10) of the Code**.

4   Section 1129(a)(10) of the Code provides that a court may confirm a plan only if "at least

5   one class of claims that is impaired under the plan has accepted the plan, determined without

6   including any acceptance of the plan by any insider."  Section 1126(c) of the Code provides that

7   "[a] class of claims has accepted a plan if such plan has been accepted by creditors . . . that hold

8   at least two-thirds in amount and more than one-half in number of the allowed claims of such

9   class held by creditors . . . that have accepted or rejected such plan."

10  As set forth above, each of the classes under the Plan is unimpaired under the Plan.

11  Therefore, under Section 1126(f) of the Code, each holder of a claim or interest in Classes 1 and

12  2 is conclusively presumed to have accepted the Plan, and solicitation of acceptances with

13  respect to such classes from the holders of claims or interests of such classes is not required.

14  The filing of a plan that has no impaired classes is unusual.  Although rare, a plan that has

15  no impaired classes is perfectly appropriate under the Bankruptcy Code, and courts have

16  confirmed such plans in the past. *See, e.g., In re Holley Garden Apartments. Ltd.*, 238 B.R. 488

17  (Bankr. M.D. Fla. 1999); *In re Gillette Assocs., Ltd.*, 101 B.R. 866 (Bankr. N.D. Ohio 1989).

18  Indeed, the language of Section 1129(a)(10) of the Code directly addresses the issue.

19  Section 1129(a)(10) provides, in relevant part, that *"[i]f a class of claims is impaired under [a]*

20  *plan,* at least one class of claims that is impaired under the plan has accepted the plan...."  11

21  U.S.C. § 1129(a)(10) (emphasis added).  This language clearly implies that there is no absolute

22  requirement that a plan contain any impaired classes.  Rather, it simply provides that *if* there is

23  an impaired class, than at least one of them must vote in favor of the plan.  This is the view of the

24  Collier treatise and, as noted above, published cases on the point. *See* 7 COLLIER ON

25  BANKRUPTCY § 1129.03[10][2], at 1129-72 (15th ed. rev. 2006).

26  Moreover, Sections 1126(f) and 1129(a)(8) of the Code provide that votes need not be

27  solicited from classes of unimpaired creditors.  Section 1126(f) specifically states that "a class

28  that is not impaired under a plan, and each holder of a claim or interest of such class, are

1  conclusively presumed to have accepted the plan, and solicitation of acceptances with respect to

2  such class from the holders of claims or interests of such class is not required."  11 U.S.C. §

3  1126(f).  Similarly, Section 1129(a)(8) requires either that each class of claims or interests "has

4  accepted the plan; or such class is not impaired under the plan."  11 U.S.C. § 1129(a)(8).

5  Based upon the foregoing, the Plan satisfies the requirements of Section 1129(a)(10) of

6  the Code.

7  **11.    Section 1129(a)(11) of the Code**.

8  Section 1129(a)(11) of the Code provides that a court may confirm a plan only if

9  "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further

10  financial reorganization, of the debtor or any successor to the debtor under the plan, unless such

11  liquidation or reorganization is proposed in the plan."  In order to meet this feasibility standard, a

12  debtor need only demonstrate that the plan has a "reasonable probability of success."  *In re*

13  *Acequia, Inc.*, 787 F.2d 1352, 1364 (9th Cir. 1986); *In re Pike's Peak Water Co.*, 779 F.2d 1456,

14  1460 (10th Cir. 1985); *In re Apex Oil Co.*, 118 B.R. 683, 708 (Bankr. E.D. Mo. 1990).

15  There are two important aspects of a feasibility analysis.  The first aspect considers

16  whether the Reorganized Debtor will have enough cash on hand on the Effective Date to pay all

17  the claims and expenses which are entitled to be paid on such date.  The second aspect considers

18  whether the Reorganized Debtor will have enough cash over the life of the Plan to make the

19  required Plan payments.

20  As reflected in the Plan, all of the payment obligations of the Reorganized Debtor under

21  the Plan are required to be paid on or around the Effective Date of the Plan.  Accordingly, the

22  second aspect of the feasibility analysis (*i.e.*, whether the Reorganized Debtor will have enough

23  cash over the life of the Plan to make required Plan payments) is inapplicable herein.  With

24  respect to the first aspect of the feasibility analysis (*i.e.*, whether the Reorganized Debtor will

25  have enough cash on hand on the Effective Date to pay all allowed claims and expenses which

26  are required to be paid on such date), the payment obligations due on the Effective Date of the

27  Plan are estimated to total $260,929.34, as follows:

28

| Admin Claim | LNBYB | Est. $100,000.00 |
|---|---|---|
| Admin Claim | SCP | Est. $50,000.00 |
| Admin Claim | YMS | Est. $65,000 |
| Admin Claim | GT | Est. $15,000 |
| Admin Claim | UST | Est. $0 |
| Priority Tax Claim | Franchise Tax Board | $1,636.17 |
| Class 1 | General Unsecured Creditors | $29,293.17 |
| Class 2 | Equity | Any Remaining Estate Funds |

The Estate funds in the Debtor's bank accounts, totaling approximately **$1,034,640.45** will be sufficient to provide for the payments described above, as well as the $15,000 amount held back for the Post Effective Date Reserve. Accordingly, the Plan is feasible.

12. **Section 1129(a)(12) of the Code**.

Section 1129(a)(12) of the Code provides that a court may confirm a plan only if "[a]ll fees payable under Section 1930, as determined by the court at the hearing on confirmation of the plan, have been paid or the plan provides for the payment of all such fees on the effective date of the plan." The Plan provides for all such fees and costs to be paid in full.

13. **Section 1129(a)(13) of the Code**.

Section 1129(a)(13) of the Code provides that a court may confirm a plan only if "[t]he plan provides for the continuation after its effective date of payment of all retiree benefits ... for the duration of the period the debtor has obligated itself to provide such benefits." This provision is inapplicable to this case as the Debtor does not have any retiree benefits.

14. **Section 1129(a)(14) of the Code**.

Section 1129(a)(14) of the Code provides that if the debtor is required by a judicial or administrative order, or by statute, to pay a domestic support obligation, the debtor has paid all amounts payable under such order or such statute for such obligation that first becomes payable after the date of the filing of the petition. This provision is inapplicable to this case because neither the Debtor nor the Reorganized Debtor is required by judicial or administrative order, or by statute, to pay a domestic support obligation.

/ / /

/ / /

21

15.    **Section 1129(a)(15) of the Code**.

Section 1129(a)(15) of the Code provides that, in a case in which the debtor is an individual in which the holder of an allowed unsecured claim objects to the confirmation of the plan – (A) the value, as of the effective date of the plan, of the property to be distributed under the plan on account of such claims is not less than the amount of such claim, or (B) the value of the property to be distributed under the plan is not less than the projected disposable income of the debtor (as defined in section 1325(b)) to be received during the 5-year period beginning on the date that the first payment is due under the plan, or during the period for which the plan provides payments, whichever is longer.  This provision is inapplicable to this case because neither the Debtor nor the Reorganized Debtor is an individual.

16.    **Section 1129(a)(16) of the Code**.

Section 1129(a)(16) of the Code provides that all transfers of property of the plan shall be made in accordance with any applicable provisions of nonbankruptcy law that govern the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust.  The Debtor has no reason to believe that it has not complied with all applicable provisions of nonbankruptcy law that govern the sale or other transfer of estate property during this case.

### III.  CONCLUSION

Based on the foregoing, the Debtor respectfully requests that the Court enter an Order:

(1)    finding that the Plan meets each and every requirement for confirmation pursuant to 11 U.S.C. §§ 1129(a) and (b);

(2)    confirming the Plan; and

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

22

1    (3)    granting such other and further relief as is just and proper under the

2    circumstances.

3

4    Dated: August 3, 2020                OAK RIVER ASSET MANAGEMENT, LLC

5                                By:  __/s/ David B. Golubchik_____

6                                    DAVID B. GOLUBCHIK
                                    JEFFREY S. KWONG

7                                    LEVENE, NEALE, BENDER, YOO
                                    & BRILL, L.L.P.

8                                    Attorneys for Chapter 11 Debtor
                                    and Debtor in Possession

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DECLARATION OF LAWRENCE PERKINS**

I, Lawrence Perkins, hereby declare as follows:

1.      I am Co-Founder, and Chief Executive Officer of SierraConstellation Partners, LLC. ("SCP") which maintains offices at 355 S. Grand Ave. Suite 1450, Los Angeles, California 90071.  I am the authorized agent and proposed chief restructuring officer of the Debtor.  I submit this Declaration in support of the "*Motion For Confirmation Of Debtor's Chapter 11 Plan*" (the "Motion").  Except as otherwise noted, I have personal knowledge of the matters set forth herein.

2.      I make this declaration in support of the motion (the "Motion") for confirmation of the concurrently-filed "*Debtor's Chapter 11 Plan*" (the "Plan"), to which this Declaration is attached.  All capitalized terms not specifically defined herein shall have the meanings ascribed to them in the Plan and the Motion.

3.      To the best of my knowledge, information and belief, all of the information contained in the Motion is truthful and accurate.

4.      The Debtor filed a voluntary petition under chapter 11 of 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") on July 12, 2016 (the "Petition Date").   No official committee of creditors was formed in the Bankruptcy Case.  No bankruptcy trustee was appointed in the Bankruptcy Case.  On September 27, 2016, the Court entered an order approving the Debtor's employment of me as the Debtor's Chief Restructuring Officer ("CRO") effective as of the Petition Date.

5.      On the Petition Date, the Debtor's primary asset was its fifty percent (50%) interest in a single family residence located at 119 Furlong Lane, Bradbury California 91008 (the "Property").  TLH REO Management LLC and Han Ding Holdings, LTD (collectively, the "Co-Owners") had a thirty-six percent (36%) and fourteen percent (14%) ownership interest in the Property.  In 2012, the Debtor acquired and obtained its 50% interest in the Property for the benefit of its affiliated entity, Liberty Asset Management Corporation ("Liberty"), who is a reorganized debtor in a related chapter 11 case filed on March 21, 2017 captioned *in re Liberty Asset Management Corporation*, Case No. 2:16-bk-13575-ER (the "Liberty Case").

6.       Because the: (1) Property required some urgent slope repair, engineering, and other work before its sale value can be maximized for the benefit of the estate (the "Repairs"); and (2) the Debtor required funding from OakRiverHML, LLC (the "DIP Lender") to complete the Repairs, on September 8, 2016, the Debtor filed the "*Emergency Motion For Authority To Obtain Financing Pursuant To 11 U.S.C. § 364(d)*" [Doc. No. 35] (the "Financing Motion").  In the Financing Motion, the Debtor stated that it needed its "civil engineer, TRI/CON Engineering Inc. . . . to promptly complete its engineering work on the Property," and disclosed that it was obtaining a post-petition loan to, among other things, "pay TRI/CON in full (*i.e.*, thereby satisfying its alleged mechanics' lien/ secured claim in the approximate amount of $36,362.00) from the DIP loan proceeds."  *See* (Plan Ex. 1).  On September 16, 2019, the Court entered its "*Order Granting Emergency Motion For Authority To Obtain Financing Pursuant To 11 U.S.C. § 364(d)*" [Doc. No. 47] (the "Financing Order"), which provided that the Financing Motion "as modified by th[e Financing Order], is hereby approved and granted . . . .  Proceeds of the Loan shall be used to satisfy only obligations related to the Property[.]"  *See* (Plan Ex. 2).  Shortly thereafter, on or around September 21, 2016, the $36,362.00 scheduled claim (the "Tricon Claim") for Tri/Con Engineering Inc. ("Tricon") was paid and fully satisfied from the loan proceeds from the DIP Lender, and Tricon continued performing Repairs on the Property.  True and correct copies of the Financing Motion and Financing Order are attached respectively as **Exhibits "1" and "2"** to the Plan.

7.       After some extensive property remediation, marketing, and negotiation efforts, the Debtor received a $6,900,000 written offer from Yeung Sai Yeung (the "Buyer") to purchase the Property (the "APA").  As a result, on July 26, 2018, the Debtor filed its "*Motion For Order (A) Approving Sale Of Property Free And Clear Of Liens, Claims And Interests, Subject To Overbid; (B) Approve Bidding Procedures; And (C) Granting Related Relief*" [Doc. No. 127] (the "Sale Motion"), seeking Court approval of the sale of the Property to the Buyer subject to overbidding. The Sale Motion was granted by an order entered by the Court on August 23, 2018 [Doc. No. 138] (the "Sale Order").  A true and correct copy of the Sale Order is attached as **Exhibit "3"** to the Plan.

8.      In addition to secured creditor claims, the Co-Owners were also paid $850,000 from the Property's sale proceeds, pursuant to the agreement between the Debtor and the Co-Owners, that was approved by the Court pursuant to the "*Order Granting Motion Pursuant To Bankruptcy Rule 9019(a) For An Order Approving Settlement*" [Doc. No. 119] (the "Co-Owners 9019 Order"). A true and correct copy of the Co-Owners 9019 Order is attached as **Exhibit "4"** to the Plan.

9.      Around the time that, or shortly after the Sale Order was entered, the Debtor reached a resolution of its disputes with: (1) claimant Prolien Services, LLC ("Prolien"), Pioneer General Engineering Contractors, Inc. ("Pioneer"), and their related entities and individuals (the "Prolien Claimants"); and (2) claimants AHA 2012 LLC, Frank Lee, Co-Trustee of The Living Trust dated 6/23/1987, and Christopher Lee (collectively, the "AHA Claimants"). On November 2, 2018 and March 25, 2019 respectively, the Court entered orders approving: (1) the compromise of controversy that the Debtor reached with the Prolien Claimants for, among other things, a release of certain mechanic's liens on the Property and full and final satisfaction of the Prolien Parties' claims for a payment of $350,000 to be paid directly from the escrow account for the sale of the Property [Doc. No. 160] (the "Prolien 9019 Order"); and (2) the compromise of controversy that the Debtor had reached with the AHA Claimants for, among other things, the AHA Claimants to have a $2,000,000 general unsecured claim against the Debtor's estate that shall be authorized to be paid promptly after Court approval thereof [Doc. No. 195] (the "AHA 9019 Order"). Pursuant to the Prolien 9019 Order and AHA 9019 Order, the claims of the Prolien Claimants and AHA Claimants – including, but not limited to, those claims asserted in proof of claim nos. 2, 3, and 4 – have been paid and satisfied in full through the proceeds from the sale of the Property. True and correct copies of the Prolien 9019 Order and AHA 9019 Order are attached respectively as **Exhibits "5" and "6"** to the Plan.

10.      In addition, the undisputed secured tax claims of the Los Angeles County Tax Collector, who filed proof of claim nos. 1 and 7, were paid through escrow from the Property's sale proceeds.

11.     Currently, the Debtor's bank accounts with Signature Bank (x4425) and Rabo Bank (x0166) (collectively, the "Bank Accounts") are holding funds in the aggregate amount of approximately **$1,034,640.45** (the "Estate Funds"). Excluding administrative claims (which are currently estimated to total **$230,000.00**), the total amount of the claims asserted against the Debtor's estate that have not yet been satisfied is **$30,929.34**. The Plan proposes to: (1) first, allocate the Estate Funds to pay all allowed and remaining claims in full on the Effective Date (as defined in the Plan); and (2) second, distribute any remaining Estate Funds to Liberty, as the 100% equity holder of the Debtor.[4]  True and correct redacted copies of the bank statements for the Bank Accounts are attached as **Exhibit "7"** to the Plan. Further, a chart describing and analyzing all of the claims scheduled by the Debtor, or asserted against the Debtor's estate is attached as **Exhibit "8"** to the Plan.

12.     The Plan will be funded by the Estate Funds, which are currently being held by the Debtor in the Bank Accounts; and I believe these funds will be sufficient to pay all anticipated plan payments in full on the Effective Date, with a surplus distribution to equity.

13.     Since this is a liquidating Plan, I do not anticipate the need for active management after the Effective Date. Nevertheless, to the extent that there are any operations for the Debtor after the Effective Date, I will continue to supervise all of the Debtor's functions, and will continue to oversee the general operations of the Debtor's business before the Court enters an order for final decree (*i.e.*, duties related to calculating and making disbursements under the Plan, filing estate tax returns, reviewing final fee applications, and moving for the Court's entry of a final decree in this bankruptcy case). I am familiar with the claims in the Debtor's bankruptcy case and the terms of the Plan. Therefore, I believe that I am qualified to assist the Debtor in implementing the provisions of the Plan and to make the required disbursements under the Plan.

---

[4] As described more fully in Section II.E.1 of the Plan, before distributions are made to Class 2 (Equity) on or about the Effective Date, the Debtor shall hold back funds in the amount of $15,000.00 to fund the Post Effective Date Reserve. The Reorganized Debtor shall have the right to pay professional fees and expenses incurred after the Effective Date out of the Post Effective Date Reserve, and without further order of the Court. Any amounts remaining in the Post-Confirmation Reserve will be paid to Class 2 (Equity) before the Court enters an order for final decree.

1    I believe that my continuing management of the Debtor and Reorganized Debtor is consistent

2    with the interests of creditors, equity holder(s), and with public policy.  The Plan proposes that I

3    will be compensated at my current and standard hourly billing rate of $545.00, and be

4    reimbursed any actual out-of-pocket expenses in connection with his Post-Effective Date duties

5    from the Post Effective Date Reserve.

6         14.    I believe that the Plan was filed in good faith.  In fact, the Plan provides for

7    payment in full of all allowed claims, including the allowed claims of general unsecured

8    creditors, on the Effective Date.  To the best of my knowledge, there has been no collusion of

9    any kind involving the Debtor or any insider of the Debtor with regard to the Plan or any Plan

10    terms.

11         15.    I am not aware of any other leases or executory contracts to assume or reject.

12    However, out of the abundance of caution, the Plan provides that, on the Effective Date, any and

13    all leases or executory contracts that the Debtor has an interest in will be deemed rejected

14         16.    I do not anticipate the Debtor objecting to any claims filed against its estate, but

15    understand that it may do so pursuant to 11 U.S.C. § 502(a) if the circumstances warrant such

16    action.

17         17.    I have read the Motion to which this Declaration is attached, and I hereby agree

18    and verify the facts set forth therein and incorporate such facts in this Declaration, including the

19    facts relevant to satisfaction of the requirements of sections 1129(a) and 1129(b) of the

20    Bankruptcy Code, as explained in the Motion.

21         I declare under penalty of perjury under the laws of the United States of America that that

22    the foregoing is true and correct.

23         Executed this **3** day of August 2020, at Los Angeles, California.

24

25

26                  Lawrence Perkins, Declarant

27

28

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled **NOTICE OF MOTION AND MOTION FOR CONFIRMATION OF DEBTOR'S CHAPTER 11 PLAN; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF LAWRENCE PERKINS IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.    TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On August 4, 2020, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Robert T Bryson**    rbryson@elllaw.com, lmarquez@robinscloud.com
- **Robert Thomas Bryson**    rbryson@robinscloud.com, lmarquez@robinscloud.com
- **John-Patrick M Fritz**    jpf@lnbyb.com, JPF.LNBYB@ecf.inforuptcy.com
- **Barry S Glaser**    bglaser@lkfirm.com, jlee@lkfirm.com
- **David B Golubchik**    dbg@lnbyb.com, stephanie@lnbyb.com
- **Gail S Greenwood**    ggreenwood@pszjlaw.com, rrosales@pszjlaw.com
- **David S Henshaw**    david@henshawlaw.com, info@henshawlaw.com
- **Eve H Karasik**    ehk@lnbyb.com
- **Jeffrey S Kwong**    jsk@lnbyb.com, jsk@ecf.inforuptcy.com
- **Kelly L Morrison**    kelly.l.morrison@usdoj.gov
- **Giovanni Orantes**    go@gobklaw.com, gorantes@orantes-law.com,cmh@gobklaw.com,gobklaw@gmail.com,go@ecf.inforuptcy.com;orantesgr89122@notify.bestcase.com
- **Uzzi O Raanan**    uraanan@DanningGill.com, DanningGill@gmail.com;uraanan@ecf.inforuptcy.com
- **Jeremy V Richards**    jrichards@pszjlaw.com, bdassa@pszjlaw.com;imorris@pszjlaw.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov

**2.  SERVED BY UNITED STATES MAIL**: On **August 4, 2020**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ *Service information continued on attached page*

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **August 4, 2020**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                    **F 9013-3.1.PROOF.SERVICE**

1

***Served by Overnight Mail***
Hon. Ernst M. Robles

2    United States Bankruptcy Court
Edward R. Roybal Federal Building and Courthouse

3    255 E. Temple Street, Suite 1560 / Courtroom 1568
Los Angeles, CA 90012

4

5    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

6

   August 4, 2020          Stephanie Reichert              /s/ Stephanie Reichert

7    *Date*                    *Type Name*                     *Signature*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                **F 9013-3.1.PROOF.SERVICE**

Label Matrix for local noticing
0973-2
Case 2:16-bk-19233-ER
Central District of California
Los Angeles
Tue Aug  4 09:29:46 PDT 2020

Oak River Asset Management LLC
400 S. Hope St., Suite 1050
Los Angeles, CA 90071-2836

Bradley D. Sharp
Ch. 11 Trustee for Namco Capital Group
333 S. Grand Ave.
Suite 4300
Los Angeles, CA 90071-1578

Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067-4003

Los Angeles County Treasurer & Tax Collecto
Steckbauer Weinhart, LLP
c/o Barry S. Glaser
333 S. Hope Street, Ste. 3600
Los Angeles, CA 90071-3045

SLBiggs
10960 Wilshire Boulevard
7th Floor
Los Angeles, CA 90024-3710

AHA 2012 LLC
c/o David Henshaw, Esq.
1871 The Alameda, Suite 333
San Jose, CA 95126-1746

Benny Kirk
c/o David Meadows
1801 Century Park East, Suite 1235
Los Angeles, CA 90067-2314

Christopher D. Lee
c/o David Henshaw, Esq.
1871 The Alameda, Suite 333
San Jose, CA 95126-1746

City of Bradbury
c/o David Gilbertson, RKA Group
398 Lemon Creek Drive Suite E
Walnut, CA 91789-2649

FORENSIS GROUP
301 N LAKE AVE STE 420
PASADENA CA 91101-5119

FRANCHISE TAX BOARD
BANKRUPTCY SECTION MS A340
PO BOX 2952
SACRAMENTO CA 95812-2952

Franchise Tax Board
Special Procedures - Insolvency
P.O. Box 2952
Sacramento, CA 95812-2952

Frank Lee, T'ee of Lee Living Trust
c/o David Henshaw, Esq.
1871 The Alameda, Suite 333
San Jose, CA 95126-1746

Guy Jamison, Esq.
Jamison Duncan
301 E. Colorado Ave., Suite 501
Pasadena, CA 91101-1919

Han Ding Holdings Limited
c/o Jose Padilla, Esq., Cox Castle
2029 Century Park East   Suite 2100
Los Angeles, CA 90067-3007

(p)INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY OPERATIONS
PO BOX 7346
PHILADELPHIA PA 19101-7346

(p)LOS ANGELES COUNTY TREASURER AND TAX COLLE
ATTN BANKRUPTCY UNIT
PO BOX 54110
LOS ANGELES CA 90054-0110

Liberty Asset Management Corp.
c/o Larry Perkins
400 S. Hope St. Suite 1050
Los Angeles, CA 90071-2836

Lucy Gao
c/o Alexandre Cornelius, Esq.
1299 Ocean Avenue, Suite 450
Santa Monica, CA 90401-1050

Prolien Services, LLC
c/o Robert Bryson, Esq.
10100 Santa Monica Bl., 12th Floor
Los Angeles, CA 90067-4003

(p)SOUTHERN CALIFORNIA EDISON COMPANY
RECEIVABLES MANAGEMENT BANKRUPTCY GROUP
1551 W SAN BERNARDINO ROAD
COVINA CA 91722-3407

TLH REO Management LLC
c/o Jose Padilla, Esq., Cox Castle
2029 Century Park East   Suite 2100
Los Angeles, CA 90067-3007

TRI/CON ENGINEERING INC.
Attn:  John Campbell
122 West Olive Avenue
Monrovia, CA 91016-3410

The Gas Company
PO Box C
Monterey Park, CA 91754-0932

United States Trustee (LA)
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017-3560

Unsecured Committee of Liberty
c/o Jeremy Richards, Esq.
10100 Santa Monica Blvd., 13th Floo
Los Angeles, CA 90067-4003

YCJS 2012 LLC
c/o David Henshaw, Esq.
1871 The Alameda, Suite 333
San Jose, CA 95126-1746

Giovanni Orantes
The Orantes Law Firm, A Professional Cor
3435 wilshire blvd #2920
Los Angeles
Los Angeles, Ca 90010-2015

Lawrence R Perkins
400 S Hope St Suite 1050
Los Angeles, CA 90071-2836

Robert Thomas Bryson
Robins Cloud
808 Wilshire Boulevard
Suite 450
Los Angeles, CA 90017